**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LINDA STENGLE, : | |
|     Plaintiff : | |
| : | |
| v. : | Civil Action 4:CV-06-1913 |
| : | Judge John E. Jones, III |
| OFFICE FOR DISPUTE RESOLUTION, : | |
| PENNSYLVANIA DEPARTMENT OF : | JURY TRIAL DEMANDED |
| EDUCATION, KERRY VOSS SMITH AND : | |
| LINDA O. RHEN : | |
|     Defendants. : | |

**ANSWER OF DEFENDANTS, OFFICE FOR DISPUTE RESOLUTION
AND KERRY VOSS SMITH, TO PLAINTIFF'S AMENDED COMPLAINT WITH
<u>AFFIRMATIVE DEFENSES</u>**

AND NOW, come the Defendants, Office for Dispute Resolution and Kerry Voss Smith, hereafter referred to as the "Defendants", by and through their attorneys, Sweet, Stevens, Katz & Williams LLP, to present the following Answer to Plaintiff's Amended Complaint with Affirmative Defenses:

1.    Admitted in part, denied in part. It is admitted that Plaintiff's Complaint seeks redress for the refusal to renew contract to serve as a hearing officer under 42 U.S.C. §1983; Section 504 of the Rehabilitation Act of 1973; 29 U.S.C. §794; and Pennsylvania's Whistleblower Law, 43 Pa. C.S. §§1422-1428. It is denied that Plaintiff is entitled to any relief.

2.    Admitted in part, denied in part. It is admitted that Plaintiff seeks equitable and monetary relief including back pay, front pay, compensation for emotional pain and suffering, reimbursement of costs, attorneys' fees, punitive damages, civil fine, suspension and all other relief. It is denied that Plaintiff is entitled to relief.

3.    Admitted.

4. Denied. By way of further answer, Defendant, Kerry Voss Smith ("Smith"), is employed by the Lancaster Lebanon Intermediate Unit #13 ("IU") as the Director of the Office for Dispute Resolution ("ODR"). ODR maintains offices in Dauphin County.

5. Admitted in part, denied in part. It is admitted that Plaintiff is an adult citizen of the Commonwealth. It is denied that Plaintiff resides in Montgomery County. It is further denied that Plaintiff is an "employee" within the meaning of the Whistleblower Law, as Plaintiff has contractually acknowledged that she is an independent contractor of the IU, and was not an employee.

6. Admitted in part, denied in part. It is admitted that although ODR is funded by the Pennsylvania Department of Education, it is separate and independent from the Pennsylvania Department of Education. Further, it is admitted that ODR's address is 6340 Flank Drive, Harrisburg, PA 17112. The remaining averments in paragraph 6 are denied.

7. The averments in paragraph 7 are directed to Defendant, Pennsylvania Department of Education and therefore, no response is required.

8. Admitted in part, denied in part. It is admitted that Smith has been the Director of ODR since 2002 and has the final say as to whether a contractual hearing officer is reappointed. The remaining averments in paragraph 8 are denied.

9. The averments in paragraph 9 are directed to Defendant, Pennsylvania Department of Education and therefore, no response is required.

10. Denied as stated. By way of further answer, it is admitted that Plaintiff advised Smith that she has a child with a disability.

11. Admitted in part, denied in part. Plaintiff served as a special education due process hearing officer subject to the terms and conditions of a written contract between Plaintiff and the IU. It is denied that her service was from the period beginning on July 1, 1998 and ending on June 30, 2006. By way of further answer, all of Plaintiff's contracts with the IU are not in the possession of Defendant since contracts prior to 2000 are under the control of another IU and therefore, cannot be accessed and/or reviewed to confirm the exact dates of service.

12. Admitted.

13. Admitted in part, denied in part. It is admitted that from 2002 until June 30, 2006, Plaintiff had a contract for services with the IU. The remaining averments in paragraph 13 are denied.

14. Admitted. By way of further answer, Plaintiff's contract expired on June 30, 2006. Furthermore, Plaintiff's contract and appointment as a hearing officer was not renewed for performance related reasons.

15. Admitted.

16. Admitted.

17. Admitted in part, denied in part. It is admitted that the contract was transmitted by ODR to Mrs. Stengle with a memorandum by Smith after it was executed by Dr. John Bonfield on behalf of IU #13 on June 23, 2005.

18. Admitted.

19. Admitted. By way of further answer, Plaintiff was a presenter at the training session pursuant to Smith's request.

20.     Admitted. By way of further answer, Smith did not make the same announcement at the 2006 training because a decision had not yet been made regarding renewal/non-renewal of Plaintiff's contract, as well as another hearing officer's contract.

21.     Denied. By way of further answer, the June 2005 training pertained solely to the newly authorized IDEA statute. The purpose of the training was to get input and feedback from the hearing officers regarding interpretation of the new statute and its applicability to due process procedures. There was a lack of consensus among hearing officers regarding numerous issues. Those issues were then taken to the ODR Focus Group by Smith, along with the various hearing officer positions presented at the June 2005 training, and the Focus Group ultimately made final recommendations, which ODR then implemented. Furthermore, Smith advised hearing officers that PDE's legal counsel's analysis of the conflict between state and federal regulations resulted in PDE's position that sixty school days continued to be applicable in Pennsylvania. In addition, the federal regulations state that evaluations are to be done in sixty calendar days unless the State establishes a time frame within which the evaluation must be conducted. With regard to the timelines for hearings, Smith or an ODR employee told the hearing officers that the statute appeared to allow a thirty day period prior to the commencement of due process for the resolution meeting to occur, which thereby would result in a thirty day delay before commencing the 45 day time frame. Again, there was extensive discussion among the hearing officers, with no consensus reached, and this issue, along with the hearing officer's positions, was brought to the Focus Group for final recommendations. Finally, with regard to the validity of complaints, this issue was likewise presented to the hearing officers for input; there was no consensus, and the matter, along with the differing hearing officer's position, was brought to the Focus Group for final recommendations on implementation by ODR.

22. Denied.

23. Admitted in part, denied in part. It is admitted that Plaintiff questioned some of the directives during the training session and that Smith reiterated PDE's legal counsel's determination that 60 school days would continue to apply. The remaining averments in paragraph 23 are denied.

24. Denied. By way of further response, the purpose of the training was to get hearing officer feedback to guide ODR in its implementation of the IDEA. Smith had no self interest in the outcome of training other than to insure compliance with the law.

25. Denied.

26. Denied. By way of further answer, the hearing officers were not given instructions at this training. Rather, ways to implement the IDEA of 2004 were discussed. Because of the lack of consensus among the hearing officers, these issues were taken to the Focus Group. In addition to one representative from PDE's Office of Chief Counsel, the Focus Group consisted of a broad group of constituents, including a parent attorney, an Education Law Center representative and a representative from a Parent Training Center.

27. Denied. By way of further answer, Smith advised hearing officers of the concerns expressed by school district representatives that the ranking system of Gaskin would be problematic.

28. Admitted in part, denied in part. It is admitted that Plaintiff questioned whether ODR's "directions" regarding hearing officers' counting of least restrictive environment complaints for PDE would result in underreporting. After reasonable investigation, answering Defendant is without sufficient knowledge or information to form a belief as to the truth of the

5

date and therefore, it is denied. By way of further answer, under Smith's direction, a computer field was created to track statistics on the number of due process cases pertaining to Gaskin/LRE in anticipation of such a data request from PDE or the Gaskin Advisory Panel. PDE and Rhen had no involvement whatsoever in the conception and creation of this field. ODR asked hearing officers to notify ODR whenever such a case was before them and the database would be marked. Plaintiff took the position that all hearings are LRE cases, a position which, for statistical purposes, meant that every single hearing should be marked as a Gaskin case. ODR declined to follow Plaintiff's position.

29. Denied.

30. Denied. By way of further response, Edward Titterton, Esquire was hired as a consultant to assist hearing officers, after writing a decision, to analyze ways in which the writing could be more clear in later decisions. Furthermore, it is specifically denied that Mr. Titterton was hired to "shape" hearing officer opinions or that Mr. Titterton ever attempted to do so. Moreover, ODR plays no role in the decisions of appeals panel members since they are state level actors.

31. Denied.

32. Admitted.

33. Denied. After reasonable investigation, answering Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

34. Admitted.

35. Denied.

6

36. Admitted in part, denied in part. It is admitted that Smith had become aware at some point that Plaintiff had been appointed to the Gaskin Advisory Panel.

37. Admitted. By way of further answer, the other hearing officer remains under contract with IU #13.

38. Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

39. Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

40. Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

41. Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

42. Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

43. Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

44. Admitted in part, denied in part. It is admitted that ODR case managers were directed to forgo assignment of any additional cases to Plaintiff for the sole reason that she had not completed her current assignments, and in fact was late in rendering a decision. It is denied that hearing officers "bid" on cases.

45. Admitted. By way of further answer, the letter read in its entirety, "Congratulations on your selection to the Gaskin Advisory Panel. The purpose of this letter is to

alert you that some people have expressed concern to me about your ability to serve as an impartial hearing officer while also serving on the Advisory Panel. I am not familiar with your responsibilities as a panel member, and it is my understanding that the parameters of the panel are still being worked out; therefore, I cannot say whether I agree or disagree with the reservations of some. I wanted to alert you to this situation, however, as you can anticipate some attorneys appearing before you will raise this as an issue and no doubt seek recusal. I wanted to ensure that you were prepared to respond to these anticipated recusal motions. Best wishes for a healthy, happy, successful 2006."

      46.    Admitted. By way of further response, the other individual remains under contract with IU #13.

      47.    Denied. By way of further answer, the IDEA and its regulations do require a high standard of impartiality for individuals who serve as hearing officers.

      48.    Admitted. By way of further answer, Smith is aware that Margaret Drayden, a hearing officer under contract with IU #13, is on the Gaskin Advisory Panel.

      49.    Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

      50.    Admitted in part, denied in part. It is admitted that Defendant Smith became aware of Plaintiff's blog. The remaining averments in paragraph 50 are denied.

      51.    Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

      52.    Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

53.   Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

54.   Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

55.   Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

56.   Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

57.   Admitted.

58.   Admitted. By way of further response, in a due process hearing pending before Plaintiff, parent counsel in <u>Gaskin</u>, and school district counsel, filed a joint motion seeking Plaintiff's recusal, alleging her inability to be impartial due to her involvement with <u>Gaskin</u> and specifically the blog.

59.   Denied. By way of further answer, in one instance, Plaintiff was approached in response to a complaint by a parent/parent attorney upset because they did not want Plaintiff as a hearing officer again. It was discovered that the case had been given to Plaintiff in error. Plaintiff had the sole discretion to recuse herself and did so, seeking assurances that she be given another hearing to replace the one lost through recusal.

60.   Admitted in part, denied in part. It is admitted that Plaintiff has been asked to recuse herself for various reasons. The remaining averments in paragraph 60 are denied.

61.   Denied. By way of further answer, the decision to recuse herself from a case in which an attorney complained that had not been randomly assigned to the case was solely

9

Plaintiff's. Furthermore, Plaintiff has always acted independently, once advising Smith that she could not tell Plaintiff what to do when Smith suggested Plaintiff obtain security at a due process hearing when Smith learned that the parent had access to a firearm.

62.   Denied.

63.   Admitted in part, denied in part. It is admitted that the decision to recuse was left solely to Plaintiff and she did so. The remaining averments in paragraph 63 are denied.

64.   Denied. By way of further answer, at no time did Defendant, Rhen, encourage Smith to forego renewal of Plaintiff's appointment and contract.

65.   Denied.

66.   Denied. By way of further answer, at one point, ODR assigned hearing officers based upon availability, and, because Plaintiff said she was frequently available, she was given a large number of cases. As a result, other independent contractor hearing officers began complaining about the inequity in assignment of cases. For equity purposes, ODR began assigning hearing officers in a more deliberate way. However, because Plaintiff's decisions were delayed, Smith advised ODR case managers to forego any more assignments to Plaintiff until she completed her previously assigned work.

67.   Admitted. By way of further answer, in May 2006, Plaintiff had 2 cases. Plaintiff was not assigned additional cases because she had outstanding cases.

68.   Denied. By way of further answer, a School District representative contacted Smith in May/June of 2006 by telephone expressing his concern about Plaintiff's impartiality. He asked to meet Smith to drop off a letter when he was going to the PaTTAN building, where ODR is located. Smith met this individual on April 28, 2006. The individual handed Smith a

copy of a letter that his predecessor had written, complaining about Plaintiff, but which had never been forwarded to anyone. Sometime thereafter, the School District chose to pursue the matter so the letter was handed to Smith. Smith, in turn, wrote, "hand delivered April 28, 2006 KVS" on the letter. As is standard procedure when a complaint is received about a hearing officer, Plaintiff was provided a copy so that she could provide any input she chose.

69. Admitted.

70. Admitted.

71. Denied.

72. Denied. By way of further answer, the notice of June 2, 2006 identifies the reasons for the decision.

73. Denied.

74. Denied.

75. Denied. By way of further answer, the selection of appeals panel members is via appointment letter from the Secretary of Education and/or his/her designee. The retention or renewal of appeals panel members is decided by PDE. ODR simply administers the process by executing the contracts.

76. Denied.

77. Admitted in part, denied in part. It is admitted that Smith appointed and continued to appoint some hearing officers whose impartiality had been questioned, with Plaintiff being one of those hearing officers about which Smith has received the most informal complaints. Nonetheless, Smith continued to reappoint Plaintiff. It is further admitted that Smith has appointed/reappointed individuals who are parents of children with disabilities in an

11

effort to bring more diversity to the hearing officer pool. Also, it is admitted that Smith has contracted with an individual who was formerly associated with one of the premiere parent law firms in the state. This individual is also the parent of a child with a disability, and married to a school district attorney. It is denied that Smith makes hearing officer selections based upon the spouse's employment. By way of further answer, Smith advised Plaintiff that she was purposefully hiring parents of children with disabilities, since the hearing officer pool was almost exclusively educator based. Plaintiff further advised Smith that parents of children with disabilities are not necessarily impartial.

78. Denied.

79. Denied. By way of further answer, Defendant is without sufficient knowledge or information to form a belief as to the truth of this averment.

80. Denied. By way of further answer, hearing officers are obligated to provide updates to the case managers regarding hearing dates, number of sessions, and other matters so that the database can be marked and timelines monitored. In many instances in the spring of 2006, Plaintiff did not provide updates to the case managers, and did not respond in a timely fashion to those inquiries. These problems escalated to such a degree that they were brought to the attention of the Director who then communicated with Plaintiff directly as to the status of these cases. By way of further response, Plaintiff's failure or refusal to provide updates and get cases resolved in a timely fashion was a significant departure from Plaintiff's long standing customs, prompting Smith to ask Plaintiff if there was a problem. No answer was provided.

81. Denied. By way of further answer, Plaintiff told Smith that she did not believe cases on remand and 504 cases had to be resolved within timelines. Smith expressed her

disagreement with this. Furthermore, Plaintiff, as a hearing officer, is an independent contractor, and has an obligation to familiarize herself with the timeliness issues.

82. Denied.

83. Denied.

84. Admitted.

85. Denied.

## COUNT I

86. Defendants incorporate paragraphs 1 through 85 as if fully set forth herein.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

## COUNT II

94. Defendants incorporate paragraphs 1 through 93 as if fully set forth herein.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

## COUNT III

99. Defendants incorporate paragraphs 1 through 98 as if fully set forth herein.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

## COUNT IV

104. Defendants incorporate paragraphs 1 through 103 as if fully set forth herein.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

109. Denied.

110. Denied.

## COUNT V

111. Defendants incorporate paragraphs 1 through 110 as if fully set forth herein.

112. Denied.

113. Denied.

114. Denied. By way of further response, hearing officers do not "bid" on cases and Plaintiff was denied further cases because of her outstanding case load and her refusal to render decisions in a timely fashion.

## COUNT VI

115. Defendants incorporate paragraphs 1 through 114 as if fully set forth herein.

116. Denied.

117. Denied.

118. Admitted in part, denied in part. It is admitted that Smith refused to renew Plaintiff's contract due to her outstanding workload and decisions being overdue. The remaining averments in paragraph 118 are denied.

119.   Denied.

## DEFENDANTS, ODR AND KERRY VOSS SMITH'S, AFFIRMATIVE DEFENSES

AND NOW, comes the Defendants, Office for Dispute Resolution and Kerry Voss Smith, by and through their attorneys, to present the following Affirmative Defenses:

### FIRST AFFIRMATIVE DEFENSE

Defendant, ODR, is entitled to governmental immunity because there is no showing of policy, practice or custom in support of Plaintiff's claims.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to state any claims for which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

Defendant, Smith, is entitled to qualified immunity.

WHEREFORE, the Defendants, Office for Dispute Resolution and Kerry Voss Smith, respectfully request that Plaintiff's claims be denied and the Plaintiff's Amended Complaint be dismissed and judgment be entered in favor of the Defendants. The Defendants respectfully request all additional relief; legal and/or equitable, to which it may be entitled.

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: December 8, 2006          By:   /s/ Ellis H. Katz
                                       Ellis H. Katz, Esquire, Atty. I.D. # 34835
                                       331 Butler Avenue, P.O. Box 5069
                                       New Britain, Pennsylvania  18901
                                       (215) 345-9111 – Office
                                       (215) 348-1147 – Facsimile

                                       Attorney for Defendants,
                                       Office for Dispute Resolution and Kerry Voss Smith

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA J. STENGLE<br>    Plaintiff, | ) <br> ) <br> ) | |
| v. | ) <br> ) | CIVIL ACTION NO. 4:06-CV-01913 |
| OFFICE FOR DISPUTE RESOLUTION, PENNSYLVANIA DEPARTMENT OF EDUCATION, KERRY VOSS SMITH (in her individual capacity), AND LINDA O. RHEN (in her individual capacity),<br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) | (Judge John E. Jones, III)<br><br><br><br>JURY TRIAL DEMANDED |

**CERTIFICATE OF SERVICE**

I, Ellis H. Katz, Esquire, counsel for Defendants hereby certify that a true and correct copy of the foregoing Answer to Plaintiff's Amended Complaint with Affirmative Defenses is available through the Court's ECF filing system and was served upon the following counsel on this date by U.S. First Class Mail:

Jana R. Barnett, Esquire
1238 Cleveland Avenue
Wyomissing, Pennsylvania  19610-2012

Amy C. Foerster, Esquire
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, Pennsylvania  17120

SWEET, STEVENS, KATZ & WILLIAMS LLP

Date: December 8, 2006            By:      /s/ Ellis H. Katz
                                                   Ellis H. Katz, Esquire Attorney ID #34835
                                                   331 Butler Avenue, P.O. Box 5069
                                                   New Britain, Pennsylvania  18901
                                                   Attorney for Defendants,
                                                   Office for Dispute Resolution and Kerry Voss Smith