Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----)**

Page 1

Briefs and Other Related Documents
Illinois Dunesland Preservation Society v. Illinois Dept. of Natural ResourcesN.D.Ill.,2006.Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
ILLINOIS DUNESLAND PRESERVATION SOCIETY, an Illinois not for profit corporation, Plaintiff,
v.
THE ILLINOIS DEPARTMENT OF NATURAL RESOURCES, et al.
Defendants.
**No. 06-C-2880.**

Nov. 13, 2006.

**Background:** Environmental organization brought civil rights suit against state agency and state officials after they refused to allow organization to display pamphlet in state park. Defendants moved to dismiss for failure to state claim.

**Holdings:** The District Court, Bucklo, Circuit Judge, held that:

(1) organization stated claim under First Amendment;

(2) claim for injunctive relief was improper to extent it was brought against state agency; and

(3) sovereign immunity applied to bar § 1983 claim for declaratory relief against state agency and its officials.

Motion denied.

**[1] Constitutional Law 92 ☜90.1(4)**

92 Constitutional Law
   92V Personal, Civil and Political Rights
     92k90 Freedom of Speech and of the Press
      92k90.1 Particular Expressions and Limitations
       92k90.1(4) k. Use of Streets and Public Places;  Licenses and Permits. Most Cited Cases

**States 360 ☜88**

360 States
   360III Property, Contracts, and Liabilities
     360k88 k. Control and Regulation of Public Buildings and Places. Most Cited Cases
Organization stated claim under First Amendment by alleging that state park barred its pamphlet about pollution in park while allowing display of pamphlets from other entities, including shopping center, amusement park, and health departments; it was possible that traditional forum analysis applied and one possible interpretation of allegations was that pamphlet was suppressed based on its content. U.S.C.A. Const.Amend. 1.

Organization stated claim under First Amendment by alleging that state park barred its pamphlet about pollution in park while allowing display of pamphlets from other entities, including shopping center, amusement park, and health departments; it was possible that traditional forum analysis applied and one possible interpretation of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                    Page 2
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----)**

allegations was that pamphlet was suppressed based on its content. U.S.C.A. Const.Amend. 1.

## [2] Constitutional Law 92 ⇐⇒90.1(4)

92 Constitutional Law
   92V Personal, Civil and Political Rights
     92k90 Freedom of Speech and of the Press
      92k90.1 Particular Expressions and Limitations
       92k90.1(4) k. Use of Streets and Public Places; Licenses and Permits. Most Cited Cases
Traditional forum analysis does not apply under First Amendment in limited circumstances in which the government's limitation on the access of a private speaker to a public forum is necessary to effectuate a particular governmental mandate. U.S.C.A. Const.Amend. 1.

## [3] Constitutional Law 92 ⇐⇒90.1(1)

92 Constitutional Law
   92V Personal, Civil and Political Rights
     92k90 Freedom of Speech and of the Press
      92k90.1 Particular Expressions and Limitations
       92k90.1(1) k. In General. Most Cited Cases
Under government speech doctrine, government may regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message. U.S.C.A. Const.Amend. 1.

## [4] Civil Rights 78 ⇐⇒1354

78 Civil Rights
   78III Federal Remedies in General
     78k1353 Liability of Public Officials
      78k1354 k. In General. Most Cited Cases
Claims may be brought under § 1983 against state employees in their individual capacities, even for actions taken in their official capacities. 42 U.S.C.A. § 1983.

## [5] Civil Rights 78 ⇐⇒1354

78 Civil Rights
   78III Federal Remedies in General
     78k1353 Liability of Public Officials
      78k1354 k. In General. Most Cited Cases
Official capacity actions against individual state employees for injunctive relief are not treated as impermissible actions against the State. 42 U.S.C.A. § 1983.

## [6] Civil Rights 78 ⇐⇒1344

78 Civil Rights
   78III Federal Remedies in General
     78k1342 Liability of Municipalities and Other Governmental Bodies
      78k1344 k. States and Territories and Their Agencies and Instrumentalities, in General. Most Cited Cases

## Civil Rights 78 ⇐⇒1354

78 Civil Rights
   78III Federal Remedies in General
     78k1353 Liability of Public Officials
      78k1354 k. In General. Most Cited Cases
Claim for injunctive relief was improper against state agency itself, which was not a person who could deprive party of rights under § 1983; plaintiff, however, could seek injunctive relief against individual state officials in their official capacity. 42 U.S.C.A. § 1983.

## [7] Civil Rights 78 ⇐⇒1376(3)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                          Page 3
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----)**

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
            78k1376(3) k. States and Territories and Their Officers and Agencies. Most Cited Cases

**Federal Courts 170B ⟾269**

170B Federal Courts
   170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
      170BIV(A) In General
         170Bk268 What Are Suits Against States
            170Bk269 k. State Officers or Agencies, Actions Against. Most Cited Cases

**States 360 ⟾191.9(2)**

360 States
   360VI Actions
      360k191 Liability and Consent of State to Be Sued in General
         360k191.9 Particular Actions
            360k191.9(2) k. Declaratory Judgment. Most Cited Cases
Principles of sovereign immunity applied to bar § 1983 claim for declaratory relief brought against state agency and its officials. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

Principles of sovereign immunity applied to bar § 1983 claim for declaratory relief brought against state agency and its officials. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

Principles of sovereign immunity applied to bar § 1983 claim for declaratory relief brought against state agency and its officials. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

**[8] Civil Rights 78 ⟾1394**

78 Civil Rights
   78III Federal Remedies in General
      78k1392 Pleading
         78k1394 k. Complaint in General.
Most Cited Cases
To state a claim for a violation of § 1983, a plaintiff must show that each defendant caused or participated in the alleged constitutional deprivation. 42 U.S.C.A. § 1983.

**[9] Civil Rights 78 ⟾1395(1)**

78 Civil Rights
   78III Federal Remedies in General
      78k1392 Pleading
         78k1395 Particular Causes of Action
            78k1395(1) k. In General. Most Cited Cases
At pleading stage, allegation that individual state officials instructed superintendent of state park to deny organization permission to display its pamphlet at state park were sufficient to allege each defendants' participation in constitutional deprivation, as required to state claim. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

Donald L. Metzger, Metzger & Associates, Ltd., Chicago, IL, for Plaintiff.
Rachel Jana Fleischmann, Meghan O'Donnell Maine, Illinois Attorney General's Office, Chicago, IL, for Defendants.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----)**

# MEMORANDUM OPINION AND ORDER

BUCKLO, District J.

**\*1** Defendants have brought a motion to dismiss the complaint brought by plaintiff, the Illinois Dunesland Preservation Society ("Dunesland"). Dunesland's complaint alleges that defendant Illinois Department of Natural Resources ("IDNR") and the other named defendants [FN1] have refused to allow Dunesland to display a pamphlet at the Illinois Beach State Park (the "Park"), a facility owned by the State of Illinois and managed by the IDNR, despite the fact that the defendants display informational pamphlets for other entities. Dunesland's pamphlet is a two-page brochure discussing how to avoid asbestos exposure at the Park. The complaint contends that the Park has areas "where other informational and cautionary flyers and brochures were displayed, including the Park's office, the Park's nearby Nature Preserve, and the Park lodge, which is run by a concessionaire." It further contends that, at the time Dunesland requested its pamphlet be displayed at the Park, the Park had "pamphlets advertising a shopping center and an amusement park" and "warnings from State and local health departments about E. coli and West Nile Virus." Finally, it alleges that "[t]he entities which provided the pamphlets displayed at the Park were not required to obtain any type of permit from IDNR to display or distribute the pamphlets."

Dunesland claims that it submitted its flyer to the superintendent of the Park for the IDNR's approval. It alleges that the superintendent faxed a copy of the report to individual defendants Furr, Hickman, Ascaridis, and Mayville, and asked for their advice. The complaint states that the "individual defendants, acting in concert, determined to prohibit [Dunesland] from

displaying the flyer at the Park... and instructed [the superintendent] to inform Dunesland that IDNR had denied the request to display the flyer because of its content." Subsequently, the superintendent sent Dunesland a letter denying its request and stating that the "IDNR does not feel the flyer initiated by [Dunesland] contains appropriate content."

Dunesland's complaint seeks (1) a declaration that the defendants' actions violated Dunesland's First and Fourteenth Amendment rights (Count I); (2) an injunction prohibiting defendants from preventing Dunesland from displaying, distributing, and disseminating its flyer at the park (Counts II and III); and (3) damages under 42 U.S.C. § 1983 for violations of Dunesland's constitutional right to freedom of speech and equal protection (Count IV). Defendants have brought a motion under FED. R. CIV. P. 12(b)(6) to dismiss Dunesland's complaint in its entirety. Their motion contends that Dunesland (1) has no First Amendment right to force defendants to display its pamphlet at the Park; (2) may not bring a § 1983 claim against the IDNR; and (3) has not sufficiently alleged involvement by certain individual defendants in the purported violation of Dunesland's rights. For the following reasons, I grant defendants' motion in part and deny it in part.

## I.

**\*2** In assessing defendants' motion to dismiss, I must accept all well-pled facts in Dunesland's complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir.2002). I must view the allegations in the light most favorable to Dunesland. *Gomez v. Illinois State Bd. of*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----)**

*also First Defense Legal Aid v. City of Chicago,* 319 F.3d 967, 972 (7th Cir.2003) (citing *Cornelius,* 473 U.S. at 788) (noting that "[p]ublic buildings and proceedings may be devoted to those chosen to carry out public purposes" in holding that a police department does not violate the First Amendment rights of attorneys by not informing suspects in police custody that the attorney had arrived to represent them).

**\*3** [3] Here, however, taking the facts as alleged in plaintiff's complaint as true, it is not clear that traditional forum analysis should not apply. Dunesland's complaint contends that defendants refused to display its pamphlet even though the Park displayed pamphlets from other entities, including a shopping center, an amusement park, and state and local health departments. It alleges that these entities were not required to obtain a permit to display their pamphlets. From the complaint, it is not clear what the IDNR's purpose is in displaying these pamphlets, whether the IDNR solicited these pamphlets or merely allowed individual organizations to place the pamphlets at the Park, and how these pamphlets are actually displayed.[FN3] For this reason, I cannot conclude at this stage of the case that the Park, or the areas of the Park in which pamphlets are displayed, are not subject to the public forum analysis.[FN4]

Defendants argue in the alternative that if the areas of the Park displaying pamphlets are subject to forum analysis, these areas are non-public fora that the government may reserve "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." [FN5] *Perry,* 460 U.S. at 46. Taking the well-pled facts in the complaint as true, it is

not clear here what the "purpose" of the areas in the Park displaying the pamphlets were. If the purpose was to allow certain entities to display their messages relevant to the Park (such as advertising nearby attractions), refusing to allow plaintiff to display its message relevant to the Park might be unreasonable or impermissible viewpoint discrimination. In addition, plaintiff has specifically alleged that the IDNR said that it would not display Dunesland's pamphlet because the pamphlet did not contain "appropriate content," and in an internal meeting the individual defendants instructed the Park superintendent to reject plaintiff's pamphlet because of its content. While this language is subject to interpretation, one possible interpretation is that the IDNR suppressed plaintiff's expression because it opposed Dunesland's views on pollution at the Park.

For these reasons, defendants' arguments that plaintiff has not stated a First Amendment claim are without merit, and I deny their motion to dismiss plaintiff's First Amendment-related claims.

## III.

Defendants also contend that Dunesland's request for relief under 42 U.S.C. § 1983 (2006) against the IDNR and the individual defendants in their official capacities is barred because, as a state agency protected by Eleventh Amendment sovereign immunity, the IDNR is not a "person" who can deprive a party of its rights, privileges or immunities under § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 65-66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The same is true for claims brought against the individual defendants sued in their official capacities. *See id.* at 71.

--- F.Supp.2d ----                                                    Page 8
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----)**

The complaint does specifically allege that certain defendants took other specific actions (i.e., that Furr, Hickman, Ascaridis and Mayville received a copy of Dunesland's flyer, and that Hickman asked the superintendent for his recommendation on the flyer), but does not allege further specific actions by the other individual defendants. However, the requirements of federal notice pleading do not require Dunesland to do more at this stage of the litigation other than allege that the individual defendants instructed the superintendent of the Park to deny Dunesland the right to display its pamphlet at the Park. *See Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 714 (7th Cir.2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits ... that will let the defendant investigate.... Details come later, usually after discovery."). Dunesland has sufficiently alleged involvement by each individual defendant, so it would be inappropriate to dismiss any of them from the lawsuit at this time.

### V.

**\*5** For the above reasons, I grant defendants' motion to dismiss in part, and deny it in part. I grant defendants' motion to dismiss the IDNR from this suit, and dismiss those claims for damages and declaratory judgment against the individual defendants in their official capacities. I deny the remainder of defendants' motion.

> FN1. Dunesland's complaint names six IDNR agents as defendants (the "individual IDNR defendants") and two agents of the Illinois Department of Public Health (the "individual

IDPH defendants"), all of whom are sued in their individual and official capacities. The individual IDNR defendants are Jonathan Furr, Stan Yonkauski, Tim Hickman, Beverly Ascaridis, Tony Mayville, and Joe Bauer. The individual IDPH defendants are Tom Schafer and Jennifer Davis.

> FN2. Defendants distinguish their interpretation of plaintiff's argument, that the IDNR should be required to make plaintiff's pamphlet available to the public at its display locations in the Park, from an argument that plaintiff should be allowed to use the Park to engage in speech by passing out the pamphlet to the public or having a demonstration in support of the ideas expressed in the pamphlet. Defendants concede that the Park is some type of public forum and that, if plaintiff itself wished to distribute the pamphlet at the Park, forum analysis would apply to determine what restrictions defendants could impose on plaintiff to do so.

> FN3. The defendants' motion to dismiss discusses plaintiff's complaint as though it alleges that defendants refused to place plaintiff's pamphlet on pamphlet racks at the Park under the defendants' control. However, plaintiff's complaint makes no mention of pamphlet racks in particular, but merely alleges that the Park displays pamphlets from other entities.

> FN4. For the same reason, I cannot conclude at the motion to dismiss stage that the pamphlets displayed at the Park are a type of government

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                Page 9
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)
**(Cite as: --- F.Supp.2d ----)**

speech, as defendants contend. The government may "regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message." *Rosenberger v. Rector and Visitors of Univ. of Virginia,* 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) (overturning university policy refusing to fund student groups that manifest a belief "in or about a deity or an ultimate reality"); *see also Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (holding government may condition receipt of federal funding for family planning services on an organization's agreement not to give abortion-related advice). From plaintiff's complaint it is not clear who authored the pamphlets displayed at the Park, whether defendants selected certain pamphlets to display or whether they allowed certain groups to display their pamphlets at the park, whether those groups requested to display their pamphlets or the government sought them out, or for what purpose those pamphlets were chosen or allowed. It is therefore not clear whether the pamphlets the IDNR displayed qualify as "government speech."

FN5. Taking the well-pled facts in plaintiff's complaint as true, however, it is possible that the areas of the Park displaying pamphlets are at least a designated public forum; if the IDNR allowed certain groups to place their materials in those areas without obtaining a permit, as plaintiff contends, and depending on the IDNR's purpose in establishing those areas, a court could find that the stricter rules governing designed public fora should apply to determine what speech the defendants could restrict in those areas.

FN6. Plaintiff has not brought its claims for injunctive relief against the individual defendants in their individual capacities; such claims would be barred had plaintiff brought them. *See Greenawalt v. Indiana Dep't of Corr.,* 397 F.3d 587, 589 (7th Cir.2005).

N.D.Ill.,2006.
Illinois Dunesland Preservation Society v. Illinois Dept. of Natural Resources
--- F.Supp.2d ----, 2006 WL 3313764 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3031254 (Trial Motion, Memorandum and Affidavit) Response of Illinois Dunesland Preservation Society in Opposition to the State's Motion to Dismiss the Complaint (Sep. 18, 2006) Original Image of this Document (PDF)
• 1:06cv02880 (Docket) (May 23, 2006)
• 2006 WL 2580815 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion to Dismiss (2006) Original Image of this Document (PDF)
• 2006 WL 3031255 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss (2006) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                              Page 1
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
**(Cite as: Slip Copy)**

H

Briefs and Other Related Documents

Powers v. NWA, Inc.W.D.Tenn.,2006.Only
the Westlaw citation is currently available.

United States District Court,W.D.
Tennessee,Western Division.
Coleen L. POWERS, Plaintiff,
v.
NWA, INC., et al., Defendants.
**No. 05-2468-B/P.**

April 13, 2006.

Coleen L. Powers, Memphis, TN, pro se.

ORDER DENYING MOTION FOR
RECONSIDERATION

J. DANIEL BREEN, District Judge.

**\*1** The Court issued an order on February
23, 2006 that, *inter alia,* declared that
Coleen L. Powers is the sole plaintiff in this
action; advised Powers that, as a *pro se*
litigant, she cannot prosecute this action as a
class action; denied appointment of counsel;
and directed Powers to file an amended
complaint, within thirty days, that complies
with    Fed.R.Civ.P.    8(a)(1)    &    (2).
Specifically, the order pursuant to that,
[a]part from the deficiencies that are
addressed *supra,* the amendment must, at a
minimum,   identify   each   administrative
proceeding that is being "removed" to
federal court, including the subject-matter of
each such proceeding and the parties
involved. With respect to each additional
claim asserted, the amended complaint must
(I) identify the basis for federal jurisdiction;
(ii) state the parties who are sued; (iii)
identify any state or federal statute under
which the claim arises; and (iv) provide a
short and plain statement of the factual basis

for the claim.

02/23/06 Order at 11-12.

On March 8, 2006, plaintiff filed a motion
(D.E.18), entitled "Plaintiffs [sic] *Motion* for
Court to Appoint Class Counsel in this
Action and Plaintiffs [sic] Partial Objections
and Concerns to this Courts [sic] Erroneous
Order Filed on or About February 23, 2006,
Received on or About February 26, 2006 by
Plaintiff    Powers    &    Motion    for
Reconsideration to Certify this Cause as a
Class Action and for Entry of Modified
and/or Amended Order." This Court issued
an order on March 9, 2006 that denied the
motion for reconsideration of the denial of
appointed counsel and advised plaintiff that,
"as the plaintiff cannot maintain a *pro se*
class action, no useful purpose would be
served by renewal of a motion for class
certification until, and unless, the plaintiff
retains counsel." 03/09/06 Order (D.E.20),
at 2.

Plaintiff filed two additional motions on
March 23, 2006 (D.E.'s 21 & 22), and the
Court issued orders addressing those
motions on April 7, 2006. Pursuant to one
such order (D.E. 46 at 3), plaintiff was
afforded an extension of time, until the close
of business on April 27, 2006, to submit her
amended complaint. In another order (D.E.
47 at 8), plaintiff was directed to cease and
desist from the filing of redundant motions.

In her motion filed on March 29, 2006, the
plaintiff sets forth, in a rather disjointed
form, her comments on the orders issued on
February 23, 2006 and March 9, 2006, as
well as other matters not relevant to a
motion seeking reconsideration of those

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
**(Cite as: Slip Copy)**

orders.[FN1]

> FN1. Although plaintiff purports to bring this motion pursuant to Fed.R.Civ.P. 46, that rule, which concerns the taking of formal exception to rulings of the Court at trial, has no applicability here.

First, plaintiff moves, "[p]ursuant to Fed.R.Civ.P., rules 7, 11, and 60(b)," [FN2] to vacate the February 23, 2006 and March 9, 2006 orders, allow plaintiff to proceed on the original complaint, and provide her one hundred twenty (120) days to effect service on the defendants. Mot., ¶ 2. [FN3] The motion to vacate the orders issued on February 23, 2006 and March 9, 2006 is DENIED. In the event plaintiff files an amended complaint that complies with the Federal Rules of Civil Procedure and that asserts claims over which this Court has subject-matter jurisdiction, plaintiff will be afforded an appropriate time to serve the defendants. *See* Local Rule 83.7(a)(2).[FN4]

> FN2. None of these provisions is applicable here, and particularly not Fed.R.Civ.P. 60(b), which applies only after a final judgment has been entered. *See* Fed.R.Civ.P. 54(a).

> FN3. Plaintiff's request to restore James G. Blodgett, Jr. as a party to this action, was denied in an order issued on April 7, 2006 (D.E.47). That order is final and will not be revisited.

> FN4. Although civil litigants ordinarily have 120 days to effect service on the defendants, Fed.R.Civ.P. 4(m), in this case there

is good cause for the delay as the Court has not authorized the Clerk to issue summonses to the plaintiff.

*2 Next, plaintiff complains about the length of time the case has been pending without an order directing the Clerk to issue summonses. Mot., ¶ ¶ 3-6. This delay is attributable to the fact that the plaintiff's complaint, as submitted, is incomprehensible, making it impossible to ascertain the nature of the claims asserted against each of the forty-five (45) named defendants and to conclude that the Court has subject-matter jurisdiction over each claim. [FN5] Because the plaintiff will be given adequate time to serve any defendants that remain, she will not be prejudiced by the delay.[FN6]

> FN5. Plaintiff's suggestion that the Court review all the documents submitted, including the almost 3000 pages of paper from other proceedings submitted since the entry of the February 23, 2006 order, Mot., ¶ 4, is DENIED. The plaintiff's claims must be asserted in her complaint. Fed.R.Civ.P. 7(a), 8(a). The various documents submitted by the plaintiff are not pleadings. Fed.R.Civ.P. 7(a). Although a plaintiff may submit exhibits to her pleading, Fed.R.Civ.P. 10(c), the various documents were not submitted as exhibits to the complaint. Moreover, in light of the volume of paper submitted by the plaintiff, no exhibit will be deemed to be part of the complaint unless specifically incorporated by docket number ("D.E.") and page. 04/07/06 Order (D.E.46) at 3.

Slip Copy                                                                   Page 3
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
**(Cite as: Slip Copy)**

> FN6. Although the plaintiff
> complains of the defendants' failure
> to consent to waive service, Mot., ¶ ¶
> 7-8, no useful purpose is served in
> bringing this matter to the Court's
> attention as the plaintiff is solely
> responsible for effecting service once
> summonses are issued. *Cf. Byrd v.
> Stone,* 94 F.3d 217, 219 (6th
> Cir.1996) (setting forth the Court's
> responsibility to ensure that service
> is effected where a *pro se* plaintiff is
> indigent). Any request to be
> reimbursed for the costs of service is
> clearly premature.

The plaintiff's request for oral argument on
this motion, Mot., ¶ 10, is DENIED. The
sufficiency of the pleading submitted by the
plaintiff, and the application for appointed
counsel, would not be aided by oral
argument.

Next, plaintiff asserts that the denial of class
action status was premature. Mot., ¶ 13(4).
The Court's orders make clear that the denial
of class action status was solely due to the
fact that the plaintiff is proceeding *pro se.
See, e.g.,* 03/09/06 Order (D.E.20) at 2
("[A]s the plaintiff cannot maintain a *pro se*
class action, no useful purpose would be
served by renewal of a motion for class
certification until, and unless, the plaintiff
retains counsel"). The Court is aware that
Powers is not a prisoner. Nonetheless, for
the reasons stated in the previous orders,
02/23/06 Order at 3-4; 04/07/06 Order
(D.E.47) at 3-4, 5-7, plaintiff cannot appear
*pro se* on behalf of anyone other than
herself. Permitting her to represent a class
would violate Fed.R.Civ.P. 11(a) and 28
U.S.C. § 1654 and would represent the
unauthorized practice of law by Powers.
This aspect of plaintiff's motion is

DENIED.[FN7]

> FN7. As this motion was not
> personally signed by James G.
> Blodgett, Jr., and as the status of
> Blodgett was addressed in a separate
> order (D.E.47), the Court will not
> revisit this issue as presented in ¶ ¶
> 13(2)-(3) of the motion, except to
> observe that the attachment to this
> motion (D.E. 39 at 24-28) suggests
> that the Sixth Circuit apparently had
> some of the same concerns about
> Blodgett's participation in that
> action, Sixth Circuit appeal no. 05-
> 4087, as did the Court in this case.

Next, plaintiff complains, again, about the
denial of her motion for appointment of
counsel. Mot., ¶ ¶ 13(5), (14)-(15). As a
preliminary matter, this is the third time the
Court has been asked to address this
issue,[FN8] and the Federal Rules of Civil
Procedure do not contemplate the filing of
repetitive motions. The plaintiff is
CAUTIONED that motions for
reconsideration should be filed *only* when
the Court clearly made a mistake of fact or
law or when the factual situation has
changed materially since the filing of the
original motion. Repeated motions for
reconsideration are not acceptable merely
because a party disagrees with the Court's
decision. The decision to appoint counsel is
discretionary, and the Court has stated,
twice, why appointment of counsel was
denied. This aspect of the plaintiff's motion
is DENIED. This decision is final and will
not be reconsidered.[FN9]

> FN8. *See* 02/23/06 Order at 4-6;
> 03/09/06 Order at 1-2.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
**(Cite as: Slip Copy)**

., § 1980.111(c). Within sixty (60) days after issuance of a final order by the Board under § 1980.110, any aggrieved person may file a petition for review in the United States Court of Appeals for the circuit in which the violation allegedly occurred or the circuit in which the complainant resided on the date of the violation." *Id.,* § 1980.112(a).[FN11] However,

> FN10. The standards for establishing a *prima facie* case of prohibited discrimination, and of rebutting that case, as set forth in 29 C.F.R. § 1980.104(b)-(c).

> FN11. Moreover, "[a] final order of the Board is not subject to review in any criminal or other civil proceeding." *Id.*

**\*3** [i]f the Board has not issued a final decision within 180 days of the filing of a complaint, and there is no showing that there has been delay due to the bad faith of the complainant, the complainant may bring an action at law or equity for *de novo* review in the appropriate district court of the United States, which will have jurisdiction over such an action without regard to the amount in controversy.
*Id.,* § 1980.114(a).

As Powers has pointed out, Mot., ¶ 13(8), the complaint in this case identifies several administrative proceedings by docket number, *see* Compl., ¶ 4 (ARB cases 04-111, 05-022, 03-061, and 03-125), each of which she presumably seeks to remove pursuant to 29 C.F.R. § 1980.114(a). However, the allegations concerning these four proceedings are inadequate because: (i) plaintiff has not attached copies of the complaints in those cases, making it

impossible for the Court to confirm that they were brought pursuant to the SOX (and, therefore, removable to federal court)[FN12] and to identify the parties to those cases[FN13] and the claims asserted therein; and (ii) the complaint does not set forth, with respect to each such administrative proceeding plaintiff seeks to remove to the federal court, the date on which the proceeding was commenced, any and all administrative docket number assigned to the proceeding,[FN14] and the status of the proceeding at the time this action was commenced. At the present time, therefore, the Court is unable to confirm that it has subject-matter jurisdiction over any SOX claim pursuant to 29 C.F.R. § 1980.114(a).[FN15]

> FN12. By way of example, ¶ 5 of the complaint refers to an administrative complaint filed by the plaintiff with the Assistant Secretary on December 27, 2004 (which may or may not be one of the cases identified in ¶ 4), that purports to bring claims pursuant to
> illegal employment discrimination for past and current protected activities related to pursuit of administrative complaints that involve securities, including appearances of illegal insider trading, violations of the Fair Labor Standards Act, violations of the FAA federal aviation regulations, { FARS} [sic], violations of U.S. DOT TSA Security directives, and violations of the EPA environmental statutes.... It also claimed concerns and illegal retaliation by named persons on Plaintiffs [sic] concerns and complaints made on the appearance of labor racketeering

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

among the airline industry, PACE International Union, and Pollution Control Industries [PCI]. {Taft-Hartley Act / LMDRA}. It also contained allegations of collusion, conspiracy, and co-conspiracy to commit acts that are illegal and in furtherance of financial harm, defamation, and intentional emotional distress to Plaintiff/Crewmember Powers for these protected activities.

Most of these subjects do not pertain to a claim of illegal retaliation under SOX and do not appear to be removable to federal court under § 1980.114(a).

FN13. Pursuant to 29 C.F.R. § 1980.108(a)(1), "[t]he complainant and the named person will be parties in every proceeding. At the Assistant Secretary's discretion, the Assistant Secretary may participate as a party or as *amicus curiae* at any time at any stage of the proceedings." The Assistant Secretary is not named as a party to this action. The regulations do not appear to contemplate a SOX claim against, *inter alia,* the United States Department of Labor ("USDOL"), Occupational Safety and Health Administration ("OSHA"), Region 4; the USDOL, Office of Administrative Law Judges ("OALJ"); the USDOL, ARB; Dennis Russell; Michael Moon; Cindy Coe-Laseter; or Elaine Chao, the Secretary of the USDOL.

Moreover, the administrative complaint may only be brought against "named person[s]," who are defined as "the employer and/or the company or company representative named in the complaint who is alleged to have violated the Act." 29 C.F.R. § 1980.101. A "company representative" is "any officer, employee, contractor, subcontractor, or agent of a company." *Id.* This suggests, *at a minimum,* that Tennessee Attorney General Paul Summers; Tennessee Assistant Attorney General Brandy Gagliano; the Office of the Tennessee Secretary of State, Administrative Procedures Division ("APD"); Charles C. Sullivan, II; the Office of the General Counsel, Tennessee Department of Environment and Conservation ("TDEC"); Kim L. Kirk; Tennessee Department of Labor and Workforce Development, Board of Review ("TDLWFD, BOR"); Suzanne J. Stamps; and Michael E. Magill, a former Commissioner of the TDLWFD, are not proper parties to any SOX claim.

FN14. It appears that the proceedings are assigned a docket number when first commenced before the Assistant Secretary, another docket number when under review by the OALJ, and a third docket number when under review by the Board. The complaint does not correlate these numbers for each administrative complaint, making it impossible to track the allegations in the complaint for any particular administrative proceeding.

FN15. Moreover, although ¶ ¶ 16 and 72 of the complaint expresses the plaintiff's desire to "remand" certain actions pending in the United States Court of Appeals for the Sixth Circuit, docket numbers 04-4441 and 05-3266, which may or may not be

Slip Copy                                                                                          Page 7
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
**(Cite as: Slip Copy)**

appeals of any of the four cases identified in ¶ 4 of the complaint, this Court does not appear to have the authority to do that. 29 C.F.R. § 1980.112(a); *see supra* p. 8. Instead, it appears that federal district courts have subject-matter jurisdiction of SOX claims *only* when an action is commenced pursuant to 29 C.F.R. § 1980.114(a).

The other bases of federal jurisdiction cited by the plaintiff are of no assistance to her.[FN16] The general federal question jurisdiction statute, 28 U.S.C. § 1331, is applicable only when the plaintiff sues under a federal statute providing a private right of action. Of the seventeen claims asserted in the complaint, it is not clear whether counts 2, 3, 4, 6, 8, 9, 10, 11, and 13 are based on statute or common law, or even whether they purport to arise under federal or state law.[FN17]

> FN16. One statute cited by the plaintiff, 28 U.S.C. § 1434, does not exist.

> FN17. Counts 5 and 14-17 arise under state law and, therefore, provides no independent basis for federal subject-matter jurisdiction.

Count 1 arises under federal law and purports to rely on 29 C.F.R. Parts 24 and 1979.[FN18] Twenty-nine C.F.R. Part 24 contains procedures governing the handling of discrimination complaints by the Secretary of the USDOL of discrimination complaints under various federal statutes. The complaint does not allege a violation of any of the federal statutes covered by this Part, and the regulations do not provide a private right to sue in federal court.

> FN18. Count 1 also purports to rely on 29 C.F.R. Part 1980 but, for the reasons previously stated, the jurisdictional allegations concerning that claim are inadequate.

Twenty-nine C.F.R. Part 1979, the regulations establishing procedures for the handling of discrimination complaints under § 519 of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121 ("AIR21"), do not authorize a complainant to remove an administrative complaint to federal court. Moreover, judicial review of a final decision by the ARB may be had only in "the United States Court of Appeals for the circuit in which the violation occurred or the circuit in which the complainant resided on the date of the violation." 29 C.F.R. § 1979.112(a).[FN19]

> FN19. Federal district courts have jurisdiction over suits brought by the Secretary of the USDOL charging noncompliance with a preliminary order of reinstatement or a final order or the terms of a settlement agreement. 29 C.F.R. § 113. That provision is inapplicable here.

*4 Accordingly, Count 1 does not provide a basis for federal subject-matter jurisdiction.

The Court may have jurisdiction over count 7, which asserts a violation of 42 U.S.C. § 1983. Section 1983 encompasses violations of the federal Constitution or federal law by individuals acting under color of state law, but only if the complaint states a claim under that provision. It is not clear which constitutional provisions or federal statutes the plaintiff relies in her § 1983 claim.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
**(Cite as: Slip Copy)**

Page 8

Moreover, most of the named defendants in this action cannot be sued under § 1983. "A § 1983 plaintiff may not sue purely private parties." *Brotherton v. Cleveland,* 173 F.3d 552, 567 (6th Cir.1999). Thus, "[i]n order to be subject to suit under § 1983 claim, defendant's actions must be fairly attributable to the state." *Collyer v. Darling,* 98 F.3d 211, 231-32 (6th Cir.1997).[FN20] The plaintiff also cannot sue federal agencies and their employees under § 1983 as they do not act under color of state law. *See Franklin v. Henderson,* No. 00-4611, 2000 WL 861697, at *1 (6th Cir. June 20, 2001) ("The federal government and its officials are not subject to suit under 42 U.S.C. § 1983."); *Kostyu v. Ford Motor Co.,* No. 85-1207, 1986 WL 16190, at *1 (6th Cir. July 28, 1986) ("We observe initially the lack of state action which would provide jurisdiction for this action under § 1983. The defendants are federal officials and private parties carrying out federal income tax policies.").[FN21] Moreover, the Eleventh Amendment severely limits the plaintiff's ability to sue many of the state defendants, including the Office of the Tennessee Secretary of State, APD; the Office of the General Counsel, TDEC; and TDLWFD, BOR, as well as any state employee sued in his or her official capacity.[FN22] Accordingly, at the present time count 7 does not provide a basis for federal subject-matter jurisdiction.

FN20. Therefore, the plaintiff cannot, as a matter of law, assert a § 1983 claim against NWA, Inc.; Pinnacle Airlines, Inc. d/b/a NWA Airlink; Pinnacle Airlines Corporation; Pinnacle Airlines Corporation of Tennessee; Phil Reed; Phil Trenary; Theodore Davies; Alice Pennington; NWAC; NWA Incorporated; Doug Hall;

DLA Piper Rudnick, Gray Cary U.S. LLP; PACE International Union; Teresa Brents; James N. Hendricks; Pollution Control Industries ("PCI") of Tennessee, LLC; PCI, Inc.; John M. Newell; Weinburg Richmond LLP; Lawrence Karlin; the Winchester Law Firm; Mark Grai; Steve Hoffman; Mesaba Airlines d/b/a NWA Airlink; Mesaba Holdings, Inc.; Waller Lansden Dortch and Davis, LLP; Edward M. Callaway; Michael David Gaines; Milton H. Hamilton; and Kim Monroe under § 1983, as they are private actors.

FN21. Therefore, the plaintiff cannot, as a matter of law, assert a § 1983 claim against the USDOL, OSHA, Region 4; the USDOL, OALJ; the USDOL, ARB; Dennis Russell; Michael Moon; Cindy Coe-Laseter; or Elaine Chao.

FN22. Although plaintiff can assert a § 1983 claim against a state employee in his or her individual capacity, there is no *respondeat superior* liability under § 1983 and, therefore, the defendant must have had direct, personal involvement in any wrongdoing. *See, e.g ., Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984).

Count 12 of the complaint, entitled "US DOL VIOLATIONS of FOIA," presumably refers to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et *seq.* A FOIA claim can only be brought against a federal agency, *id., § 552; see also* 5 U.S .C. § 551(1) (defining "agency"). Although the FOIA claim purports to be brought against "US DOL," that entity is not a party to this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

lawsuit. Moreover, the complaint does not allege that the plaintiff sought specific information from a federal agency in accordance with the proper administrative procedures and that her request was improperly refused. Exhaustion of administrative remedies is a condition precedent to a FOIA suit. *See, e.g., In re Steele,* 799 F.2d 461, 465-66 (6th Cir.1986). Count 12 does not state a valid FOIA claim.

For all the foregoing reasons, then, the complaint fails to assert a valid claim over which the Court would have federal question jurisdiction under 28 U.S.C. § 1331 or 42 U.S.C. § 1983. The two remaining bases for federal subject-matter jurisdiction advanced by the plaintiff also are of no assistance to her. Although the plaintiff invokes 42 U.S.C. § 1988, that statute does not provide a basis for federal subject-matter jurisdiction.

**\*5** Finally, 28 U.S.C. § 1367, which concerns supplemental jurisdiction, is available only where the complaint asserts some claim over which the federal courts have original jurisdiction. 13B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3567.3 (2d ed.) ("The supplemental-jurisdiction statute is not a source of original jurisdiction and a case cannot be brought or removed on grounds of supplemental jurisdiction alone. In other words, there must be a predicate claim that invokes some independent form of federal subject matter jurisdiction, such as federal question or diversity of citizenship jurisdiction, to which a supplemental claim can append.") (footnote omitted). Thus, the Court may choose to exercise supplemental jurisdiction over the state-law claims asserted in the complaint, but only if the complaint asserts one or more claims over

which the Court may exercise original subject-matter jurisdiction.

Accordingly, that aspect of the plaintiff's motion seeking reconsideration of the order directing her to file an amended complaint that complies with Fed.R.Civ.P. 8(a)(1) is DENIED. There must be a valid basis for federal subject-matter jurisdiction over each and every federal claim asserted in the amended complaint. The foregoing discussion also makes clear that the plaintiff's position that each of the forty-five (45) named defendants can be held jointly and severally liable on each and every claim, Mot., ¶ 13(9), is legally incorrect.[FN23]

FN23. To the extent that any count depends on the existence of a conspiracy, the plaintiff must plead specific facts from which an inference of conspiracy may be drawn. *Bryant-Bruce v. Vanderbilt Univ., Inc.,* 974 F.Supp. 1127 (M.D.Tenn.1997) ("[I]n order to demonstrate the necessary conspiracy, a plaintiff must allege specific acts or means by which the defendants were alleged to have conspired."); *see also Brooks v. American Broadcasting Cos.,* 932 F.2d 495 (6th Cir.1991) (affirming denial of motion to amend to add § 1985 claim because "the allegations are too vague and conclusory to withstand a motion to dismiss"); *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir.1984); *Lindsey v. Allstate Ins. Co.,* 34 F.Supp.2d 636, 645 (W.D.Tenn.1999); cf. *Gutierrez v. Lynch,* 826 F.2d 1524, 1538 (6th Cir.1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that

Slip Copy
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
(Cite as: Slip Copy)

Page 10

vague and conclusory allegations unsupported by material facts will not be sufficient to state ... a claim."; dismissing § 1983 conspiracy claim).

Finally, plaintiff assumes, incorrectly, that the previous orders in this case were issued at the direction of "this Court's staff attorney," Mot., p. 8, and further asserts that "[i]t is public record that Defendants Brandy Gagliano and Kim Kirk have been in direct contact with the clerks and staff of this Court in this matter," *id.; see also id.* at p. 10 ("Plaintiffs reasonably contend that Defendant Gagliano has more than likely made ex parte contacts with staff of this Court in its review and their 'screening' of the June 30, 2005 Complaint."). This judge issues every order in every case to which he is assigned, and the only party who has had, or attempted to have, improper contact with the clerks and court staff has been the plaintiff.

The Court also DENIES the plaintiff's motion for reconsideration of that portion of the February 23, 2006 order that required her to comply with Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement of [each] claim showing that the pleader is entitled to relief." The plaintiff assumes, incorrectly, that the previous orders characterized the complaint as incoherent and unintelligible solely because the Court is unfamiliar with the regulations under which she purports to sue. Mot., ¶ 13(17). For the reasons stated in the previous order, and as elaborated *supra,* the factual allegations in the complaint are neither short nor plain. It the plaintiff expects to proceed with this lawsuit, she would be well advised to correct that.[FN24]

FN24. The references to purported violations of plaintiff's rights under the First, Fifth, and Fourteenth Amendments, as well as the statement that "the unlawful employment discrimination to Plaintiff[ ] Powers ... arose of the treaties of the U.S. Constitution," Mot., ¶ 13(17) (emphasis omitted), are unexplained. Technically, there is no such thing as a "treat [y] to the U.S. Constitution," and there also is no reason to believe that Powers has a claim under any treaty.

Finally, the Court declines to address at this time the plaintiff's motion for removal of an action pending in the Shelby County Chancery Court, *see* Mot., p. 15, until the plaintiff has filed a complaint that complies with the Federal Rules of Civil Procedure. The Court also declines to address the additional factual allegations advanced by the plaintiff, Mot., pp. 16-17, as the short and plain statement of the basis for each of the plaintiff's claims must appear in her complaint.

For all the foregoing reasons, the Court DENIES the motion for reconsideration, which was filed by this plaintiff on March 29, 2006, in its entirety.

IT IS SO ORDERED this 13th day of April, 2006.

W.D.Tenn.,2006.
Powers v. NWA, Inc.
Slip Copy, 2006 WL 984738 (W.D.Tenn.)

Briefs and Other Related Documents (Back to top)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 11
Slip Copy, 2006 WL 984738 (W.D.Tenn.)
**(Cite as: Slip Copy)**

• 2:05cv02468 (Docket) (Jun. 30, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 148736 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Ling v. City of GarlandN.D.Tex.,2006.Only
the Westlaw citation is currently available.
United States District Court,N.D. Texas,
Dallas Division.
Randall LING, Plaintiff,
v.
CITY OF GARLAND, Mitch Bates, in His
Official and Individual Capacities, Glen L.
Shaw, in His Official and Individual
Capacities, Demarcus L. Banda, in His
Official and Individual Capacities, and
William L. Mott, in His Official and
Individual Capacities, Defendants.
**No. Civ.A. 305CV1754P.**

Jan. 18, 2006.

Kyle K. Shaw and James P. McGowen,
McGowen & Shaw, Dallas, TX, for Randall
Ling.
William F. Glazer and Ronald Bradford
Neighbor, Garland City Attorney's Office,
and Mark G. Mann, City of Garland,
Garland, TX, for City of Garland and Mitch
Bates, in His Official and Individual
Capacities.
Glen L. Shaw, Van Alstyne, TX, for Glen L.
Shaw, in His Official and Individual
Capacities.
Michael John Betz, Garland City Attorney's
Office, Garland, TX, and Kurt C.
Banowsky, Banowsky & Levine, Dallas,
TX, for Demarcus L. Banda, in His Official
and Individual Capacities.
James R. Jordan, Shannon Gracey Ratliff &
Miller, Dallas, TX, for William L. Mott, in
His Official and Individual Capacities.

*MEMORANDUM OPINION AND ORDER*

SOLIS, J.
**\*1** Now before the Court is the City of
Garland and Mitch Bates's Joint Motion to
Dismiss for Failure to State a Claim
(12(b)(6)), filed September 21, 2005.
Plaintiff responded on October 11, 2005,
and the City of Garland (hereinafter "the
City") and Mitch Bates (hereinafter "Chief
Bates," "Defendant Bates," or "Bates") filed
a joint reply on October 26, 2005. For the
reasons stated below, the City and Chief
Bates's Joint Motion to Dismiss is hereby
GRANTED in PART and DENIED in
PART. The Motion is GRANTED in regards
to Plaintiff's claims based on assault,
battery, conspiracy, intentional infliction of
emotional distress, and negligence. These
claims are DISMISSED WITH
PREJUDICE.[FN1] In regards to Plaintiff's
claims based on 42 U.S.C. § 1985(3),
Plaintiff has 15 days from the date of this
order to amend his complaint so as to state a
claim upon which relief can be granted. If
Plaintiff does not amend his complaint
within 15 days, the Court will dismiss
Plaintiff's 42 U.S.C. § 1985(3) claim with
prejudice. The Motion is DENIED in
regards to Plaintiff's claims based on 42
U.S.C. § 1983.

> FN1. Plaintiff asserts claims against
> the individual defendants in both
> their individual and official
> capacities. "Official-capacity suits ...
> 'generally represent only another
> way of pleading an action against an
> entity of which an officer is an
> agent.' " *Kentucky v. Graham,* 473
> U.S. 159, 165, 105 S.Ct. 3099, 87
> L.Ed.2d 114 (1985) (quoting *Monell
> v. New York City Dept. of Social*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Services,* 436 U.S. 658, 690 n. 55, 98
S.Ct. 2018, 56 L.Ed.2d 611 (1978)).
"As long as the government entity
receives notice and an opportunity to
respond, an official-capacity suit is,
in all respects other than name, to be
treated as a suit against the entity."
*Id.* at 166. As such, the Court's
rulings in this order in regards to the
City also apply to the claims against
Defendant Bates in his official
capacity.

## I. Factual Background

On September 6, 2004, Plaintiff Randall
Ling (hereinafter "Ling") was traveling
westbound on State Highway 190 on a 2003
Suzuki motorcycle.[FN2] (Compl.¶ 11.)
Defendant Glen L. Shaw (hereinafter
"Defendant Shaw" or "Shaw"), an officer
with the Garland Police Department,
observed Ling and pursued him on an
alleged speeding violation. (*Id.* ¶ 12.)
During the ensuing chase, two other officers,
Defendants William L. Mott (hereinafter
"Defendant Mott" or "Mott") and Demarcus
L. Banda (hereinafter "Defendant Banda" or
"Banda"), joined the pursuit. (*Id.* ¶ 13.)

> FN2. For purposes of deciding this
> Motion to Dismiss, the Court accepts
> Plaintiff's well-pleaded facts as true.

Ling maintains that he attempted to
peacefully surrender by stopping the
motorcycle, turning off the key, and raising
his hands. (*Id.* ¶ 15.) He claims that despite
this attempted surrender Defendant Shaw
dove over the motorcycle and tackled him.
(*Id.* ¶ 16.) Ling alleges that he was then
physically attacked, beaten, and kicked by
Shaw in a fit of rage. (*Id.*) He claims that
Shaw grabbed his helmet, twisted his head

to the side, and then struck him repeatedly in
the face through the opening on the front of
the helmet. (*Id.*) One of the blows
apparently caused a wound above Ling's left
eye that required six stitches to close. (*Id.*)
During this incident, Shaw was allegedly
screaming profanities at Ling. (*Id.*)
According to Ling, Defendants Mott and
Banda witnessed the attack and did nothing
to prevent it. (*Id.* ¶ 17.) The police vehicles
operated by Mott and Banda were equipped
with video recorders that were operating
during the incident. (*Id.* ¶ 14.)

The officers arrested Ling, and he was taken
to Baylor Hospital in Garland for treatment
of his injuries. (*Id.* ¶ 18.) Defendant Shaw
went to the hospital and waited with Ling.
(*Id.*) Ling maintains that a nurse working at
Baylor overheard Defendant Shaw ask
Defendant Banda if he had seen the
surveillance tape. (*Id.* ¶ 19.) Banda
allegedly answered that he had. Ling claims
that Defendant Shaw then asked Banda to
"lose it." (*Id.*) Ling also claims that he was
hesitant to tell the nurse how he received the
injury in the presence of the officers. (*Id.*)
The nurse apparently asked Shaw, and he
responded that Ling had fallen in the grass.
(*Id.*) The nurse allegedly asked Shaw a
number of more direct questions, and he
refused to answer. (*Id.*)

*2 Before Ling was released by the hospital,
Defendant Shaw attempted to leave with
him out a back door. (*Id.* ¶ 20.) The nurse
treating Ling saw them leaving and
attempted to stop them. (*Id.*) In response,
Shaw apparently stated that he did not have
time to sit around and wait. (*Id.*) He also
allegedly said something along the lines of
"Ling is a big boy; he can take care of
himself." (*Id.*) Ling then left the hospital
with Defendant Shaw. (*Id.*) The nurse
called the Garland Police Department and

informed the jail supervisor of the confrontation with Shaw. (*Id.* ¶ 21.) The nurse was informed that Ling would be returned to the hospital. (*Id.*)

Defendant Shaw subsequently returned to Baylor along with Ling. (*Id.* ¶ 22.) Upon his return, Shaw was apparently rude to the hospital staff, telling another nurse that professional courtesy would no longer be extended to doctors and nurses, or words to that effect. (*Id.*)

Shaw eventually left the hospital a second time with Ling in custody. (*Id.* ¶ 23.) In doing so, Shaw allegedly backed into a pole and used additional obscene language before speeding away. (*Id.*) Ling claims that at this time Shaw drove fast and recklessly without regard for his safety. (*Id.*)

On September 19, 2003, Ling filed an internal affairs complaint against Defendants Shaw, Banda, and Mott. (*Id.* ¶ 24.) Upon completion of the investigation, Lt. Van Cleve recommended that Chief Bates sustain the accusations of unnecessary force, conduct unbecoming an officer, and improper treatment of a prisoner against Defendant Shaw, and that he clear Defendants Motts and Banda of any wrongdoing. (*Id.* ¶ 25.) Lt. Van Cleve also suggested that Bates dismiss an allegation of a pursuit policy violation. (*Id.*) On October 24, 2003, Chief Bates followed these recommendations and suspended Shaw for fifteen days without pay. (*Id.*)

On November 18, 2003, the Texas Rangers began an investigation of the incident at the request of Chief Bates and the Dallas County District Attorneys Office. (*Id.* ¶ 26.) As a result of the Rangers' investigation, Defendant Shaw was charged with assault. (*Id.*) He was eventually

convicted of assault and terminated from the Garland Police Department. (*Id.*) Defendants Banda and Mott were also terminated; however, Mott was later reinstated after appealing his termination (*Id.*)

## II. Rule 12(b)(6) Legal Standard

Rule 12(b)(6) authorizes dismissal of a pleading for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). Such a motion should be granted only if it appears beyond doubt that the nonmoving party could prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir.1994).

**\*3** In determining whether dismissal should be granted, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the party against whom dismissal is sought. *See Capital Parks, Inc. v. Southeastern Adver. and Sales Sys., Inc. .,* 30 F.3d 627, 629 (5th Cir.1994); *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir.1994). The Court limits its inquiry to whether the nonmoving party is entitled to offer evidence to support its claims and does not address whether the party will ultimately prevail on the merits. *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999). Dismissal is proper when "even the most sympathetic reading of [the] pleadings uncovers no theory and no facts that would subject the [moving party] to liability." *Jacquez v. Procunier,* 801 F.2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 4
Not Reported in F.Supp.2d, 2006 WL 148736 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

789, 791-92 (5th Cir.1986). "At this stage of the proceedings, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." ' *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 125 S.Ct. 1497, 1510, 161 L.Ed.2d 361 (2005) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### III. Analysis

#### A. Conspiracy under 42 U.S.C. § 1985(3)

Ling alleges that Defendants Bates, Shaw, Banda, and Mott violated 42 U.S.C. § 1985(3) by conspiring to deprive him of both his liberty without due process of law and his right to equal protection of the laws. (Compl.¶ 29.) In order to state a claim under 42 U.S.C. § 1985(3), the plaintiff must "show that the conspiracy was motivated by a class-based animus." *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir.1994). In the instant case, Ling fails to allege any facts showing that Defendants were motivated by "some racial or otherwise class-based, invidiously discriminatory animus." Indeed, Ling's complaint does not allege that he belongs to any particular protected class, nor does it contain allegations of class-based animus.

Ling's response tries to correct this defect in his complaint by claiming that he "is a member of several classes...." (Resp. at 5.) However, even if the Court were to interpret this extremely generic statement as an allegation of membership in a class protected by § 1985(3) and then allowed Ling to amend his complaint, he would still not state a claim under 42 U.S.C. § 1985(3). An allegation of membership in a protected class by itself is not enough to state a claim under § 1985(3). To state a claim, the plaintiff must also allege that the conspiracy was motivated by animus towards the class. Plaintiff has made no such allegation here, and there is nothing in the Complaint from which such animus could be inferred. Ling has thus failed to state a claim of a conspiracy to deprive him of his civil rights in violation of § 1985(3).

#### B. Conspiracy under 42 U.S.C. § 1983

Ling also brings a conspiracy claim under 42 U.S.C. § 1983. "To state a cause of action under § 1983, Appellant must allege that some person, acting under state or territorial law, has deprived him of a federal right." *Cinel v. Connick,* 15 F.3d 1338, 1342 (5th Cir.1994). "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act...." *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir.1995). "A conspiracy may also be used to furnish the requisite state action." *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984). In any case, the plaintiff must still prove an actual deprivation of a "a federally protected or constitutionally secured right or privilege." *Id.* Therefore, in order to support a § 1983 conspiracy claim the plaintiff "must allege facts that suggest: 1) an agreement between the ... defendants to commit an illegal act, *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir.1982), and 2) an actual deprivation of constitutional rights, *Villanueva v. McInnis,* 723 F.2d 414, 418 (5th Cir.1984)." *Cinel,* 15 F.3d at 1343. " '[M]ere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

42 U.S.C. § 1983." *Davis v. Brazos County Tex.,* 98 Fed. Appx. 976, 978 (5th Cir.2004) (quoting *Arsenaux,* 726 F.2d at 1024).

### 1. Claim Against Chief Bates

**\*4** Chief Bates moves for dismissal of the § 1983 conspiracy claim on the grounds that the Complaint contains no allegation of his personal participation in the events on September 6. (Mot. at 7.) In response, Ling admits that Bates was not personally involved in the assault and subsequent events on September 6. (Resp. at 6.) However, Ling maintains that Bates is a co-conspirator for his role in the subsequent cover-up. (*Id.*) In this regard, the Complaint alleges that on October 24, 2003, Chief Bates accepted the recommended findings of the Garland Police Department's internal affairs unit by suspending Defendant Shaw for fifteen days and imposing no punishment upon Defendants Mott and Banda. (Compl.¶ 25.)

As noted above, in order to state a § 1983 conspiracy claim the plaintiff must allege facts suggesting that the defendant agreed to commit an illegal act. Viewed in the light most favorable to Plaintiff, the allegations here suggest that Chief Bates may have agreed to participate in the cover-up through his participation in the internal affairs investigation. While the Complaint does not provide much factual detail regarding Chief Bates's participation, it does state enough to survive a motion to dismiss. Plaintiff is thus entitled to offer evidence in support of his claim.

### 2. Claim Against the City of Garland

The City of Garland moves for dismissal of

the § 1983 conspiracy claim on the grounds that Ling has failed to plead specific facts suggesting that a particular policy or custom of the City deprived Ling of his civil rights. (Mot. at 9-10.) "Local governing bodies ... can be sued directly under § 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "a municipality cannot be held liable solely because it employs a tortfeasor." *Id.* at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir.2003).

As noted above, the City argues that Ling's claim must fail because he did not plead specific facts suggesting that a particular policy or custom of the City deprived Ling of his civil rights. (Mot. at 9-10.) However, Ling's Complaint does include an allegation that the City has a duty to adequately supervise, train, and discipline its officers. (Compl.¶ 55.) It also includes an allegation that the City continued to employ Shaw despite his history of using excessive force, acting in dereliction of duty, and engaging in conduct unbecoming an officer. (*Id.* ¶ 56.)

**\*5** While the Complaint in this case could have been more artfully drafted, the Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 148736 (N.D.Tex.)

**(Cite as: Not Reported in F.Supp.2d)**

finds that it satisfies the liberal pleading standard set forth in Fed.R.Civ.P. 8(a). In recent years, the Supreme Court has made it clear that a plaintiff need not plead detailed facts in support of each and every claim to satisfy Rule (8)(a). *See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).* However, it remains necessary for the plaintiff to provide a statement of the claim that provides enough information to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).* The Complaint in the instant case satisfies this liberal pleading standard. The Complaint puts the City on notice of Plaintiff's allegations that the conduct of the officers was the result of the City's policies or customs regarding the supervision, training, and discipline of its officers or its policies or customs regarding the continued employment of officers with a history of using excessive force, acting in dereliction of duty, and engaging in conduct unbecoming an officer. Ling is therefore entitled to offer evidence in support of his claim.[FN3]

> FN3. Plaintiff's Complaint includes a demand for punitive damages in the amount of $3,000,000 against the City (Compl.¶ 29.) However, "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Newport v. Fact Concerts, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).* As a result, even if Ling does prevail upon his § 1983 claim against the City, he is not entitled to seek an award of punitive damages.

## C. State Law Tort Claims

### 1. Claims against Chief Bates

Plaintiff relies upon the doctrine of respondeat superior to assert state law tort claims against Chief Bates. (Compl.¶ ¶ 34, 38, 43, 52, 60.) Chief Bates argues that these claims must be dismissed because Plaintiff has failed to allege that an employer/employee relationship existed between Chief Bates and Shaw. "Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong." *Baptist Mem. Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex.1998).* In the instant case, no employer/employee relationship existed between Chief Bates and Shaw. Both were employees of the City of Garland. (Compl.¶ 4.) As a result, Bates cannot be held vicariously liable for Shaw's actions under the doctrine of respondeat superior.

### 2. Claims against the City

Plaintiff also asserts state law tort claims against the City on the basis of respondeat superior. (Compl.¶ ¶ 34, 38, 43, 52, 60.) Plaintiff brings claims based on assault, battery, conspiracy, intentional infliction of emotional distress, and negligence. (*Id.*) "A municipality, as a political subdivision of the state, is not liable for the acts or conduct of its officers or employees unless the municipality's common law immunity is waived by the Texas Tort Claims Act." *City of Lancaster v. Chambers, 883 S.W.2d 650,*

658 (Tex.1994). The Texas Tort Claims Act (hereinafter the "TTCA") does not waive immunity for claims "arising out of assault, battery ... or any other intentional tort...." *Id.* § 101.057; *Gillum v. City of Kerrville,* 3 F.3d 117, 123 (5th Cir.1993). The tort of intentional infliction of emotional distress falls within the ambit of section 101.057, *Ganther v. Ingle,* 75 F.3d 207, 210 (5th Cir.1996), as does a cause of action for civil conspiracy involving an intentional tort. *Washington v. City of Arlington,* No. 4:05-CV-175-BE, 2005 U.S. Dist. LEXIS 12375, at *4 (N.D. Tex. June 23, 2005) (Bleil, Mag. J.); *see also Firestone Steel Prods. Co. v. Barajas,* 927 S.W.2d 608, 614 (Tex.1996) (noting that "[c]ivil conspiracy requires specific intent" and that the "gist of a civil conspiracy' is the injury the conspirators intend to cause"). Because Ling's cause of action based on assault, battery, conspiracy, and intentional infliction of emotional distress involve intentional tortious conduct, they must be dismissed on the basis of the City's immunity.

**\*6** In regards to Ling's negligence claim, the TTCA allows for municipal liability based on:
(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
(B) the employee would be personally liable to the claimant according to Texas law; and
(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 2005). In the instant case, Ling does not allege that his injuries arose from the operation or use of a motor-driven vehicle or motor-driven equipment, nor does he allege that they were caused by the "use" of tangible personal or real property. Therefore, Ling has failed to state a claim against the City based on negligence under the TTCA.

Conclusion

For the reasons stated above, the City and Chief Bates's Joint Motion to Dismiss is hereby GRANTED in PART and DENIED in PART. The Motion is GRANTED in regards to Plaintiff's claims based on assault, battery, conspiracy, intentional infliction of emotional distress, and negligence. These claims are DISMISSED WITH PREJUDICE. In regards to Plaintiff's claims based on 42 U.S.C. § 1985(3), Plaintiff has 15 days from the date of this order to amend his complaint so as to state a claim upon which relief can be granted. If Plaintiff does not amend his complaint within 15 days, the Court will dismiss Plaintiff's 42 U.S.C. § 1985(3) claim with prejudice. The Motion is DENIED in regards to Plaintiff's claims based on 42 U.S.C. § 1983.

IT IS SO ORDERED.

Signed this 17th day of January 2006.

N.D.Tex.,2006.
Ling v. City of Garland
Not Reported in F.Supp.2d, 2006 WL 148736 (N.D.Tex.)

Briefs and Other Related Documents (Back to top)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                         Page 8
Not Reported in F.Supp.2d, 2006 WL 148736 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

- 2006 WL 744818 (Trial Pleading) Defendant William L. Mott's Amended Answer to Plaintiff's First Amended Verified Complaint (Feb. 13, 2006) Original Image of this Document (PDF)
- 2006 WL 744816 (Trial Pleading) Defendants City of Garland's and Mitch Bates' Amended Answer to Plaintiff's First Amended Verified Complaint (Feb. 10, 2006) Original Image of this Document (PDF)
- 2006 WL 744817 (Trial Pleading) Defendant Demarcus L. Banda's Original Answer to Plaintiff's First Amended Verified Complaint (Feb. 2006) Original Image of this Document (PDF)
- 2006 WL 425441 (Trial Pleading) Defendants City of Garland's and Mitch Bates' Answer to Plaintiff's Verified Complaint (Jan. 30, 2006) Original Image of this Document (PDF)
- 2006 WL 425442 (Trial Pleading) Plaintiff's First Amended Verified Complaint (Jan. 30, 2006) Original Image of this Document (PDF)
- 2005 WL 3137388 (Trial Motion, Memorandum and Affidavit) City of Garland's and Mitch Bates' Joint Reply in Support of Their Motion to Dismiss (Oct. 26, 2005) Original Image of this Document (PDF)
- 2005 WL 3137466 (Trial Pleading) Defendant William L. Mott's Answer to Plaintiff's Verified Complaint (Oct. 14, 2005) Original Image of this Document (PDF)
- 2005 WL 2893728 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to City of Garland's and Mitch Bates' Joint Motion to Dismiss for Failure to State a Claim (12(b)(6)) and Brief in Support (Oct. 11, 2005) Original Image of this Document (PDF)
- 2005 WL 3137381 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to City of Garland's and Mitch Bates' Joint Motion to Dismiss for Failure to State a Claim (12(b)(6)) and Brief in Support (Oct. 11, 2005) Original Image of this Document (PDF)
- 2005 WL 2658563 (Trial Motion, Memorandum and Affidavit) City of Garland's and Mitch Bates' Joint Motion to Dismiss for Failure to State a Claim (12(b)(6)) and Brief in Support (Sep. 21, 2005) Original Image of this Document (PDF)
- 2005 WL 2620896 (Trial Pleading) Verified Complaint (Aug. 31, 2005) Original Image of this Document (PDF)
- 3:05cv01754 (Docket) (Aug. 29, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 2372134 (W.D.Pa.)
**(Cite as: Slip Copy)**

Page 1

Briefs and Other Related Documents

Haylett v. BohrerW.D.Pa.,2006.Only the
Westlaw citation is currently available.
United States District Court,W.D.
Pennsylvania.
Carol HAYLETT, Plaintiff,
v.
Leslie BOHRER, Cheryl Weber and St.
Martin Day Care Center, Defendants.
**No. 1:05cv299.**

Aug. 15, 2006.

Carol Haylett, Albion, PA, pro se.
Arthur D. Martinucci, Quinn, Buseck,
Leemhuis, Toohey & Kroto, Inc., Erie, PA,
for Defendants.

### *MEMORANDUM OPINION*

McLAUGHLIN, SEAN J., District Judge.

**\*1** Plaintiff Carol Haylett has filed this *pro se* civil action against her former employer, St. Martin Day Care Center ("St.Martin") as well as two of her former supervisors, Leslie Bohrer and Cheryl Weber.[FN1] Plaintiff asserts violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § § 12101 *et seq.,* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § § 621 *et seq.,* and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U .S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981. In addition, she seeks damages for various personal injuries, both physical and emotional, allegedly caused by the Defendants' actions as well as damages under the Rehabilitation Act of 1973, Pub.L. 93-112, as amended, 29 U.S.C. § § 701 *et seq..*[FN2] We have jurisdiction over these claims pursuant to 28 U.S.C. § § 1331 and 1367(a).

FN1. Ms. Weber has since changed her last name and is now known as Cheryl Kobel. However, for present purposes, we will refer to her as Defendant Weber.

FN2. Plaintiff purports to assert claims based on alleged violations of various "regulations for federally assisted programs" whose purpose is to effectuate implementation of Section 504 of the Rehabilitation Act. *See* 28 C.F.R. § § 39.101 et seq.; *id.* at § § 42.501 *et seq.* (Department of Justice); 34 C.F.R. § § 104.1 *et seq.* (Department of Education); 45 C.F.R. § § 84.1 *et seq.* (Department of Health and Human Services). To the extent these regulations are applicable to Plaintiff's case, they are redundant of her Rehabilitation Act claim and provide no independent right of action.

Plaintiff also purports to assert claims based on Defendants' alleged acts of retaliation against her daughter, who is not a named plaintiff in this action. Insofar as Plaintiff asserts acts of retaliatory employment discrimination committed against her daughter, such claims belong to Plaintiff's daughter, not to Plaintiff, and they cannot be prosecuted by Plaintiff in this action. *See Dockins v.,* No. Civ. 98-3035, 2000 WL 146792 \*2 at n. 2 (E .D.Pa. Feb. 8, 2000) ("To the extent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff seeks to complain in this action of the treatment of her son by defendant, she does not have standing to assert such a claim.").

Defendants have filed a motion to dismiss Plaintiff's claims or, in the alternative, for summary judgment. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I. STANDARD OF REVIEW

Defendants have moved for relief under Rule 12(b)(6) or, alternatively, Rule 56, of the Federal Rules of Civil Procedure. In considering a motion to dismiss under Rule 12(b)(6), we are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff. A Rule 12(b)(6) motion should be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proved. *See Evancho v. Fisher,* 423 F.3d 347, 351 (3d Cir.2005). Summary judgment under Rule 56 is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, we must view the facts in the light most favorable to the nonmoving party. *See* Fed.R.Civ.P. 56; *Gottshall v. Consol. Rail Corp.,* 56 F.3d 530, 533 (3d Cir.1995).

Additional consideration must be given to the fact that the Plaintiff here is proceeding *pro se. Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond a doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief.' " *Haines v. Kerner,* 404 U.S. 519, 520-521(1972), *quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall,* 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court,* 956 F.2d 295 (D.C.Cir.1992); *Freeman v. Department of Corrections,* 949 F.2d 360 (10th Cir.1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir.1997). *See, e.g., Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Company,* 906 F.2d 100, 103 (3d Cir.1990)(same).

## II. DISCUSSION

**\*2** Plaintiff was employed at St. Martin from approximately July 1994 to October 2001 when she claims she was constructively discharged. Plaintiff asserts that, during her tenure at St. Martin, she suffered various forms of discrimination at the hands of Weber and Bohrer, including adverse work assignments, a reduction of work hours and benefits, verbal harassment, refusal to reasonably accommodate Plaintiff's back and hip injuries and, ultimately, loss of employment.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendants assert several bases for dismissing Plaintiff's claims. We will consider each basis in turn.

**A.**

First, Defendants move to dismiss from this lawsuit Cheryl Weber and Leslie Bohrer-respectively, the Executive Director and Director of St. Martin. We agree with Defendants that neither of these individuals is a properly named defendant for purposes of Plaintiff's federal claims. Discrimination claims under the ADA, ADEA and Title VII of the Civil Rights Act can only be brought against the plaintiff's "employer." 29 U.S.C. § 623; 42 U.S.C.A. § § 2000e-2, 12111(2) and (5) and 12112. It is clear from Plaintiff's allegation that her "employer" was St. Martin Center, not Defendants Weber or Bohrer. Similarly, our circuit court of appeals has held that there is no individual liability under Section 504 of the Rehabilitation Act. *See Emerson v. Thiel College,* 296 F.3d 184, 189-90 (3d Cir.2002). Accordingly, Plaintiff has not stated a claim against the individual defendants under any of the anti-discrimination laws upon which relief can properly be granted.

**B.**

Defendants' second argument is that Plaintiff's claims under the ADA, ADEA and Title VII must be dismissed in their entirety as untimely. Defendants' exhibits show that Plaintiff filed a complaint against St. Martin with the Pennsylvania Human Rights Commission ("PHRC") on August 23, 2001.[FN3] (Def.s' Ex. A.) On April 23, 2003, the PHRC dismissed the complaint on

the basis that it found no probable cause to support Plaintiff's allegations. (Def .s' Ex. B.)

> FN3. Plaintiff avers that the PHRC complaint was actually filed in July 2001 and amended on August 23, 2001 and that the amendment included claims against Defendants Weber and Bohrer. We need not resolve these issues because they are immaterial for present purposes.

Plaintiff's PHRC complaint was cross-filed with the EEOC and, on September 25, 2003, the EEOC issued a dismissal of the complaint and notice of Plaintiff's right to file suit ("Notice of Right to Sue"). (Def.s' Ex. E.) Based on additional information subsequently submitted by Plaintiff in support of her claims, the EEOC on January 6, 2004 issued a notice of intent to reconsider Plaintiff's claims and rescinded its prior dismissal. (Def.s' Ex. F.) Upon reconsideration, the EEOC found reasonable cause to support at least some of Plaintiff's charges; when conciliation efforts failed, however, the EEOC issued a second Notice of Right to Sue dated July 12, 2005. (Def.s' Ex. G.)

Pursuant to 29 C.F.R. § 1601.28(e), a claimant wishing to preserve her rights under the federal employment discrimination statutes is required to file a complaint within 90 days of her receipt of the Notice of Right to Sue. Defendants contend that, because Plaintiff never filed a complaint within 90 days of the initial September 25, 2003 Notice of Right to Sue, her claims are now untimely. And, while the EEOC purported to rescind that initial Notice of Right to Sue through its January 6, 2004 notice of reconsideration, Defendants

Slip Copy                                                                                   Page 4
Slip Copy, 2006 WL 2372134 (W.D.Pa.)
**(Cite as: Slip Copy)**

contend that the Commission was without any legal authority to do so. Irrespective of that problem, Defendants argue, the Plaintiff failed to file suit within 90 days of the second Notice of Right to Sue which was issued on July 12, 2005. Defendants thus assert that Plaintiff's ADA, ADEA, and Title VII claims are now time-barred. We will address these arguments in reverse order.

**\*3** As for Defendants' assertion that Plaintiff failed to file suit within the 90-day period following receipt of the second Notice of Right to Sue, we find this argument to be in error. As the second notice was issued on July 12, 2005, the 90-day filing period would have begun to run on July 15, 2005 (assuming 3 days are added to account for service, *see Mosel v. Hills Dept. Store,* 789 F.2d 251 (3d Cir.1986)) and would have ended on October 13, 2005. In this case, Plaintiff's complaint was received by the Clerk of Courts on October 12, 2005, along with Plaintiff's motion for leave to proceed *in forma pauperis,* although the complaint was not officially docketed until October 18, 2005 when the *IFP* motion was granted. Therefore, Plaintiff's complaint was technically submitted in a timely fashion as measured from the EEOC's second Notice of Right to Sue.

We next consider Defendants' argument that the EEOC lacked the authority to rescind the original Notice of Right to Sue dated September 25, 2003. Because it is undisputed that Plaintiff did not file her complaint within 90 days of this initial notice, the critical question is whether the EEOC could have lawfully rescinded Plaintiff's right to bring suit during this period and whether, by issuing the second Notice of Right to Sue, the EEOC effectively created a new 90-day period for filing suit.

The operative provision is 29 C.F.R. § 1601.19, which allows the EEOC or an issuing director to issue, *sua sponte,* a notice of intent to reconsider a previous "no reasonable cause" determination. Pursuant to § 1601.19:

[i]f the Commission or an issuing director decides to reconsider a final no cause determination, a notice of intent to reconsider shall promptly issue to all parties to the charge. If such notice of intent to reconsider is issued within 90 days of receipt of the final no cause determination, and the person claiming to be aggrieved ... has not filed suit and did not request and receive a notice of right to sue pursuant to § 1601.28(a)(1) or (2), the notice of intent to reconsider shall vacate the letter of determination and shall revoke the charging party's right to bring suit within 90 days. If the 90 day suit period has expired, the charging party has filed suit, or the charging party had requested a notice of right to sue pursuant to § 1601.28(a)(1) or (2), the notice of intent to reconsider shall vacate the letter of determination, but shall not revoke the charging party's right to sue in 90 days.... In those circumstances where the charging party's right to bring suit in 90 days was revoked, the [new] determination shall include notice that a new 90 day suit period shall begin upon the charging party's receipt of the determination.

29 C.F.R. § 1601.19(b). Thus, § 1601.19(b) nullifies the original 90-day period for filing suit only if (among other things) the EEOC issues a notice of its intent to reconsider *within 90 days of the claimant's receipt of the prior no cause determination. See McCray v. Corry Mfg. Co.,* 61 F.3d 224, 229 (3d Cir.1995). Defendants contend that, because the EEOC did not issue its notice of intent to reconsider within 90 days from the

Slip Copy                                                                                                    Page 5
Slip Copy, 2006 WL 2372134 (W.D.Pa.)
**(Cite as: Slip Copy)**

September 25, 2003 dismissal and notice of right to sue letter (i.e., by December 24, 2003), its subsequent issuance of the notice of intent to reconsider on January 6, 2004 could not have revoked the Plaintiff's 90-day period for filing suit.

**\*4** We do not believe the issue can be definitively resolved on this record, however. According to the regulation, it is the claimant's *receipt* of the Notice of Right to Sue which triggers the 90-day period for filing a civil action. *See* 29 C.F.R. § 1601.19(a) (where a determination of no reasonable cause is made, EEOC's letter of determination shall advise claimant of his/her right to sue in federal district court within 90 days of *receipt* of the letter of determination) (emphasis added); *id.* at § 1601.28(e). Here, Plaintiff seems to be alleging, albeit somewhat inartfully, that she did not receive notice of her right to sue until December 23, 2003. If this allegation is credited, the 90-day period for filing suit would have ended on March 23, 2004. This in turn would mean that the EEOC's issuance of its January 6, 2004 notice of intent to reconsider occurred *within* the applicable 90-day period for purposes of § 1601.19(b) and thereby effectively *revoked* Plaintiff's right to file suit during that period. Under this scenario, Plaintiff's 90-day period for filing suit would have run from her receipt of the EEOC's July 12, 2005 notice of dismissal and right-to-sue. As we have already discussed, Plaintiff timely filed her complaint during that period.

Defendants have styled the instant motion as a motion to dismiss or, alternatively, for summary judgment. District courts retain the discretion to convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment only when all parties have had a "reasonable opportunity to present all material made

pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6). *See Franklin v. National Maritime Union of America (MEBA/NMU),* Civ. A. No. 91-480, 1991 WL 131182 at \*5 n. 3 (D.N. J. July 16, 1991). Thus, our circuit court of appeals requires that notice be given to all parties before such a conversion is made. *See Rose v. Bartles,* 871 F.2d 331, 340 (3d Cir.1989). Here, Plaintiff has appended no exhibits or affidavits in defense of the instant motion, but she has raised allegations which could arguably establish the timeliness of her employment discrimination claims. Given the fact that no formal discovery has as yet been conducted and considering Plaintiff's status as a pro se litigant, the Court is not satisfied that Plaintiff has had a sufficient opportunity to present all materials relevant to a Rule 56 disposition. We will therefore decline at this time to convert Defendants' motion into a Rule 56 motion for summary judgment, instead allowing the parties time to engage in discovery. Accordingly, the Defendants are not prohibited from raising the timeliness issue on a subsequent Rule 56 motion with the benefit of a more fully developed record. For present purposes, however, we will deny Defendants' motion to dismiss the Plaintiff's Title VII and ADA claims.

Plaintiff's ADEA claim, on the other hand, is a different matter. As the foregoing discussion illustrates, the timeliness of Plaintiff's federal employment discrimination claims hinges on our application of 29 C.F.R. § 1601.19(b) to the facts of this case. Plaintiff does not appear to raise any argument or allegation that would contradict this conclusion. Our circuit court of appeals has observed that, while the EEOC's grant of reconsideration under § 1601.19(b) may impact the statute of limitations for filing Title VII and ADA

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                        Page 6
Slip Copy, 2006 WL 2372134 (W.D.Pa.)
**(Cite as: Slip Copy)**

claims, there is no counterpart regulation governing reconsideration of claims under the ADEA. *See McCray,* 61 F.3d at 228. Thus, even if Plaintiff did not receive the EEOC's right-to-sue notice until December 23, 2003 as she suggests, her 90-day period for filing a civil action under the ADEA closed on March 23, 2004. Because Plaintiff failed to file her lawsuit within that period and, because the period could not be further extended by virtue of § 1601.19(b), her ADEA claim is untimely. We will therefore grant the Defendants' motion to dismiss that claim.

### C.

**\*5** Finally, Defendants move to dismiss Plaintiff's complaint insofar as it asserts a claim for personal injury damages premised on state law tort theory and/or the Rehabilitation Act of 1973. Plaintiff's state law claim seeks compensation for injuries to her back, hip, and shoulders allegedly causing loss of future employment and also seeks restitution for pain and suffering, loss of enjoyment of life, emotional and mental anguish, and future medical expenses. With regard to Plaintiff's state law claim, we agree with Defendants that this claim is barred by the exclusivity provision of Pennsylvania's Worker's Compensation Law, 77 P.S. § 481. Plaintiff does not dispute the applicability of this provision; she argues, however, that it should not bar her claim because she was unaware of the need to seek relief under the worker's compensation law, because she has medical documentation to support her claim, and because personal circumstances required her to find alternative employment despite her injuries. Unfortunately for Plaintiff, ignorance of the law is not sufficient grounds to withstand the Defendants' motion

under these circumstances, notwithstanding her *pro se* status. *See e.g., Lee v. Thompson,* 163 Fed. Appx. 142, 144, 2006 WL 162643 at * *2 (3d Cir. Jan 23, 2006) (despite court's obligation to liberally construe a *pro se* litigant's pleadings, ignorance of the law or failure to seek legal advice will not excuse failure to meet a filing deadline).

With regard to Plaintiff's claim under § 504 of the Rehabilitation Act, Defendants argue that this claim should be dismissed because it is untimely and because Plaintiff has pleaded no facts to establish a causal connection between the Defendants' actions and Plaintiff's injuries.[FN4] We agree that the Rehabilitation Act claim must be dismissed as untimely.

> FN4. To the extent Defendants are suggesting that the exclusivity provision of Pennsylvania's Worker's Compensation Law would also bar Plaintiff's Rehabilitation Act claim, we disagree. The Supremacy Clause of the U.S. Constitution would require that Plaintiff's Rehabilitation Act claim take precedence over 77 P.S. § 481.

Courts have held that Pennsylvania's two-year statute of limitations governing personal injury claims is applicable to claims brought under § 504 of the Rehabilitation Act of 1973. *See DeMedio v. Girard Bank,* 1987 WL 9410 (E.D.Pa.1987), *aff'd* 835 F.2d 282 (3d Cir.1987). Moreover, under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *See Holland v. Allied Serv. For Handicapped,* Civ. No. 92-0814, 1993 WL 668670 at *3 (M.D.Pa. May 21, 1993) (citing *Morse v. University of Vermont,* 973 F.2d 122 (2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 2372134 (W.D.Pa.)
**(Cite as: Slip Copy)**

Page 7

Cir.1992)). The Supreme Court has held, in the context of discrimination cases, that "the proper focus is on the time of the *discriminatory act,* not the point at which the consequences of the act become painful." *Id.* (emphasis in the original) (citing *Chardon v. Fernandez,* 454 U.S. 6, 8 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980)). Here, Plaintiff complains that St. Martin Center, through its employees, discriminated against her because of her disability and constructively discharged her in October 2001. Because Plaintiff did not file her complaint until some four years later, her Rehabilitation Act claim is untimely.

**\*6** Plaintiff insists that her claim is not untimely because it was being litigated at the administrative level until 2005. However, Plaintiff was not required to exhaust administrative remedies prior to filing her claim under §    504 of the Rehabilitation Act. *See Freed v. Consolidated Rail Corp.,* 201 F.3d 188, 191 (3d Cir.2000); *Holland, supra,* at \*2.

### III. CONCLUSION

Based upon the foregoing discussion, Plaintiff's claims against Defendants Bohrer and Weber will be dismissed in their entirety. Plaintiffs' claims against St. Martin Center will likewise be dismissed, except for her claims under the ADA and Title VII. An appropriate order follows.

### *ORDER*

AND NOW, to wit, this 15th day of August, 2006, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 [Doc. # 17] is GRANTED in part and DENIED in part as follows:

1. Said motion is GRANTED with respect to all claims directed against Defendants Bohrer and Weber; and

2. With respect to Plaintiff's claims against St. Martin Day Care Center, said motion is DENIED as to Plaintiff's claims under the Americans with Disabilities Act and Title VII of the Civil Rights Act and GRANTED in all other respects.

W.D.Pa.,2006.
Haylett v. Bohrer
Slip Copy, 2006 WL 2372134 (W.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 1:05cv00299 (Docket) (Oct. 18, 2005)
• 2005 WL 4148872 (Trial Motion, Memorandum and Affidavit) Defendants' Brief in Support of Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) or, in the Alternative, Motion for Summary Judgment Pursuant to Fed.R.Civ.P.56. (2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

156 Fed.Appx. 812                                                                                  Page 1
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
**(Cite as: 156 Fed.Appx. 812)**

**C**

Briefs and Other Related Documents
Plautz v. PotterC.A.6 (Tenn.),2005.2005
FED. App. 0997NThis case was not selected
for publication in the Federal Reporter.NOT
RECOMMENDED FOR FULL--TEXT
PUBLICATIONSixth Circuit Rule 28(g)
limits citation to specific situations. Please
see Rule 28(g) before citing in a proceeding
in a court in the Sixth Circuit. If cited, a
copy must be served on other parties and the
Court.Please use FIND to look at the
applicable circuit court rule before citing
this opinion. Sixth Circuit Rule 28(g).
(FIND CTA6 Rule 28.)

United States Court of Appeals,Sixth
Circuit.
Ronald PLAUTZ, Plaintiff-Appellant,
v.
John E. POTTER, Postmaster General, in
his official capacity as Postmaster General,
United States Postal Service, Defendant-
Appellee.
**No. 04-6105.**

Dec. 21, 2005.

**Background:** Former federal employee
brought employment discrimination action
against former employer, alleging disability
discrimination, and hostile work
environment in violation of Title VII, and
the Americans with Disabilities Act (ADA).
The United States District Court for the
Western District of Tennessee granted
summary judgment in favor of employer.
Employee appealed.

**Holdings:** The Court of Appeals held that:

(1) ADA claim would be construed as claim

under Rehabilitation Act;

(2) official discussions, threats of discharge,
and docking of one day's pay were not
"adverse employment actions," as required
to establish prima facie employment
discrimination claim, nor did they amount to
"constructive discharge";

(3) conduct did not constitute harassment
sufficient to create hostile work
environment; and

(4) District Court was not required to
consider employee's affidavit.

Affirmed.
West Headnotes
[1] Civil Rights 78 €=1502

78 Civil Rights
    78V Remedies Under Federal
Employment Discrimination Statutes
        78k1502 k. Existence of Other
Remedies; Exclusivity. Most Cited Cases
Former federal employee's discrimination
claim against former employer under the
Americans with Disabilities Act (ADA)
would be construed as claim under
Rehabilitation Act, since federal employee's
exclusive remedy for employment
discrimination based on disability was under
the Rehabilitation Act, and same standards
applied to the ADA and the Rehabilitation
Act. Americans with Disabilities Act of
1990, § 101 et seq., 42 U.S.C.A. § 12111 et
seq.; Rehabilitation Act of 1973, § 501 et
seq., 29 U.S.C.A. § 791 et seq.

[2] Civil Rights 78 €=1123

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
**(Cite as: 156 Fed.Appx. 812)**

78 Civil Rights
    78II Employment Practices
        78k1123 k. Constructive Discharge.
Most Cited Cases

### Civil Rights 78 ☜1220

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of
Handicap, Disability, or Illness
            78k1220 k. Particular Cases. Most
Cited Cases
Official discussions that federal employee
received from supervisor, threats of
discharge, and docking of one day's pay,
which was later reinstated, were not
"adverse employment actions," as required
to establish prima facie employment
discrimination claim, nor did they amount to
"constructive discharge," under the
Rehabilitation Act; such conduct did not
result in any significant change in
employment status. Rehabilitation Act of
1973, § 504(a), 29 U.S.C.A. § 794(a).

### [3] Civil Rights 78 ☜1224

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of
Handicap, Disability, or Illness
            78k1224 k. Harassment; Work
Environment. Most Cited Cases
Official discussions that federal employee
with medical condition received from
supervisor, threats of discharge, and docking
of one day's pay, which was later reinstated,
did not constitute "harassment" sufficient to
create hostile work environment, under the
Rehabilitation Act, absent evidence that
employee was ridiculed or insulted because
of his medical condition to the point that it
permeated the workplace environment.

Rehabilitation Act of 1973, § 504(a), 29
U.S.C.A. § 794(a).

### [4] Federal Civil Procedure 170A
☜2655

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(G) Relief from Judgment
            170Ak2651 Grounds
                170Ak2655 k. Further Evidence
or Argument. Most Cited Cases
District Court was not required to consider
former federal employee's affidavit,
asserting additional allegedly discriminatory
events, in motion for reconsideration of
grant of summary judgment in favor of
former employer, in employee's
discrimination action under the
Rehabilitation Act, where the additional
discriminatory events were known to
employee at time of summary judgment
motion, but he failed to submit them for
consideration to the District Court.
Rehabilitation Act of 1973, § 504(a), 29
U.S.C.A. § 794(a).

**\*813** On Appeal from the United States
District Court for the Western District of
Tennessee.

Kathleen L. Caldwell, Memphis, TN, for
Plaintiff-Appellant.
Sidney P. Alexander, Asst. U.S. Attorney,
U.S. Attorney's Office, Memphis, TN, for
Defendant-Appellee.

Before GUY and GIBBONS, Circuit Judges;
and EDMUNDS, District Judge. FN*

> FN* The Honorable Nancy G.
> Edmunds, United States District
> Judge for the Eastern District of
> Michigan, sitting by designation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 812                                                                                                   Page 3
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
(Cite as: 156 Fed.Appx. 812)

PER CURIAM.

**\*1** Plaintiff Ronald Plautz filed this disability discrimination suit against his employer, the Postmaster General of the United States Postal Service (USPS), claiming that the USPS violated the Americans with Disabilities Act (ADA), Title VII, and the Tennessee Human Rights Act (THRA). The district court granted the USPS summary judgment on all of Plautz's claims. We agree that Plautz's claims lack merit because none of the alleged discriminatory acts were adverse employment actions and the acts collectively did not amount to a constructive discharge or create a hostile work environment. Accordingly, we affirm.

## I.

Ronald Plautz suffers from a spastic colon. He is usually able to control his condition through medication and diet, but stress exacerbates his condition. The USPS hired Plautz as a mail processor in 1986. One year later, Plautz became an Electronic Technician. In March of 2000, Phil Murphy, Plautz's former coworker, became his supervisor. On Murphy's first day as supervisor he told Plautz: "I think you took too many days of sick leave and have a pattern ... Well, I think you were abusing your sick leave ... Well, I know you, I worked right with you. You were just trying to burn your sick leave." Plautz responded that he had a chronic health condition that required him to stay home on the days he had called in sick. Murphy responded that if he was sick that often, he should request leave pursuant to the Family and Medical Leave Act (FMLA), and Murphy provided Plautz with the appropriate FMLA forms.

Murphy told Plautz on March 20 that he was issuing him an "official discussion" because of several unscheduled absences dating back to 1999. An official discussion is an official action that becomes part of an employee's employment record but is not a disciplinary action. Murphy also threatened an official investigation into each unscheduled absence. Plautz initiated an EEO complaint on March 21, 2000, because he felt that Murphy was determined to take some sort of negative employment action against him. Plautz did not pursue the complaint because allegedly he feared retaliation.

Plautz returned completed FMLA forms on March 25, 2000. His doctor stated on the forms that Plautz had a chronic lifetime disease, spastic colon, and that he would be unable to work periodically for two or three days at a time, depending on his symptoms.[FN1] His FMLA request was **\*814** approved. [FN2]

> FN1. Employees may use FMLA leave in parts, called "intermittent leave." Federal regulations define "intermittent leave" as "FMLA leave taken in separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.203(a).

> FN2. The record is unclear if the approval of the forms submitted in March of 2000 was approval for future FMLA leave or also approval to qualify past absences as FMLA leave.

In April of 2000, Maintenance Manager Andy Cuccia saw Plautz standing outside the break room with a coworker who was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 812                                                                        Page 4
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
(Cite as: 156 Fed.Appx. 812)

drinking coffee. Cuccia told them that they were not supposed to drink coffee on the workroom floor. Ten minutes later, Plautz and his coworker were called into the office to meet with Murphy. Murphy told them he was giving them both an official discussion for drinking coffee on the workroom floor.

The next allegedly discriminatory event took place one year later, in the spring of 2001, when Cuccia saw Plautz viewing a nonwork-related website on the office computer. Cuccia printed the page that Plautz was viewing and showed it to Mike Milner, the acting supervisor. On Cuccia's direction, Milner wrote an investigative interview report about the incident. Cuccia insisted that Milner issue a warning letter to Plautz, but Milner convinced Cuccia that a warning letter was too extreme for a common practice that is rarely punished, and that an official discussion was more appropriate.

**2 Plautz requested and received approval for two sick days on June 25 and 26, 2001. On Wednesday, June 27, 2001, Plautz was prepared to return to work when he received a letter in the mail from the USPS requesting a new doctor's report in order to recertify him for FMLA leave. The letter upset Plautz to the point that he could not work, and he called the FMLA coordinator to report that he needed an additional day of FMLA leave. Plautz's regular work schedule required him to work Saturday through Wednesday, so the next two days were Plautz's regular days off. When he returned to work on Saturday, a supervisor, Marcus Seymour, asked if he was sick Wednesday because Attendance Control reported FMLA sick absences for Monday and Tuesday, but not Wednesday.

The next day, Seymour pulled Plautz aside

and told him that Cuccia planned on suspending him because he was "AWOL" on Wednesday. Seymour and Plautz went to the Attendance Control office together and found the record of Plautz's call on Wednesday, which proved he had not been AWOL.

Seymour orally reprimanded Plautz on July 4, 2001, as to proper radio etiquette. An oral reprimand is less severe than an official discussion and is not considered discipline. The incident occurred because Plautz could not understand an employee transmitting a question on the radio. Plautz stated, "Ma'am, if you would please calm down, maybe somebody can understand what you're saying." Seymour responded over the radio, "Mr. Plautz, that is totally inappropriate." According to Plautz, Cuccia was sitting next to Seymour and instructed Seymour to reprimand Plautz even though Seymour did not think Plautz did anything wrong.

The following Friday, July 6, 2001, Plautz's paycheck did not include one day's pay because USPS mistakenly thought he had been AWOL. The USPS admitted its error and restored the pay in Plautz's next paycheck. The missing day's pay upset Plautz which exacerbated his condition. His doctor documented that Plautz could not work for one month. Plautz called his supervisor and the FMLA coordinator to report that he would not return for thirty days because of stress. Plautz then contacted his union and the EEOC to inquire about a possible complaint or grievance. *815 After his return to work, Milner told Plautz that the USPS was going through his medical records trying to find a way to discredit him. Plautz felt that Cuccia was "stalking" him by hanging around Plautz's work area and watching him. Defendant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 812                                                                Page 5
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
**(Cite as: 156 Fed.Appx. 812)**

changed Cuccia's schedule so that he and Plautz were not working the same hours, allegedly to avoid conflict between Cuccia and Plautz. As a result of these events, Plautz experienced significant stress and his doctor approved a three-month leave of absence because of the stress.[FN3] Plautz subsequently resigned his position on April 30, 2003. At no time did the USPS pursue any formal disciplinary action against Plautz.

> FN3. The record does not indicate the beginning and end dates of Plautz's leave.

Plautz filed a complaint on September 12, 2001, with the EEOC. On April 24, 2003, not having received a final decision on his complaint from the EEOC, Plautz filed this action against the USPS, alleging that the USPS violated the ADA, Title VII, and the THRA. Defendant moved to dismiss or, in the alternative, for summary judgment. The district court granted the motion for summary judgment on the federal claims because Plautz failed to show that he suffered from an adverse employment action, a necessary element of his discrimination and retaliation claims, or that hostility toward his disability at work was severe and pervasive enough to support a hostile work environment claim. The district court also dismissed the THRA claim because federal employment statutes provide the exclusive remedy for employment discrimination claims advanced by federal employees.[FN4] Plautz filed a motion for reconsideration, in which he argued for the first time that he was constructively discharged. The district court denied the motion. Plautz then filed this appeal of both orders.

> FN4. Plautz does not appeal the dismissal of his THRA claim.

## II.

**\*\*3** We review *de novo* the district court's grant of summary judgment. *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

On appeal, Plautz relies in part on the affidavit he filed with his motion for reconsideration-evidence that was not submitted to the district court until after it granted defendant's motion for summary judgment. Accordingly, we will not consider it in our review of the district court's order granting summary judgment, but only in our review of the district court's denial of Plautz's motion for reconsideration.

### A. Order Granting Summary Judgment

[1] Initially, we note that Plautz incorrectly brought his disability claims under the ADA. The Rehabilitation Act is a federal employee's exclusive remedy for employment related discrimination based on a disability. *See* 42 U.S.C. § 12111(5)(B) (defining employers under the ADA, and excluding the United States or a corporation wholly owned by the United States

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 812                                                Page 6
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
**(Cite as: 156 Fed.Appx. 812)**

government as a covered employer). *See also Peltier v. United States,* 388 F.3d 984, 989 (6th Cir.2004) ("the Rehabilitation Act, 29 U.S.C. § 791, et seq .... provides the remedy for federal employees alleging disability discrimination"); ***816Felder v. Runyon,* No. 00-1011, 2000 WL 1478145, at *1 (6th Cir. Sept.26, 2000) (unpublished decision) ("the [Rehabilitation] Act is the exclusive means for a federal employee to bring a claim of disability discrimination in federal court"); *Calero-Cerezo v. United States Dept. of Justice,* 355 F.3d 6, 11 n. 1 (1st Cir.2004) (stating that the ADA is not available to federal employees). Therefore, we will construe Plautz's ADA claim as a Rehabilitation Act claim. There is no significant difference between the substantive standards of the ADA and the Rehabilitation Act as they relate to this case. The Rehabilitation Act expressly provides: "The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. § § 12201-12204 and 12210), as such sections relate to employment." 29 U.S.C. § 791(g)(1999). *See also Calero-Cerezo,* 355 F.3d at 11 (holding that the same standards apply to claims under the ADA and under the Rehabilitation Act). Therefore construing the ADA claim as a Rehabilitation Act claim does not significantly alter the legal analysis of Plautz's claims.

**\*\*4** The parties and the district court analyzed Plautz's retaliation claim as a claim brought under Title VII of the Civil Rights Act of 1964, but the Rehabilitation Act itself prohibits retaliation in employment against disabled persons: "Significantly, the anti-retaliation provision of the Rehabilitation Act, which incorporates by reference § 12203(a) of the ADA, provides in relevant part that '[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this Act.' 29 U.S.C. § 794(a) (1994)." *Hiler v. Brown,* 177 F.3d 542, 545 (6th Cir.1999). With the proper analytical framework now in place, we turn to the substance of Plautz's claims.

**1. Discrimination Based on Disability**

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). We apply the burden shifting framework developed for claims of discrimination under Title VII for claims of disability discrimination under the Rehabilitation Act. *Gribcheck v. Runyon,* 245 F.3d 547, 550 (6th Cir.2001). The plaintiff has the initial burden to set forth a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The ultimate burden of persuasion remains

156 Fed.Appx. 812                                                                                      Page 7
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
(Cite as: 156 Fed.Appx. 812)

at all times with the plaintiff. *Id.*

To establish his *prima facie* case of discrimination, Plautz must show (1) that he was an individual with a disability,[FN5] (2) who was otherwise qualified to perform a job's *817 requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability. *Mahon v. Crowell,* 295 F.3d 585, 589 (6th Cir.2002). In a case such as this, the third element requires a plaintiff to have suffered an adverse employment action. *See Smith v. Henderson,* 376 F.3d 529 (6th Cir.2004). The parties dispute only whether Plautz suffered an adverse employment action. An adverse employment action is a " 'materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct." ' *Mitchell v. Vanderbilt Univ.,* 389 F.3d 177, 182 (6th Cir.2004), quoting *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir.1996).

> FN5. The parties do not dispute that Plautz's condition renders him disabled under the Rehabilitation Act.

Plautz contends the following events constitute adverse employment actions:
(1) Plautz was told he took too much sick leave;
**5 (2) Cuccia instructed the supervisor for the day to give Plautz an official discussion for drinking coffee on the workfloor;
(3) Cuccia instructed the supervisor for the day to discipline Plautz for using the computer for improper purposes. Instead of issuing a disciplinary action, the supervisor gave Plautz another official discussion;
(4) the USPS requested recertification from Plautz's doctor;

(5) Cuccia mistakenly thought Plautz had taken an unapproved day off and temporarily docked him one day's pay;
(6) when Plautz returned to work from a stress leave, USPS chastised him by telling him he had "started an epidemic" of people taking stress leaves;
(7) Plautz was told he communicated improperly with a coworker;
(8) Plautz was told that Cuccia was out to get him by going through his military records and looking for a reason to terminate or discipline him.

[2] Plautz contends that each of these is an adverse employment action, or alternatively they collectively amount to a constructive discharge. Plautz has admitted that official discussions are not disciplinary actions, and that he never received any disciplinary action during his tenure at the USPS. There is no evidence that the official discussions had any tangible impact on Plautz's employment. They are not "tangible employment action[s] [that] constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Cuccia's threats to discharge or discipline Plautz were not adverse employment actions because it is settled in this circuit that a threat to discharge is not an adverse employment action. *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999).

Regarding the USPS's docking of one-day's wages from Plautz's paycheck for one pay period, we have held that taking away an employee's wages for one month, even though it was later reinstated, rises to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

level of an adverse employment action. _White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 802 (6th Cir.2004)_ (en banc), _cert. granted in part,_ --- U.S. ----, 126 S.Ct. 797, 163 L.Ed.2d 626 (2005). The _White_ court emphasized that the adverse-employment-action element was designed to filter out discrimination cases that caused "merely inconvenience" or a "bruised ego." We concluded that not having any income for one month goes beyond inconvenience. _Id_ (internal quotation marks and citation omitted). In this case, the postponement of one-day's pay for one pay period had only a negligible impact on Plautz's income and does not rise to the level of an adverse employment **\*818** action. _See Rhodes v. Illinois Dept. of Transp.,_ 359 F.3d 498, 505 (7th Cir.2004) (holding that a plaintiff in a sex discrimination suit did not suffer an adverse employment action where her employer withheld one day's pay and it was not reinstated).

**\*\*6** Moreover, the events listed above do not amount to a constructive discharge. A finding of constructive discharge requires employment conditions to be objectively intolerable to a reasonable employee. _Smith v. Henderson,_ 376 F.3d 529, 533-34 (6th Cir.2004). In _Logan v. Denny's, Inc.,_ 259 F.3d 558, 569 (6th Cir.2001), an age discrimination case, we held that we should consider the following relevant factors in determining a constructive discharge claim: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

For example, we have held that an employee was constructively discharged when he reasonably believed his termination or demotion was imminent, _Ford v. Gen. Motors Corp.,_ 305 F.3d 545, 554 (6th Cir.2002) (termination); _Saroli v. Automation and Modular Components, Inc.,_ 405 F.3d 446, 452 (6th Cir.2005) (demotion), and when the employer isolated the employee by instructing other employees not to talk or interact with him, _Moore v. KUKA Welding Sys. and Robot Corp.,_ 171 F.3d 1073, 1080-81 (6th Cir.1999). On the other hand, the manner in which an employer criticizes an employee's job performance, such as attendance, is insufficient to establish constructive discharge. _Smith,_ 376 F.3d at 534. _See also Agnew v. BASF Corp.,_ 286 F.3d 307 (6th Cir.2002) (holding that a low performance rating does not constitute constructive discharge); _Caslin v. Gen. Elec. Co.,_ 696 F.2d 45, 47 (6th Cir.1982) (same). Most of the events of which Plautz complains were criticisms of his performance or attendance. Moreover, Cuccia's alleged threat to review Plautz's records to look for a justification to terminate him, relayed to Plautz by a coworker and as an expression of the coworker's speculation as to why Cuccia was reviewing Plautz's employment records, is too speculative to support the conclusion that Plautz's firing was imminent.

## 2. Hostile Work Environment

We borrow the standard for a hostile work environment claim under the Rehabilitation Act from the ADA. Under the ADA, a hostile work environment claim requires a plaintiff to demonstrate five elements: (1) he was disabled; (2) he was subject to unwelcome harassment; (3) the harassment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

was based on his disability;    (4) the harassment unreasonably interfered with his work performance;   and (5) defendant either knew or should have known about the harassment and failed to take corrective measures.   *See Blankenship v. Parke Care Ctrs., Inc.,* 123 F.3d 868, 872 (6th Cir.1997) (establishing the framework of proof under Title VII for sexual harassment);   *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830, 834 (6th Cir.1996) (holding that the elements of a hostile work environment claim are the same across discrimination contexts and applying those elements specifically to the Age Discrimination in Employment Act).

**7 The Supreme Court has explained that for a plaintiff to have suffered from a hostile work environment, the plaintiff's workplace must have been "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive **\*819** working environment." *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks and citation omitted).    We must consider all the circumstances, "including the frequency of the discriminatory conduct; its severity;    whether it is physically threatening or humiliating, or a mere offensive utterance;    and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotation marks and citation omitted).

[3] Plautz contends that the events discussed previously created a hostile work environment.    Most of the allegations are examples of Plautz's superiors discussing performance related problems with him.

We have previously held that "[c]onversations between an employee and his superiors about his performance does not constitute harassment simply because they cause the employee distress." *Keever v. City of Middletown,* 145 F.3d 809, 813 (6th Cir.1998).    There is no evidence that Plautz was ridiculed or insulted because of his medical condition to the point that it permeated his work environment.    We agree with the district court that no reasonable trier of fact could find that Plautz suffered from a hostile work environment.

Plautz also argues that the severe and pervasive nature of Cuccia's harassment amounted to hostile environment constructive discharge.    He relies on a Supreme Court decision, *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), for creating this type of constructive discharge.    In *Suders,* the Supreme Court explicitly held what the circuit courts had been in agreement about for years: an employer can be liable under Title VII for constructive discharge when workplace "conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Id.* at 141, 124 S.Ct. 2342.    In other words, workplace harassment that is severe and pervasive enough to create a hostile work environment may in some circumstances constructively discharge the employee.    The more difficult issue of the case was whether, in sexual harassment cases, a constructive discharge is a "tangible" employment action, precluding certain affirmative defenses that are available to employers when harassment does not result in a tangible action.    The Court concluded that constructive discharge, while a potential liability-incurring employment action for the employer, is not a "tangible employment action" in sexual

156 Fed.Appx. 812                                                                          Page 10
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
**(Cite as: 156 Fed.Appx. 812)**

harassment cases.  Therefore the affirmative defenses available to employers in non-tangible action cases are available in constructive discharge cases.  *Id.* at 141, 124 S.Ct. 2342.  Plautz places great importance on the Court's first holding, and argues that the harassment in this case was significant enough to render his resignation a constructive discharge.  We have already decided that the complained of actions do not rise to the level of creating a hostile work environment, and therefore they necessarily do not rise to the level of compelling a reasonable person to resign.

### 3. Retaliation

**\*\*8** Plautz also claims that the USPS retaliated against him for filing his 2000 EEO complaint.  Plautz must satisfy the following four elements to make out a *prima facie* case of retaliation for exercising rights protected by the Rehabilitation Act:  (1) he engaged in legally protected activity;  (2) the USPS knew about Plautz's exercise of this right;  (3) the USPS then took an adverse employment action against Plautz;  and (4) the protected activity and the adverse employment action are causally connected.  *Gribcheck,* 245 F.3d at 550.  The definition of an adverse employment action is identical to that used in Plautz's direct discrimination claim.  **\*820** *White,* 364 F.3d at 799.  Since we have already decided that the facts do not support a finding of an adverse employment action in that context, we also conclude that there was no adverse employment action in the context of Plautz's retaliation claim.

### 4. The Affidavit Attached to the Motion for Reconsideration

[4]  We review for abuse of discretion a district court's refusal to consider evidence produced for the first time on a motion to reconsider.  *Huff v. Metro. Life Ins. Co.,* 675 F.2d 119, 123 (6th Cir.1982).  "It is well established ... that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment."  *Emmons v. McLaughlin,* 874 F.2d 351, 358 (6th Cir.1989).

Plautz attached an affidavit to his motion for reconsideration which added the following allegedly discriminatory events to the list previously discussed:
(1) The plant manager held a general meeting on March 24, 2000, to chastise employees for using sick leave and FMLA leave.    After the meeting, the general manager told all the supervisors to provide the names of all employees who turned in FMLA forms after the meeting.
(2) Plautz was denied access to the tools necessary to perform his job.
(3) Plautz's name was removed from the time card area.
(4) Plautz was isolated from his coworkers because they were told not to talk to him.

Plautz had that evidence in his control when he responded to the motion for summary judgment but he simply failed to submit those facts to the district court for consideration before rendering judgment against him.    Therefore, the district court did not abuse its discretion by refusing to consider Plautz's affidavit.

### AFFIRMED.

C.A.6 (Tenn.),2005.
Plautz v. Potter
156 Fed.Appx. 812, 2005 WL 3479840

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

156 Fed.Appx. 812                                          Page 11
156 Fed.Appx. 812, 2005 WL 3479840 (C.A.6 (Tenn.)), 31 NDLR P 192, 2005 Fed.App. 0997N
**(Cite as: 156 Fed.Appx. 812)**

(C.A.6 (Tenn.)), 31 NDLR P 192, 2005
Fed.App. 0997N

Briefs and Other Related Documents (Back
to top)

• 04-6105 (Docket) (Sep. 22, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.