IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA J. STENGLE, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:06-CV-1913 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| OFFICE OF DISPUTE RESOLUTION, <u>et al.</u>, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**March 21, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before this Court is a Motion to Dismiss Counts II, IV, and V of Plaintiff's Amended Complaint ("the Motion"), filed by two of the Defendants to this action, the Pennsylvania Department of Education and Linda Rhen, on December 22, 2006. (Rec. Doc. 21). For the reasons that follow, the Motion will be granted in part and denied in part.

<u>**PROCEDURAL HISTORY**</u>**:**

On September 27, 2006, Plaintiff Linda Stengle ("Plaintiff" or "Stengle") filed her first Complaint in the instant action. (Rec. Doc. 1). Prior to the filing of any responsive pleadings, on October 31, 2006, Plaintiff filed an Amended

Complaint. (Rec. Doc. 12).

Subsequently, on December 22, 2006, Defendants PDE and Rhen filed the instant Motion. As the Motion has been fully briefed, it is ripe for disposition.

**FACTUAL BACKGROUND:**

As is required by the standard of review applicable to the Motion, the following recitation of the facts is based on the averments in Plaintiff's Amended Complaint. (Rec. Doc. 12).

One of the Defendants to this action, the Office of Dispute Resolution ("ODR"), is an independent agency responsible for coordinating and managing Pennsylvania's statewide special education dispute resolution system, at least in part via the use of hearing officers. (Rec. Doc. 12, ¶ 6). However, ODR is administered by an Intermediate Unit under contract with one of the Defendants that filed the instant Motion, the Pennsylvania Department of Education ("PDE"). (Rec. Doc. 12, ¶ 6).

The instant action arose out of Plaintiff's service as a special education due process hearing officer. (Rec. Doc. 12, ¶ 11). Beginning as of July 1, 1998, Plaintiff and various Intermediate Units entered into eight (8) consecutive one-year contracts. (Rec. Doc. 12, ¶ 13). Plaintiff's final contract, with a term of July 1, 2005, through June 30, 2006, was with Intermediate Unit 13. (Rec. Doc. 12, ¶ 14).

The contract stated that Plaintiff's subsequent reappointment as a hearing officer was contingent on satisfactory performance of all hearing officer duties, with satisfaction to be determined by the ODR Director, Kerry Smith ("Smith"). (Rec. Doc. 12, ¶¶ 8, 14).

Prior to Plaintiff's reappointment for the term of July 1, 2006, through June 30, 2007, Plaintiff questioned the directives being provided by ODR. (Rec. Doc. 12, ¶¶ 19, 23, 28, 31, 35). She did so during a June 2005 training session for hearing officers, and on other occasions as well. (Rec. Doc. 12, ¶¶ 19, 23, 28, 31, 35).

In October of 2005, Plaintiff was appointed to serve on the "Gaskin Advisory Panel" ("the Panel").[1] (Rec. Doc. 12, ¶ 36). While serving on the Panel, Plaintiff made many statements that she alleges were of public concern, including, inter alia, that the Gaskin settlement agreement should be fully implemented, "that the agendas prevented the [P]anel from fulfilling its obligations under the

---

[1] Gaskin v. Commonwealth was a class action lawsuit filed in the Eastern District of Pennsylvania, which alleged that PDE failed to enforce compliance with the Individuals with Disabilities Education Act, the Rehabilitation Act of 1973, and the Americans with Disabilities Act. (Rec. Doc. 12, ¶ 32). On September 16, 2005, the Honorable Eduardo C. Robreno approved a settlement agreement in Gaskin, pursuant to which PDE agreed to increase the capacity of school districts to include students with disabilities in regular education classrooms. (Rec. Doc. 12, ¶ 34).
    Because Plaintiff had a child who was eligible for special education services, Plaintiff was a class member in the Gaskin litigation. (Rec. Doc. 12, ¶ 33).

settlement agreement," and that "the minutes of the [A]dvisory [P]anel's meetings had been written in a way that was misleading and benefitted PDE." (Rec. Doc. 12, ¶ 39).

Plaintiff further alleges that PDE learned of her aforesaid comments and became alarmed. (Rec. Doc. 12, ¶ 40). Accordingly, in December of 2005, PDE allegedly researched the legality of presenting an ultimatum to Plaintiff and a second hearing officer who had been appointed to the Panel, which would have required them to choose between serving as hearing officers or serving on the Panel. (Rec. Doc. 12, ¶ 42).

On January 13, 2006, one of PDE's Assistant Chief Counsels sent Plaintiff a copy of the Department of Education's Advisory Panel Policies, allegedly at the request of Dr. Linda Rhen ("Rhen"), the PDE's Director of the Bureau of Special Education. (Rec. Doc. 12, ¶ 43). Moreover, by January 19, 2006, ODR had removed Plaintiff's name from two (2) of the three (3) ODR case managers' e-mail lists, thereby preventing her from bidding on the cases being managed by those two (2) individuals. (Rec. Doc. 12, ¶ 44).

In February of 2006, Plaintiff started an Internet blog in which she allegedly educated readers about various special education issues. (Rec. Doc. 12, ¶ 50). On April 13, 2006, Rhen wrote Plaintiff a letter requesting that she correct alleged

misinformation posted on her blog. (Rec. Doc. 12, ¶ 55). Plaintiff concluded that the information was not incorrect, but revised the blog to more clearly define the sources of information. (Rec. Doc. 12, ¶ 56).

Plaintiff further alleges that, apparently around this time, "[t]he system of providing hearing officers was not fair and impartial" because, "[a]mong other things, [] Smith and ODR would remove, and attempt to remove, hearing officers from cases upon receiving complaints from parties and/or their attorneys." (Rec. Doc. 12, ¶ 59). Indeed, Plaintiff alleges that ODR and Smith pressured Plaintiff to recuse herself from a case in which an attorney complained that she had not been randomly assigned to the case. (Rec. Doc. 12, ¶ 61).

In the spring of 2006, those Defendants filing the instant Motion, Rhen and PDE, allegedly encouraged Smith and ODR to not reappoint Plaintiff as a hearing officer. (Rec. Doc. 12, ¶ 64). Also around this time, Smith allegedly glared at Plaintiff during the annual hearing officer training sponsored by ODR, and Plaintiff was not given a preference or priority in the assignment of new cases, despite her low caseload, and allegedly in contravention of ODR policy. (Rec. Doc. 12, ¶¶ 65, 67).

By letter dated June 2, 2006, Smith notified Plaintiff that she had decided not to reappoint Plaintiff as a hearing officer. (Rec. Doc. 12, ¶ 69). Smith set forth

three reasons for the decision not to reappoint Plaintiff: "(a) the content of her 'blog' was deemed to be advocacy which ensured that one or both parties would legitimately question her impartiality; (b) refusing to recuse herself in one matter and using intemperate and inappropriate language; and (c) being out of timeliness compliance on a number of decisions." (Rec. Doc. 12, ¶ 70).

Plaintiff alleges that all three of these reasons were pretextual. (Rec. Doc. 12, ¶ 71). Rather, Plaintiff specifically alleges that "[i]t was the content of Mrs. Stengle's blog, rather than the fact that she had a blog, which raised Ms. Smith's ire." (Rec. Doc. 12, ¶ 72). Plaintiff further alleges that Smith refused to reappoint her "because of Mrs. Stengle's speech concerning matters of public concern" (doc. 12, ¶ 83), and that "[a]s a result of Ms. Smith's refusal to reappoint Mrs. Stengle, Mrs. Stengle could not be offered a contract with IU [Intermediate Unit] 13 to be a Hearing Officer" (doc. 12, ¶ 84).

**STANDARD OF REVIEW:**

In considering a motion to dismiss, a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a

court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d 310 (3d Cir. 1986).

**DISCUSSION:**

Although Plaintiff's Amended Complaint sets forth six (6) counts, the instant Motion seeks dismissal of only Counts II, IV, and V, as those are the Counts involving Defendants Rhen and PDE (collectively, "Defendants"). We address each of these Counts in turn.

Initially, we note that we will dismiss Count II, which alleges a 42 U.S.C. § 1983 ("§ 1983") claim against ODR and PDE for conspiring to violate Plaintiff's First and Fourteenth Amendment rights, as against Defendant PDE. (Rec. Doc. 12 at 19-20). We do so because, as Plaintiff concedes, PDE is not a "person" against whom suit may be brought under § 1983.[2] (Rec. Doc. 28 at 6).

---

[2] The Court is cognizant of Plaintiff's argument that she should be given leave to amend as to Count II. (Rec. Doc. 28 at 6). However, we cannot, and will not, construe Plaintiff's request as a Motion for Leave to Amend, particularly because Plaintiff's argument provides no insight into the scope of amendment that she seeks. Indeed, as Defendants accurately note, inasmuch as Count IV appears to bring the same cause of action against Defendant Rhen, we suspect that any amendment of Count II will involve the naming of additional parties. (con't)

7

Next, we turn to consideration of Count IV, a second § 1983 conspiracy claim. Therein, Plaintiff alleges that Rhen and Smith conspired to violate her First and Fourteenth Amendment rights. (Rec. Doc. 12 at 21-22).

In the instant Motion, PDE and Rhen make two alternative arguments for Count IV's dismissal. First, they argue that Count IV should be dismissed because "in order to state a claim for conspiracy under Section 1983, 'a plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the chain of events.'" (Rec. Doc. 25 at 8 (citation omitted)). Accordingly, Defendants argue that Plaintiff has failed to sufficiently plead the factual circumstances surrounding the alleged conspiracy. However, as Defendants recognize that the authority upon which they rely also indicates that "Section 1983 conspiracy claims 'do not need to be pled with particularity,'" they argue in the alternative that "[r]egardless of the degree of particularity required in pleading a Section 1983 claim for conspiracy, it seems safe to assume that the complaint must at least reflect the existence of facts illustrating an agreement amongst the defendants to plot, plan, or conspire to carry out the alleged conduct." (Rec. Doc. 25 at 8 (citations omitted)).

---

Thus, because Plaintiff is beyond the period in which she may amend the pleadings as a matter of right pursuant to Rule 15 of the Federal Rules of Civil Procedure, should Plaintiff wish to amend her Complaint following the entry of this Order, a proper Motion for Leave to Amend should be filed.

Neither of these arguments persuade us to dismiss Count IV. Defendants' first argument essentially asks us to apply a heightened pleading standard to § 1983 conspiracy claims. This argument is unavailing because, as Plaintiff astutely notes, the Supreme Court has very recently "once again reiterate[d], . . . as [it] did unanimously in <u>Leatherman</u>, <u>Swierkiewicz</u>, and <u>Hill</u> - that adopting different and more onerous pleading rules to deal with particular categories of cases should be done through established rulemaking procedures, and not on a case-by-case basis by the courts." <u>Jones v. Bock</u>, ___ U.S. ___, 127 S. Ct. 910, 926 (2007). <u>See also</u> <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163 (1993); <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002); <u>Hill v. McDonough</u>, 547 U.S. ___, 126 S. Ct. 2096 (2006). As no Federal Rule of Civil Procedure requires a heightened pleading standard for § 1983 conspiracy claims, we review Plaintiff's Count IV only to determine whether the averments therein satisfy the requirement of Rule 8(a) of the Federal Rules of Civil Procedure at issue here, provision of "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a).

Defendants' argument to the contrary is simply unpersuasive in light of the Supreme Court's consistent admonition that courts not impose heightened pleading requirements where no formal rule exists. Moreover, the authority from our

colleagues in the Middle District upon which Defendants rely to support their argument is misplaced for two reasons. First, it pre-dates both <u>Jones</u> and <u>Hill</u>, which make the Court's thoughts on this issue more clear. Second, as Defendants themselves recognized (doc. 25 at 8), even language within some of the cited authority explicitly indicates that no heightened pleading standard applies to § 1983 conspiracy claims. <u>See</u>, e.g., <u>Boone v. Pennsylvania Office of Vocational Rehabilitation</u>, 373 F. Supp. 2d 484, 502 (M.D. Pa. 2005) (noting that § 1983 conspiracy claims "do not need to be pled with particularity.").

Thus, with respect to Count IV, we are left to consider Defendants' second argument, that the Complaint must "at least reflect the existence of facts illustrating an agreement amongst the defendants to plot, <u>plan</u>, or conspire to carry out the alleged conduct." (Rec. Doc. 25 at 8 (emphasis added)). Even assuming <u>arguendo</u> that this is required, the Complaint clearly satisfies the requirement because within Count IV, Plaintiff alleges that "[b]etween July 1, 2005 and June 1, 2006, Ms. Smith and Dr. Rhen formed a <u>plan</u> whereby ODR would not reappoint Mrs. Stengle as a hearing officer." (Rec. Doc. 12, ¶ 105 (emphasis added)). Plaintiff goes on to aver that "[t]he purpose of the plan . . . was to violate Mrs. Stengle's First Amendment rights" and that "Ms. Smith and Dr. Rhen used their powers as final policymakers for their respective employers." (Rec. Doc. 12, ¶ 106, 107).

Accordingly, we simply cannot conclude that Plaintiff "can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley, 355 U.S. at 45-46. Thus, Count IV remains viable.

Finally, we turn to Count V, a claim for violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. Therein, Plaintiff alleges that her complaints about the alleged failure of ODR and PDE to comply with the Rehabilitation Act, which were known to ODR, Smith, PDE, and Rhen, preceded adverse employment actions that Plaintiff suffered. (Rec. Doc. 12 at 22).

In their Motion, Defendants argue that Count V should be dismissed as to both PDE and Rhen. First, they argue that Count V should be dismissed as to Rhen because "[t]he Third Circuit has held that 'there is no individual liability under Section 504 of the Rehabilitation Act.'" (Rec. Doc. 25 at 11 (citing Haylett v. Bohrer, 2006 WL 2372134, at *2 (W.D. Pa. Aug. 15, 2006) (citing Emerson v. Thiel Coll., 296 F.3d 184, 189-90 (3d Cir. 2002)))). Second, they argue that Count V should be dismissed as to PDE because Plaintiff has failed to allege the facts necessary to "make out a prima facie case of retaliation for exercising rights protected by the Rehabilitation Act . . . ." (Rec. Doc. 25 at 11).

Once again, we find Defendants' arguments for dismissal unavailing. First, we are reluctant to dismiss Count V as to Rhen at this early stage given the

conflicting authority on the question of whether individuals can be held liable under the Rehabilitation Act.  Specifically, we are cognizant that 34 C.F.R. § 100.7(e), which Defendants have conceded is a regulation implementing the Rehabilitation Act (doc. 29 at 4), provides that:

> No recipient <u>or other person</u> shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.

34 C.F.R. § 100.7(e) (emphasis added).

Although Defendants accurately indicate that <u>Emerson</u>, 296 F.3d at 189-90, held that the plaintiff did not state a claim against the individual defendants under the Rehabilitation Act, we decline to rely upon it to support dismissal as to Rhen at this juncture for several reasons.  First, <u>Emerson</u> may be distinguishable as it involved a disability discrimination claim, not a retaliation claim, as is at issue here.  See <u>Deptford Twp. Sch. Dist. v. H.B.</u>, 2005 U.S. Dist. LEXIS, 11602, at *34 (finding that a Rehabilitation Act claim brought in the context of a retaliation claim was distinguishable from a Rehabilitation Act claim grounded in a discrimination claim).  Second, in <u>Emerson</u>, the Court of Appeals for the Third Circuit looked to the implementing regulations when interpreting legislation, and we see no reason that it would decline to do so here.  See <u>Emerson</u>, 296 F.3d at 189 (looking to

implementing regulations when interpreting Title III of the Americans with Disabilities Act). Third, subsequent to the Third Circuit's ruling in <u>Emerson</u>, at least two other courts within the Third Circuit have not relied upon it when disposing of retaliation claims brought under the Rehabilitation Act. <u>See</u> <u>Houlihan v. Sussex Tech. Sch. Dist.</u>, 461 F. Supp. 2d 252, 259 (D. Del. 2006) (denying a Motion to Dismiss that was filed by the defendants, some of whom were individuals). <u>See also</u> <u>Deptford Twp. Sch. Dist.</u>, 2005 U.S. Dist. LEXIS 11602, at *34 (D. N.J. 2005) (finding that "[i]t is evident from the language of the relevant regulation that individual actors can be liable for retaliation under § 504. 34 C.F.R. § 100.7 provides that no recipient 'or other person' may engage in retaliatory activity."). Thus, at this early stage, we decline to dismiss Count V as to Rhen.

> We also decline to dismiss Count V as to PDE. As outlined in <u>Houlihan</u>:
>
> a prima facie case of retaliation under the Rehabilitation Act requires the plaintiff to show (1) he or she was engaged in protected activity; (2) the alleged retaliator knew the plaintiff was involved in protected activity; (3) adverse action was taken by the employer either after or contemporaneous with the employee's protected activity; and (4) a causal connection exists between the protected activity and the adverse action.

461 F. Supp. at 257 (citing <u>Krouse v. American Stabilizer Co.</u>, 126 F.3d 494, 500 (3d Cir. 1997)). Although Defendants invite us to conclude that the averments in Plaintiff's Complaint preclude her from presenting facts to satisfy each of these elements, namely that PDE was her employer and that a causal connection existed,

13

we simply cannot do so on these pleadings. Indeed, ascertaining the legal implications of Plaintiff's contract with the Intermediate Units and her appointment by ODR, as well as the relationship between those entities and PDE, would require a fact-intensive inquiry that is simply premature given the posture of the instant action. Accordingly, Plaintiff should, and will, be afforded the opportunity to gather and present evidence to make out her prima facie case.[3]

Thus, Count V remains viable.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1. The Motion to Dismiss filed by the Pennsylvania Department of Education and Linda Rhen is **GRANTED** in part and **DENIED** in part to the following extent:

   a. The Motion is **GRANTED** to the extent that Count II is dismissed as against the Pennsylvania Department of Education; and

   b. The Motion is **DENIED** in all other respects.

s/ John E. Jones III

---

[3] Whether Plaintiff will be able to do so is a different matter entirely.

                                        John E. Jones III
                                        United States District Judge