IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA J. STENGLE, | :Civil Action No.: 4:06-CV-01913 |
| | : |
| Plaintiff | : |
| | : Hon. John E. Jones, III |
| v. | : |
| | : |
| OFFICE OF DISPUTE | :Complaint Filed Sept. 27, 2006 |
| RESOLUTION, | : |
| COMMONWEALTH OF | : |
| OF PENNSYLVANIA | : |
| DEPARTMENT OF EDUCATION | : |
| KERRY VOSS SMITH (in her | : |
| Individual and official capacity), | : |
| LINDA O. RHEN (in her individual | : |
| capacity), ABIGAIL TIERNEY | : |
| (in her individual capacity), JOHN | : |
| TOMMASINI (in his individual capacity), | : |
| DIANE CASTELBUONO | : |
| (in her individual capacity), ERNEST | : |
| HELLING (in his individual capacity), | : |
| M. PATRICIA FULLERTON | : |
| (in her individual capacity) and | : |
| LANCASTER-LEBANON | : |

1

INTERMEDIATE UNIT 13           :
                               :
        Defendants

## BRIEF OF DEFENDANT LANCASTER-LEBANON INTERMEDIATE UNIT 13 IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Lancaster-Lebanon Intermediate Unit 13 ("LLIU 13"), by and through its undersigned counsel, Marshall, Dennehey, Warner, Coleman & Goggin, respectfully submits this Brief in support of its Motion to Dismiss the Fourth and Sixth Counts of Plaintiff's Second Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

### I.     PROCEDURAL HISTORY.

Plaintiff filed her Second Amended Complaint in this matter on July 27, 2007, joining LLIU 13 as an additional Defendant. On August 10, 2007, LLIU 13 filed a Motion for an Enlargement of Time within which to respond to the Second Amended Complaint, up through and including August 31, 2007. The Motion was granted by Order entered on August 10, 2007.

On August 23, 2007, an Answer with Affirmative Defenses was filed on behalf of Defendants Office for Dispute Resolution ("ODR") and Kerry Voss Smith ("Smith"). Also on August 23, 2007, an Answer with Affirmative Defenses was filed on behalf of Defendants Pennsylvania Department of Education ("PDE"), Linda O. Rhen, Abagail Tierney, John Tommasini, Diane Castelbuono, Ernest Helling and M. Patricia Fullerton (collectively "the individual PDE Defendants").

On August 28, 2007, LLIU 13 filed a Second Motion for an Enlargement of Time within which to respond to the Second Amended Complaint, up through and including September 7, 2007. The Motion was granted by Order entered on August 29, 2007.

On September 7, 2007, LLIU 13 filed its Motion to Dismiss the Fourth and Sixth Counts of Plaintiff's Second Amended Complaint.

An Amended Answer with Affirmative Defenses to Plaintiff's Second Amended Complaint was filed on behalf of Defendants ODR and Smith on September 13, 2007.

Plaintiff's Second Amended Complaint sets forth six (6) separate causes of action: (1) First Count – Violation of First and Fourteenth Amendments, *vis-à-vis* 42 U.S.C. §1983 against ODR; (2) Second Count - Violation of First and Fourteenth Amendment rights *vis-à-vis* 42 U.S.C. against Ms. Smith in her individual capacity; (3) Third Count – Conspiracy to violate First and Fourteenth Amendment rights *vis-à-vis* 42 U.S.C. §1985[1] against Ms. Smith and the individual PDE Defendants; (4) Fourth Count – Violation of Section 504 of the Rehabilitation Act against ODR, PDE, LLIU 13, Ms. Smith and Dr. Rhen; (5) Fifth Count – Violation of the Pennsylvania Whistle Blower Law 43 Pa.C.S. §1422-1428 against

---

[1] Improperly pleaded as a claim under 42 U.S.C. §1983.

ODR and Ms. Smith; and (6) Sixth Count – Violation of First and Fourteenth Amendment rights *vi-a-vis* 42 U.S.C. §1983 against LLIU 13.

## II.     STATEMENT OF FACTS.

This matter arises out of Plaintiff's prior service as a special education due process hearing officer. See Plaintiff's Second Amended Complaint, ¶1. Beginning July 1, 1998, Plaintiff and various Intermediate Units entered into eight (8) consecutive one year contracts. See id., ¶19. Her final contract, with a term of July 1, 2005 through June 30, 2006, was with LLIU 13. The contract stated that Plaintiff's subsequent reappointment as a hearing officer was contingent upon satisfactory performance of all hearing officer duties, with satisfaction to be determined by Smith, the ODR Director. See id., ¶20.

Plaintiff claims that prior to her reappointment for the term commencing July 1, 2006, she began questioning certain directives being provided by ODR, in particular during a June 2005 training session for hearing officers. Specifically, Plaintiff questioned whether ODR and PDE were complying with the mandates of IDEA, ADA and the Rehabilitation Act. See Plaintiff's Second Amended Complaint, ¶27, 29.

Plaintiff further alleges that in October of 2005, she was appointed to serve on the *Gaskin* Advisory Panel. See Plaintiff's Second Amended Complaint, ¶43. While serving on the panel, Plaintiff claims that she made many statements that

4

she alleges were of public concern, including that the *Gaskin* class action settlement agreement should be fully implemented but that PDE and ODR prevented this from occurring. See id., ¶46.

Plaintiff further claims that PDE supposedly learned of her aforesaid critical comment and became alarmed. See Plaintiff's Second Amended Complaint, ¶47. Accordingly, in December of 2005, PDE allegedly researched the legality of presenting an ultimatum to Plaintiff and a second hearing officer who had been appointed to the panel, which would have required them to choose between serving as hearing officers or serving on the *Gaskin* panel. See id., ¶49. On January 13, 2006, one of PDE's assistant counsel sent Plaintiff a copy of PDE's Advisory Panel policies, allegedly at the request of Dr. Linda Rhen, PDE's Director of the Bureau of Special Education. See id., ¶50. Moreover, by January 19, 2006, ODR had removed Plaintiff's name from two of the three ODR case manager's email lists, thereby preventing her from bidding on cases being managed by those two individuals. See id., ¶51.

In February 2006, Plaintiff started an internet web log ("blog") in which she allegedly educated readers about various special education issues. See Plaintiff's Second Amended Complaint, ¶62. On April 13, 2006, Dr. Rhen wrote to Plaintiff requesting that she correct allegedly misinformation posted on her blog. See id., ¶68. Plaintiff concluded that the information was not incorrect, but revised the

5

blog to more clearly define the sources of information noted thereon. See id., ¶69. Plaintiff further alleges that ODR and Smith pressured her to recuse herself from a case in which an attorney complained that she had not been randomly assigned to the case. See id., ¶74.

In Spring 2006, PDE and Dr. Rhen allegedly encouraged ODR and Smith not to reappoint plaintiff as a hearing officer. See Plaintiff's Second Amended Complaint, ¶77. Also around this time, Smith allegedly glared at Plaintiff during the annual hearing officer training sponsored by ODR, and Plaintiff was not given a preference or priority in the assignment of new cases, despite her low case load, and allegedly in contravention of ODR's own policies. See id., ¶82-84.

By letter dated June 2, 2006, Smith notified Plaintiff that she had decided not to reappoint Plaintiff as a hearing officer. See Plaintiff's Second Amended Complaint, ¶87. Smith set forth three reasons for the decision not to reappoint Plaintiff: the content of her blog was deemed to be advocacy which ensured that one or both parties would legitimately question her impartiality; refusing to recuse herself in one matter and using intemperate and inappropriate language; and being out of timeliness compliance on a number of decisions. See id., ¶88.

Plaintiff claims that all three of these reasons were pretextual. See Plaintiff's Second Amended Complaint, ¶90. Rather, Plaintiff alleges that "it was the content of Mrs. Stengle's blog, rather than the fact that she had a blog, which raised Ms.

6

Smith's ire." See id., ¶91. Plaintiff further alleges that Smith refused to reappoint her because of Plaintiff's speech concerning matters of public concern and that as a result of Smith's refusal to reappoint Plaintiff, Plaintiff in turn could not be offered a contract with IU #13 to be hearing officer. See id., ¶102, 105.

By this Motion, LLIU 13 seeks to challenge the legal sufficiency of the Fourth and Sixth Counts of the Second Amended Complaint, as only those Counts are directed against Moving Defendant.

### III. ISSUES PRESENTED.

A. WHETHER PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST LLIU 13 UNDER §504 OF THE REHABILITATION ACT UPON WHICH RELIEF MAY BE GRANTED?

Suggested Answer: In the affirmative.

B. WHETHER PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST LLIU 13 UNDER 42 U.S.C. §1983 UPON WHICH RELIEF MAY BE GRANTED?

Suggested Answer: In the affirmative.

### IV. LEGAL STANDARD.

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all of the factual allegations of the Complaint and all reasonable inferences that can be drawn from the face of the Complaint. "In determining whether a claim should be dismissed under Rule 12(b)(6), a Court looks only to the facts alleged in the Complaint and its attachments without

reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F. 3d 1250, 1261 (3rd Cir. 1994).  "Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." Flanagan v. Shively, 783 F. Supp. 926, 927 (M.D. Pa. 1992); see, also, Wright & Miller, Federal Practice and Procedure, 2nd Ed. 1997 at 1357 (noting that courts, when examining Rule 12(b)(6) motions, have rejected "legal conclusions," "unsupportable conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," and "sweeping legal conclusions cast in the form of factual allegations").

## V.  LEGAL ARGUMENT.

### A.  PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST LLIU 13 UNDER §504 OF THE REHABILITATION ACT UPON WHICH RELIEF MAY BE GRANTED.

The Fourth Count of the Second Amended Complaint alleges that plaintiff complained of ODR's and PDE's failures to comply with the Rehabilitation Act of 1973, and that these complaints were "protected activities" under the Act.  34 C.F.R. §100.7(e), upon which Plaintiff relies, is a regulation implementing the Rehabilitation Act and provides in pertinent part that:

> No recipient [of Federal financial assistance] or other person shall intimidate, threaten, coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by §601 of the [Civil Rights] Act or this part, or because he has made a

8

>complaint, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this part.

Courts in our circuit have relied upon this regulatory provision in cases involving claims of retaliation under the Rehabilitation Act. See e.g. Deptford Township School Dist. v. HB, 2005 U.S. Dist. LEXIS 11602 (D.N.J. 2005). To establish a retaliation claim under §504 of the Rehabilitation Act, a Plaintiff must establish that (1) she was engaged in a protected activity; (2) the alleged retaliator knew that she was involved in a protected activity; (3) an adverse decision or course of action was taken against plaintiff; and (4) a causal connection exists between the protected activity and the adverse action. See Deptford Township School Dist., supra.

Even assuming *arguendo* that Plaintiff has articulated the requisite elements of a *prima facie* retaliation claim under the Rehabilitation Act, the claim nonetheless must fail. It is well settled that a plaintiff must exhaust her administrative remedies before bringing a claim under the Rehabilitation Act. See Wilson v. MVM, Inc., 475 F.3d 166, 174 (3rd Cir. 2007) ("It is clear from the statute and the law of this Court that a plaintiff must exhaust administrative remedies before bringing a claim under the RA."). The exhaustion requirement applies to retaliation claims under the Rehabilitation Act as well. See Carter v.

Potter, 95 Fair Empl. Prac. Cas. (BNA) 620 (E.D. Pa. 2004); Weber v. Henderson, 2001 U.S. Dist. LEXIS 2996 (E.D. Pa. 2001).

Here, Plaintiff's Second Amended Complaint is devoid of any allegations that she pursued the appropriate administrative remedies available to her or, more significantly, that she exhausted those administrative remedies. Plaintiff's §504 claim therefore is not ripe, and the Fourth Count of the Second Amended Complaint should be dismissed as a matter of law.

### B. PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST LLIU 13 UNDER 42 U.S.C. §1983 UPON WHICH RELIEF MAY BE GRANTED.

Plaintiff alleges in the Sixth Count of her Complaint that she exercised her right of freedom of speech and spoke "on matters of public concern in her capacity as a citizen," rather than as an employee of LLIU 13, see Plaintiff's Second Amended Complaint, ¶144, despite her acknowledgement that she was under contract with LLIU 13 as a due process hearing officer at all relevant times, see id., ¶19.[2] Plaintiff further alleges that the exercise of her right to speech was "a substantial motivating factor in the retaliatory action taken by IU 13." See id., ¶145.

In Heller v. Fulare, 2007 U.S. Dist. LEXIS 43325 (W.D. Pa. 2007), the court recently considered a First Amendment claim brought pursuant to 42 U.S.C.

---

[2] It is specifically denied that Plaintiff was employed by LLIU 13. LLIU 13 acknowledges, however, that for purposes of this Motion only, the allegation must be accepted as true.

§1983, and in so doing recited the two-pronged analysis for evaluating such claims set forth by the United States Supreme Court in <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).  First, a court must consider whether the employee spoke as a "citizen" on a matter of public concern.  If not, there is no First Amendment claim.  If the speech was in the Plaintiff's capacity as a citizen, however, then a potential First Amendment claim arises, and the analysis then turns on whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. "This consideration reflects the importance of the relationship between the speaker's expressions and employment.  A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."  <u>Garcetti v. Ceballos</u>, 126 S. Ct. 1951, 1958, 164 L. Ed. 2d 689 (2006); <u>See also</u> <u>Hill v. Borough of Kutztown</u>, 455 F. 3d 225 (3rd Cir. 2006).

Although Plaintiff alleges that she exercised her free speech as a "citizen," a fair reading of the allegations contained in the Second Amended Complaint clearly suggests that the statements at issue were made by Plaintiff in her capacity as a due process hearing officer under the employ of LLIU 13.  Indeed, the Supreme Court has held that a public employee does not speak as a "citizen" when she makes a

statement pursuant to her official duties, such as is the case here. See Garcetti, 126 S. Ct. at 1960.

Further, it is clear from the face of the pleadings that the restrictions purportedly placed upon Plaintiff's speech by LLIU 13 were directed at speech that had the potential to adversely affect its operations, namely the administration of impartial due process hearings. Indeed, one of the stated reasons for the decision not to reappoint Plaintiff as a due process hearing officer was that the content of her web log, which contained the speech in question, was deemed to be advocacy which could result in one or more parties to a due process hearing questioning Plaintiff's impartiality as a hearing officer. See Plaintiff's Second Amended Complaint, ¶88.

Accordingly, Plaintiff has failed to set forth a claim under 42 U.S.C. §1983 for the alleged violations of her First and Fourteenth Amendment rights upon which relief may be granted, and therefore the Sixth Count should be dismissed.

## VI.    CONCLUSION.

For the foregoing reasons, Defendant Lancaster-Lebanon Intermediate Unit 13 respectfully requests that the Court dismiss the Fourth and Sixth Counts of Plaintiff's Second Amended Complaint with prejudice as to this Defendant.

                        Respectfully Submitted,

                        **MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

DATE: September 14, 2007    BY:  *s/ Sharon M. O'Donnell, Esquire*
                                              Sharon M. O'Donnell, Esquire
                                              I.D. No. 79457
                                              Christopher J. Conrad, Esquire
                                              I.D. No. 202348
                                            4200 Crums Mill Road, Suite B
                                            Harrisburg, PA  17112
                                            (717) 651-3503
                                            smodonnell@mdwcg.com
                                            *Attorneys for Defendants Office for Dispute Resolution, Kerry Voss Smith and Lancaster-Lebanon Intermediate Unit #13*