IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA J. STENGLE, | : | |
| | : | |
| Plaintiff, | : | Case No. 4:06-CV-1913 |
| | : | |
| v. | : | (Judge Jones) |
| | : | |
| OFFICE OF DISPUTE | : | |
| RESOLUTION, <u>et al.</u>, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### April 23, 2008

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before this Court is a Motion to Dismiss the Second Amended

Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("the

Motion"), filed by one of the Defendants to this action, the Lancaster-Lebanon

Intermediate Unit 13, on September 7, 2007.  (Rec. Doc. 57).  For the reasons that

follow, the Motion will be denied.

**PROCEDURAL HISTORY:**

On September 27, 2006, Plaintiff Linda Stengle ("Plaintiff" or "Stengle")

filed her first Complaint in the instant action.  (Rec. Doc. 1).  Prior to the filing of

any responsive pleadings, on October 31, 2006, Plaintiff filed an Amended

Complaint.  (Rec. Doc. 12).

On March 21, 2007, we issued a Memorandum and Order (doc. 30) granting in part and denying in part a Motion to Dismiss the Amended Complaint (doc. 21) that had filed by two Defendants to this action, the Pennsylvania Department of Education and Linda O. Rhen.

Subsequently, on July 13, 2007, this Court granted (doc. 40) Plaintiff leave to file a Second Amended Complaint, and Plaintiff's Second Amended Complaint was docketed (doc. 41).  Plaintiff's Second Amended Complaint named six (6) additional Defendants, one of which is the Lancaster-Lebanon Intermediate Unit 13.

On September 7, 2007, the Lancaster-Lebanon Intermediate Unit 13 filed the instant Motion challenging the legal sufficiency of Counts IV and VI of the Second Amended Complaint, the only Counts pertaining to the Lancaster-Lebanon Intermediate Unit 13.[1]  (Rec. Doc. 57).  As the Motion has been fully briefed (see docs. 62, 63, 64), it is ripe for disposition.

**STANDARD OF REVIEW:**

In considering a motion to dismiss pursuant to Federal Rule of Civil

---

[1] The Motion was timely filed as this Court granted two extensions for the submission thereof.  (See Rec. Docs. 50, 56).

2

Procedure 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief," and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 127 S. Ct. at

1965 n.3). "[A] complaint must allege facts suggestive of [the proscribed] conduct," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965, 1969 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965 n.3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. at 231 (citing Twombly, 127 S. Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234.

**FACTUAL BACKGROUND:**

As is required by the standard of review applicable to the Motion, the following recitation of the facts is based on the averments in Plaintiff's Second Amended Complaint.[2]  (Rec. Doc. 41).

The Office of Dispute Resolution ("ODR"), "is an independent agency

---

[2] Notably, portions of our summary have been taken, to the extent relevant, from our earlier Memorandum and Order (doc. 30) disposing of the prior Motion to Dismiss (doc. 21).

administered at all times relevant hereto by the Lancaster-Lebanon Intermediate Unit 13 ["IU 13"] under contract with the Pennsylvania Department of Education ["PDE"] to coordinate and manage the statewide special education dispute resolution system."  (Rec. Doc. 41, ¶ 6).  The instant action arises out of Plaintiff's involvement in and removal from the aforementioned system.

More specifically, this cases stems from Plaintiff's service "as a special education due process hearing officer from July 1, 1998 through and including June 30, 2006," id. at ¶ 17,  and the lack of her reappointment thereafter. Beginning as of July 1, 1998, Plaintiff and several Intermediate Units entered into eight (8) consecutive one-year contracts.  Id. at ¶ 19.  "From at least July 1, 2002 – June 30, 2006, Mrs. Stengle's contracts were with IU 13."  Id.  However, at least the contract covering the period of July 1, 2005 – June 30, 2006 stated that continuation of the contract was contingent upon Plaintiff's reappointment as a hearing officer, and that reappointment was contingent on satisfactory performance of all hearing officer duties, with satisfaction to be determined by the ODR Director, Kerry Smith ("Smith"). Id. at ¶ 20.

Prior to Plaintiff's reappointment for the term of July 1, 2006, through June 30, 2007, Plaintiff questioned the directives being provided by ODR.  Id. at ¶¶ 29, 35.  She did so during a June 2005 training session for hearing officers, and on

other occasions as well.  Id. at ¶¶ 25, 29, 35, 38.

In October of 2005, Plaintiff was one of two due process hearing officers appointed to serve on the "Gaskin Advisory Panel" ("the Panel").[3]  Id. at ¶¶ 43, 44. While serving on the Panel, Plaintiff made many statements that she alleges were of public concern, including, inter alia, that the Gaskin settlement agreement should be fully implemented, "that the agendas prevented the [P]anel from fulfilling its obligations under the settlement agreement," and that "the minutes of the [A]dvisory [P]anel's meetings had been written in a way that was misleading and benefitted PDE . . . ."  Id. at ¶¶ 46, 47.

Plaintiff further alleges that PDE learned of her aforesaid comments and became alarmed.  Id. at ¶ 47.  Accordingly, in December of 2005, PDE allegedly researched the legality of presenting an ultimatum to Plaintiff and the second hearing officer who had been appointed to the Panel, which would have required them to choose between serving as hearing officers or serving on the Panel.  Id. at ¶ 49.

---

[3] Gaskin v. Commonwealth was a class action lawsuit filed in the Eastern District of Pennsylvania, which alleged that PDE failed to enforce compliance with the Individuals with Disabilities Education Act, the Rehabilitation Act of 1973, and the Americans with Disabilities Act.  Id. at ¶ 39.  On September 16, 2005, the Honorable Eduardo C. Robreno signed a settlement agreement in Gaskin, pursuant to which PDE agreed to increase the capacity of school districts to include students with disabilities in regular education classrooms.  Id. at ¶ 41.
Because Plaintiff had a child who was eligible for special education services, Plaintiff was a class member in the Gaskin litigation.  Id. at ¶ 40.

On January 13, 2006, one of PDE's Assistant Chief Counsels sent Plaintiff a copy of the Department of Education's Advisory Panel Policies, allegedly at the request of Dr. Linda Rhen ("Dr. Rhen"), then the PDE's Director of the Bureau of Special Education.  Id. at ¶¶ 9, 50.  Moreover, by January 19, 2006, ODR directed its case managers to remove Plaintiff's name from their e-mail lists, thereby preventing her from bidding on the cases being managed by those individuals.  Id. at ¶ 51.

In February of 2006, Plaintiff started an Internet blog in which she allegedly educated readers about various special education issues.  Id. at ¶ 62.  On April 13, 2006, Dr. Rhen wrote Plaintiff a letter requesting that she correct alleged misinformation posted on her blog.  Id. at ¶ 68.  Plaintiff concluded that the information was not incorrect, but revised the blog to more clearly define the sources of information.  Id. at ¶ 69.

Plaintiff further alleges that, apparently around this time, "[t]he system of providing hearing officers was not fair and impartial" because, "[a]mong other things, Ms. Smith and ODR would remove, and attempt to remove, hearing officers from cases upon receiving complaints from parties and/or their attorneys, notwithstanding the fact that some of these complaints were made ex parte and in violation of the Pennsylvania Special Education Dispute Resolution Manual."  Id.

7

at ¶ 72.  Indeed, Plaintiff alleges that ODR and Smith pressured Plaintiff to recuse herself from a case in which an attorney complained that Plaintiff had not been randomly assigned to the case.  Id. at ¶ 74.

In the spring of 2006, all Defendants allegedly "had numerous communications with each other regarding the desire not to reappoint Mrs. Stengle as a due process hearing officer, and the reasons to be given for the refusal to reappoint her."  Id. at ¶ 77.  Also around this time, Smith allegedly glared at Plaintiff during the annual hearing officer training sponsored by ODR, and Plaintiff was not given a preference or priority in the assignment of new cases, despite her low caseload, and allegedly in contravention of ODR policy.  Id. at ¶¶ 82-84.

By letter dated June 2, 2006, Smith notified Plaintiff that she had decided not to reappoint Plaintiff as a hearing officer.  Id. at ¶ 87.  Smith set forth three reasons for the decision not to reappoint Plaintiff: "(a) the content of her 'blog' was deemed to be advocacy which 'ensured that one or both parties would legitimately question her impartiality;' (b) refusing to recuse herself in one matter and using 'intemperate and inappropriate' language; and (c) being out of timeliness compliance on a number of decisions."  Id. at ¶ 88.  Incidentally, on May 31, 2006, Smith allegedly:

> sent ODR Legal Assistant Cindy Judy emails exchanged with Dr. Rhen, Ms. Tierney, Mr. Tommasini, Mr. Helling, and Ms. Tierney [sic], and wrote, 'Please file this in the safest spot possible so when they try to fire me for sending this letter out [to Plaintiff], I have proof that the powers that be were aware of it.  Thanks.  I would say save it electronically and also paper.  Same with Ernie's response.'

Id. at ¶ 86.

Plaintiff alleges that all three of the reasons provided in Smith's letter were pretextual.  Id. at ¶ 90.  Rather, Plaintiff specifically alleges that "[i]t was the content of Mrs. Stengle's blog, rather than the fact that she had a blog, which raised Ms. Smith's ire."  Id. at ¶ 91.  Plaintiff further alleges that Smith refused to reappoint her "because of Mrs. Stengle's speech concerning matters of public concern," id. at ¶ 102, and that "[a]s a result of Ms. Smith's refusal to reappoint Mrs. Stengle, Mrs. Stengle could not be offered a contract with IU 13 to be a Hearing Officer," id. at ¶ 105.

## DISCUSSION:

Plaintiff's Amended Complaint sets forth six (6) Counts.  However, the instant Motion seeks dismissal of only Counts IV and VI, as those are the Counts involving IU 13.  We address each of these Counts in turn.

We turn first to Count IV, a claim for violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, lodged against ODR, PDE, IU 13, Smith, and Dr. Rhen.  Only IU 13 has challenged the legal sufficiency of this claim, and it does so on the

ground that Plaintiff has failed to allege exhaustion of her administration remedies. Notably, while implicitly conceding that Plaintiff's § 504 allegations are brought in the context of a retaliation claim, IU 13 fails to argue that Plaintiff has not alleged sufficiently as to the elements thereof. (See Rec. Doc. 62 at 9 (""Even assuming arguendo that Plaintiff has articulated the requisite elements of a prima facie retaliation claim under the Rehabilitation Act, the claim nonetheless must fail."). Rather, IU 13's argument in favor of dismissal of this claim is based upon its assertion that "[i]t is well settled that a plaintiff must exhaust her administrative remedies before bringing a claim under the Rehabilitation Act." Id. (citing Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007).

IU 13's reliance upon Wilson is misplaced because, inter alia, the RA claim in that action was founded in § 501 of the RA, which permits "recovery of monetary damages by employees of the federal government who have suffered disability discrimination." 475 F.3d at 172. As recognized in IU 13's brief, Plaintiff's claim is grounded in § 504 of the RA. That provision of the RA "has a broader reach" than § 501, barring "both federal agencies and private entities that receive federal funding [and the United States Postal Service] from discriminating on the basis of disability . . . ." Freed v. CONRAIL, 201 F.3d 188, 191 (3d Cir. 2000). Significantly in light of our current inquiry, in Freed, in part because of the

10

different actors subjected to potential liability as a result thereof, the Third Circuit

explicitly "reaffirm[ed] our long-standing position that section 504 plaintiffs may

proceed directly to court without pursuing administrative remedies."[4] Id. at 194.

See also Burkhart v. Widener Univ. Inc., 70 Fed. Appx. 52, 54 (3d Cir. 2003) ("We

have previously held that plaintiffs need not exhaust their administrative remedies

prior to bringing suit under § 504 of the Rehabilitation Act . . . ."); Crile v.

CONRAIL, 2003 U.S. Dist. LEXIS 4914, at *2 (E.D. Pa. 2003) ("Since the Third

Circuit spoke in the case of Freed v. CONRAIL, 201 F.3d 188 (3d Cir. 2000), a

number of courts in this district have addressed and disposed of the exact issue

presented by this motion.  Those courts have concluded that plaintiffs similarly

situated to the instant plaintiff were required to exhaust their administrative

remedies on their ADA claim but were not required to exhaust those remedies on

the 504 claim.  We agree with the analysis and conclusion of those courts.").

Because Plaintiff's RA claim is grounded in § 504, and because we find

Freed to be controlling, we will deny that portion of IU 13's Motion that seeks

dismissal of Count IV.  Simply stated, Plaintiff is not required to exhaust

---

[4] Given that Freed is nearly directly on point, we are surprised that neither party brought it to the Court's attention.  The only difference between Freed and this action that could be argued such as to render Freed distinguishable is that the nature of Plaintiff's claim is retaliation, whereas Freed's was a straight discrimination claim.  However, given that one of the Third Circuit's rationales was that the process associated with § 504 claims fails to provide plaintiffs suing thereunder with meaningful relief, we find Freed controlling here.  See 201 F.3d at 193.

administrative remedies prior to filing suit under § 504 of the RA.[5]  Accordingly,

we need not reach the question of whether, were such exhaustion required, her

allegations contained would be sufficient to sustain this Rule 12(b)(6) challenge.

We turn next to Count VI, a 42 U.S.C. § 1983 claim for violation of

Plaintiff's right to free speech.  As the only Defendant named in this Count, IU 13

argues that Plaintiff's allegations are not sufficient to satisfy the two inquiries into

constitutional protections afforded to public employee speech: 1) "'whether the

employee spoke as a citizen on a matter of public concern;'" and 2) if the answer to

the aforementioned is yes, "'whether the relevant government entity had an

adequate justification for treating the employee differently from any other member

of the general public.'"  Heller v. Fulare, 2007 U.S. Dist. LEXIS 43325, at *17

(W.D. Pa. 2007) (quoting Garcetti v. Ceballos, 547 U.S. 410 (2006)).  Not

surprisingly, Plaintiff contends that her allegations are adequate to withstand the

instant challenge.

_____

[5] We are cognizant of IU 13's somewhat belated argument in their reply brief that some of
Plaintiff's complaints "encompassed more than her concerns as to whether ODR and PDE were
complying with the Rehabilitation Act."  (Rec. Doc. 64 at 4).  However, because IU 13 implicitly
concedes that some of Plaintiff's alleged complaints concerned compliance with the RA, and in
light of the standard of review applicable to the instant Motion, we find that Plaintiff has
sufficiently alleged what appear to be the undisputed four elements of a § 504 claim for
retaliation: 1) Plaintiff engaged in protected activity; 2) the alleged retaliators knew of Plaintiff's
involvement in the protected activity; 3) Plaintiff suffered an adverse action; and 4) a causal
connection exists between the protected activity and the adverse action.  See Deptford Twp. Sch.
Dist. v. H.B., 2005 U.S. Dist. LEXIS 11602 (D.N.J. 2005).

Upon our review of the Complaint in light of the <u>Garcetti</u> principles aptly relied upon by both parties, we conclude that Count VI should not be dismissed at this juncture.  As to the first area of inquiry, we conclude that, <u>inter alia</u>, such allegations as Plaintiff's maintenance of a blog relating to special education issues leads us to conclude that Plaintiff has presented sufficient allegations to support a claim that she spoke as a citizen on a matter of public concern.  Whether Plaintiff actually spoke as a citizen on a matter of public concern is, of course, a matter left for another day, as "[t]hat determination must be made after an examination of 'the content, form, and context of [the] statement[s], as revealed by the whole record." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 243 (3d Cir. 2006)(quoting <u>Rankin v. McPherson</u>, 483 U.S. 378, 384 (1987)).  Because we find that Plaintiff's allegations are sufficient to cognizable satisfy the first inquiry, and because the second inquiry necessarily requires consideration of IU 13's justifications for any allegedly different treatment of Plaintiff, which would not be found in the Second Amended Complaint, we reserve judgment as to this inquiry.  However, we find that Plaintiff has met her burden at this stage of litigation.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.    Lancaster-Lebanon Intermediate Unit 13's Motion to Dismiss the

    Second Amended Complaint Pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure (doc. 57) is hereby **DENIED**.


s/ John E. Jones III
John E. Jones III
United States District Judge

14