## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA (HARRISBURG)

| | |
|---|---|
| **LINDA J. STENGLE,** | : Civil Action No.: 4:06-CV-01913 |
| | : |
| **Plaintiff** | : |
| | : **Hon. John E. Jones, III** |
| **v.** | : |
| | : |
| **OFFICE OF DISPUTE** | : |
| **RESOLUTION**, *et al.,* | : |
| | : |
| **Defendants** | : |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

STOCK AND LEADER

Date: October 24, 2008         By: /s/ Stephen S. Russell
                              Stephen S. Russell, Esquire
                              Supreme Court I.D. No. 17102
                              Brooke E.D. Say, Esquire
                              Supreme Court I.D. No. 200444
                              Susquehanna Commerce Center East
                              Suite 600
                              221 West Philadelphia Street
                              York, PA 17401
                              Telephone: (717) 846-9800
                              Facsimile: (717) 843-6134

# TABLE OF CONTENTS

PROCEDURAL HISTORY................................................................,...........1

STATEMENT OF FACTS....................................................................2

QUESTIONS PRESENTED....................................................................6

ARGUMENT...........................................................................7

I.     There are no facts of record that support that Defendants
       violated Plaintiff's First and Fourteenth Amendment Rights
       under § 1983....................................................................8

       A.     Plaintiff's "speech" was not as a citizen...........................10
       B.     Defendants interest in the effective and impartial
              operation of the due process system outweighs
              Plaintiff's interest in her "speech."..............................12
       C.     Plaintiff's other unprofessional behavior constituted
              independent grounds for her non-renewal.......................17

II.    Defendant Smith is entitled to qualified immunity for all counts
       against her in any capacity.................................................17

       A.     Plaintiff had no clearly established right to advocate on a
              blog on subject matter in special education while maintaining
              a status as an impartial hearing officer and presiding over
              identical issues....................................................17
       B.     Defendant Smith's reliance on legal counsel further justifies
              her qualified immunity...........................................20
       C.     Plaintiff cannot establish a violation of constitutional rights
              via § 1983 by Defendant Smith..................................23

III.   The record provides no acceptable support for Plaintiff's allegation
       that Defendants from PDE conspired with Smith.....................23

       B.     Plaintiff cannot establish the vital elements of a conspiracy:
              agreement........................................................24

IV.    No facts of record support that Defendants violated § 504, as
       Plaintiff engaged in no protected activity and her contract
       was not renewed for reasons other than her alleged "complaints."...30

V.     The record is devoid of facts which support that Plaintiff is
       protected as a Whistleblower............................................33

VI.    CONCLUSION.......................................................…....40

## <u>TABLE OF AUTHORITIES</u>

### <u>United States Constitution:</u>

U.S.C.A. Const. Am. 1……………………………………………….8, 19
U.S.C.A. Const. Am. 14……………………………………………...19

### <u>Federal Statutes:</u>

42 U.S.C. §1983……………………………………………….....1, 2, 6
20 U.S.C. §1412(a)(5)………………………………………………...31
20 U.S.C. § 1415 (e)-(g)……………………………………………...31
34 C.F.R. §100.7(e)…………………………………………………...30
34 C.F.R. §100.8…………………………………………………..…. 31
34 C.F.R. §300.511(c)…………………………………………….…. 13

Americans With Disabilities Act………………………………….…...31
Individuals With Disabilities Education Act, 20 U.S.C. §1415(f)-(g)………...13
Rehabilitation Act of 1973 (section 504)………………………………30
Section 504 of the Rehabilitation Act…………………………….....1, 6, 30

### <u>Federal Rules of Civil Procedure:</u>

Fed.R.Civ.P. 56(e)…………………………………………….....7, 8

### <u>Pennsylvania Statutes:</u>

43 Pa.C.S. § 1422………………………………………….34, 35, 37, 38
43 Pa.C.S. §1422-1428……………………………………………....1
43 Pa.C.S. § 1423(a)……………………………………………...33

### <u>Case Authority:</u>

A.W. v. Jersey City Pub. Sch., 341 F.3d 234 (3d Cir. 2003)………………… 31
Adams v. Teamsters Local 115, 2003 WL 22005708
    (E.D.Pa. Aug. 6, 2003)……………………………………25
Aguilar v. Pennyslvania Appel Marketing Program,
    2006 WL 167820 (M.D. Pa. 2006)……………………………… 25
Anderson v. Creighton, 483 U.S. 635 (1984)………………………17, 18

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................7, 8, 24, 30
Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997)...................8
Board of County Comm'rs v. Umbehr, 518 U.S. 668 (1995)................ 5, 12
Carter v. City of Philadelphia, 989 F.2d 117 (3d Cir. 1993).......................23
Castle v. Clymer, 15 F. Supp. 2d 640 (E.D. Pa. 1998)...........................21
Celotex Corp. v. Catreett, 477 U.S. 317 (1986).................................7, 8
Conn v. Gabbert, 526 U.S. 286 (1999)..............................................18
Connick v. Myers, 461 U.S. 138 (1983)..............................................10
Connor v. Clinton County Prison, 963 F.Supp. 442 (M.D. Pa. 1997)...........37
Coover v. Suacon Valley School Dist., 955 F. Supp. 392 (E.D. Pa. 1997)......21
Dennison v. Pennsylvania Dept. of Corrections, 268 F.Supp.2d 387
        (M.D.Pa., 2003)...........................................................38, 39
Deptford Twp. Sch. Dist. v. H.B. , 2005 WL 1400752 (D. N.J. 2005)......... 32
Downey v. Coalition Against Rape and Abuse, 143 F. Supp. 2d 423
        (D.C. N.J. 2001)............................................................. 18
Esposito v. Galli, 2006 Wl 2322487 (M.D. Pa. 2006)............................ 26
Fisher v. Borough of Doylestown, 2003 WL 22937781
        (E.D. Pa. Dec. 10, 2003)................................................... 25
Franklin Music Co. v. American Broadcasting Cos., Inc., 616 F.2d 528
        (3d Cir.1979)................................................................ 25
Fullman v. Philadelphia International Airport, 49 F.Supp.2d 434
        (E.D. Pa.1999)............................................................... 25
Garcetti v Ceballos, 547 U.S. 410 (2006)...............................9, 10, 12, 16
Good v. Dauphin County Social Services, 891 F.2d 1087 (3d Cir. 1989)...... 18
Grant v. City of Pittsburgh, 98 F.3d 116 (3d Cir. 1996).......................... 18
Gray v. Hafer, 168 Pa. Commw. 613 (1994), aff'd 542 Pa. 607 (1995)......... 39
Harlow v. Fitgerald, 453 U.S. at 800 (1982)...................................17, 18
Heller v. Fulare, 2007 WL 1726521 (W.D. Pa. 2007).............................9
Hill v. Borough of Kutztown 455 F.3d 225 (3d Cir. 2006)...............9, 10, 12
Holder v. City of Allentown, 987 F.2d 188 (3d Cir.1993)....................9, 17
Hollingsworth v. Hill, 110 F. 3d 733 (10th Cir. 1997)...........................21
Isler v.Keystone School Dist., 2008 WL 3540603 (W.D. Pa. 2008)............ 32
Jakomas v. McFalls, 229 F. Supp. 2d. 412 (W.D. Pa. 2002)..................... 35
Jones v. United Parcel Service, 214 F.3d 402 (3d Cir. 2000).................... 8
Kincade v. City of Blue Springs, Missouri, 64 F. 3d 389 (8th Cir. 1995),
        cert. denied, 517 U.S. 1166 (1996)........................................ 21
Labalokie v. Capital Area Intermediate Unit, 926 F. Supp. 503
        (M.D. Pa. 1996).............................................................9
Lape v. Pennsylvania, 157 Fed.Appx. 491 (C.A.3 Pa. 2005).................... 39
Lee v. Milhalich, 847 F.2d 66 (3d Cir 1988)...................................20, 21

Marchese v. Umstead, 110 F.Supp.2d 361 (E.D. Pa.2000)........................24
Miller v. Clinton County, 2008 WL 4415102 (3d Cir.).............................15
Morris v. Orman, 1989 WL 17549 (E.D.Pa. Mar. 1, 1989).................24, 30
Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir.1997)..........29
Parkway Garage, Inc. v. City of Phila., 5 F.3d 685 (3d Cir.1993)...............30
Patterson v. Armstrong County Children and Youth Services,
    141 F. Supp. 2d 512 (W.D. Pa. 2001).......................................21
Pellegrino Food Products Co., Inc. v. City of Warren, 136 F.Supp.2d 391
    (W.D. Pa. December 6, 2000)................................................ 26
Pickering v. Bd. of Educ., 391 U.S. 563 (1968).....................8, 9, 12, 16, 19
Rankin v. McPherson, 483 U.S. 378 (1987)...............................10, 16, 34
Riggio v. Burns, 711 A.2d 497 (Pa. Super 1998)................................37
Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir.1988)............................25
Sanford v. O'Rourke, 2008 WL 2550882 (M.D. Pa. 2008)......................24
Saucier v. Katz, 533 U.S. 194 (2001)..............................................18
Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186
    (3d Cir. 2001)...............................................................7
Smetanka v. Borough of Ambridge, 378 F. Supp. 1366 (W.D. Pa. 1974)......20
Smith v. Central Dauphin School District, 511 F. Supp. 2d 460
    (M.D. Pa. 2007)..........................................................12, 14
Spencer v. Steinman, 968 F.Supp. 1011 (E.D.Pa.1997)....................... 25
Springer v. Henry, 2004 WL 2127172 (D. Del. 2004)...........................12
Springer v. Henry, 435 F.3d 268 (3d Cir. 2006)...........................8, 12
Street v. Cherba, 662 F.2d 1037 (4th Cir. 1981)................................21
Thomas v. Larson, 2001 WL 185729 (E.D. Pa. 2001).......................26, 29
Watters v. City of Philadelphia, 55 F.3d 886 (3d Cir 1995)..................8, 16
Williams v. Bitner, 455 F.3d 186 (3d Cir. 2006).................................18
Williams v. Fedor, 69 F. Supp. 2d 649 (M.D. Pa. 1999).....................20, 24
Wilson v. Layne, 526 U.S. 603 (1999)............................................18

## **PROCEDURAL HISTORY**

Plaintiff, Linda J. Stengle, filed her Second Amended Complaint on July 27, 2007, joining the Lancaster-Lebanon Intermediate Unit 13 ("LLIU 13") as an additional defendant. On August 23, 2007, an Answer with Affirmative Defenses was filed on behalf of Defendants Office of Dispute Resolution (ODR) and Kerry Voss Smith (Smith). On September 7, 2007, LLIU 13 filed a Motion to Dismiss the Fourth and Sixth Counts of the Second Amended Complaint. Defendants Motion to Dismiss was denied. On October 10, 2008, Defendants ODR, LLIU 13, and Smith filed a Motion for Summary Judgment and Statement of Undisputed Facts. This brief follows.

Plaintiff's Second Amended Complaint sets forth six (6) separate causes of action: (1) First Count- Violation of First and Fourteenth Amendments, *vis-à-vis* 42 U.S.C. §1983 against ODR; (2) Second Count- Violation of First and Fourteenth Amendment rights *vis-à-vis* 42 U.S.C. §1983 against Smith in her individual capacity; (3) Third Count- Conspiracy to Violate First and Fourteenth Amendment rights *vis-à-vis* 42 U.S.C. §1983 against Smith and the individual Defendants from the Department of Education (PDE); (4) Fourth Count- Violation of Section 504 of the Rehabilitation Act against ODR, PDE, LLIU 13, Smith and Linda Rhen (Rhen); (5) Fifth Count- Violation of the Pennsylvania Whistle Blower Law 43 Pa.C.S. §1422-1428 against ODR and Smith; and (6) Sixth Count-

1

Violation of First and Fourteenth Amendment rights *vis-à-vis* 42 U.S.C. §1983 against LLIU 13.

## FACTS

This matter arises out of Plaintiff's prior service as a special education due process hearing officer. Second Amended Complaint, ¶ 1. Beginning July 1, 1998, Plaintiff and various Intermediate Units entered into eight (8) consecutive one year contracts. Id. at ¶ 19. Her final contract, with a term of July 1, 2005 through June 30, 2006, was with LLIU 13. The contract stated that plaintiff's subsequent reappointment as a hearing officer was contingent upon satisfactory performance of all hearing officer duties, with satisfaction to be determined by Smith, the ODR Director. Id. at ¶ 20.

Plaintiff claims that prior to her reappointment for the term commencing July 1, 2006, she began questioning certain directives being provided by ODR, and in particular during a June 2005 training session for hearing officers. Undisputed Facts, ¶ 16.[1] Particularly, Plaintiff allegedly questioned whether ODR and PDE were complying with the mandates of IDEA, ADA and the Rehabilitation Act. Sec. Am. Compl., ¶ 27, 29.

---

[1] For brevity, the term "Undisputed Facts" ("U.F.") is used herein to refer to the Defendants' Statement of Material Facts for Which There is no Genuine Issue to be Tried, their enumerated paragraphs, citations, and supporting exhibits. Defendant provides a summary of those facts herein, but relies on the entirety of the Undisputed Facts in this brief, and incorporates those by reference.

In October of 2005, Plaintiff was appointed to serve on the *Gaskin* Advisory Panel. Id. at ¶ 43. While serving on the panel, Plaintiff claims that she made statements of allegedly public concern, including that the *Gaskin* settlement agreement should be fully implemented but that PDE and ODR prevented this from occurring. Id. at ¶ 46.

Plaintiff further claims that PDE supposedly learned of her aforesaid critical comment and became alarmed. Id. at ¶ 47. On January 20, 2006, Smith sent Plaintiff a letter which claimed that "some people have expressed concern to [her] about [Mrs. Stengle's] ability to serve as an impartial hearing officer while also serving on the [*Gaskin*] Advisory Panel," and stated that Smith "wanted to ensure that [Mrs. Stengle] was prepared to respond to these anticipated recusal motions." Id. At ¶ 53. During the same period Plaintiff's case assignments were temporarily suspended in order for her to complete outstanding (late) decisions for the 2005-2006 contract period. U.F., ¶ 29. Smith also noted a significant change in Plaintiff's professional behavior. U.F., ¶ 23.

In February 2006, Plaintiff started an internet web blog ("blog") in which she allegedly educated readers about various special education issues. Sec. Am. Compl. at ¶ 62. On April 13, 2006, Dr. Rhen wrote to Plaintiff requesting that she correct alleged misinformation posted on her blog. Id., ¶ 68. Plaintiff concluded

that the information was not incorrect, but revised the blog, supposedly to more clearly define the sources of information. Id., ¶ 69.

By letter dated June 2, 2006, Smith notified Plaintiff that she had decided not to renew Plaintiff's contract as a hearing officer for the term July 1, 2006- June 30, 2007. Id. at ¶ 87. Smith set forth three reasons for the decision not to reappoint Plaintiff: the content of her blog was deemed to be advocacy which ensured that one or both parties to cases would legitimately question her impartiality, effectively undermining her ability to serve as a hearing officer; refusing to recuse herself in one matter and using intemperate and inappropriate language; and performance issues, including being out of timeliness compliance on a number of decisions. Id. at ¶ 88. Smith believed that Plaintiff's blog voiced biased opinions regarding the subject matter over which she presided and caused numerous individuals to object to her continuance as a hearing officer. U.F., ¶ 24-26, 28, and 37. Smith had taken similar action with respect to two other Hearing Officers where their impartiality was similarly compromised. U.F., ¶ 41.

Plaintiff claims that all three of these reasons were pretextual. Sec. Am. Compl., at ¶ 90. Rather, Plaintiff alleges that "it was the content of Mrs. Stengle's blog, rather than the fact that she had a blog, which raised Ms. Smith's ire." Id. at ¶ 91. Plaintiff further alleges that Smith refused to reappoint her because of her alleged speech as a public citizen on matters of public concern and that, as a result,

she was not offered another hearing officer contract with LLIU 13.  Id. at ¶ 102,

105. Plaintiff also believes that all of the named Defendants from PDE were

instrumental in the decision not to reappoint her and that they conspired to violate

her rights.  Sec. Am. Compl., ¶ 126-133.

## QUESTIONS PRESENTED

I.    **Is the record devoid of facts that support a violation of Plaintiff's First and Fourteenth Amendment Rights under 42 U.S.C. §1983 by Defendants ODR, LLIU 13 and Smith?[2]**

        Suggested Answer:  Yes.

II.   **Is Defendant Smith entitled to qualified immunity for all counts against her in her individual and official capacity?**

        Suggested Answer:  Yes.

III.  **Is the record devoid of facts which support that Defendant Smith conspired with the Defendants from the PDE to violate the First and Fourteenth Amendments?**

        Suggested Answer:  Yes.

IV.   **Is the record devoid of facts which support that Defendants violated Section 504 of the Rehabilitation Act, as Plaintiff engaged in no protected activity, and her contract was not renewed for reasons other than her alleged comments about Section 504?**

        Suggested Answer:  Yes.

V.    **Is the record devoid of facts which support that Plaintiff was a "whistleblower" under Pennsylvania Whistleblower Law?**

        Suggested Answer:  Yes.

---

[2] To the extent that the term "Defendants" is used in this Brief, it refers to Defendants ODR, LLIU 13 and Smith.

## **ARGUMENT**

### **Introduction: Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists in the evidence unless a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party can satisfy its burden of production in two ways: (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Celotex Corp. v. Catreett, 477 U.S. 317, 331(1986).

Although the initial burden is on the movant to show the absence of a genuine issue of material fact, the movant's burden may be discharged by "showing . . . that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325. Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 193 n.2 (3d Cir. 2001). Once this initial burden is met, the burden shifts to the nonmoving party to

7

go beyond the pleadings and present evidence that shows a genuine issue of material fact. See Celotex, 477 U.S. at 323.

In opposing summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the ... pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Jones v. United Parcel Service, 214 F.3d 402 (3d Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48

## I.    There are no facts of record that support that Defendants violated Plaintiff's First and Fourteenth Amendment Rights under § 1983

The First Amendment protects a public employee's right to speak, in certain circumstances, as a citizen addressing a matter of public concern. U.S.C.A. Const. Am. 1; Pickering v. Bd. of Educ., 391 U.S. 563, 570 (1968). However, the termination of a government employee because of protected speech may be justified when legitimate countervailing government interests are sufficiently strong. Springer v. Henry, 435 F.3d 268, 274 (3d Cir. 2006). Therefore, in evaluating the termination of a public employee, the Courts balance the government's interest in effective administration and a public employee's free speech rights. Azzaro v. County of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997).

The Third Circuit has adopted a three step analysis for adjudicating a public employee/contractor's claim of unconstitutional retaliation for expression. Watters

8

v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir 1995); Labalokie v. Capital Area

Intermediate Unit, 926 F. Supp. 503 (M.D. Pa. 1996). A plaintiff must

demonstrate that: (1) the speech in question was protected and (2) it was a

substantial factor in bringing about the alleged retaliation. Finally, a defendant may

(3) rebut the claim by demonstrating that its action would have occurred even in

the absence of the protected speech. Holder v. City of Allentown, 987 F.2d 188,

194 (3d Cir.1993). The first prong is the most intense inquiry.

In Pickering v. Board of Educ., 391 U.S. 563 (1968), the Supreme Court set

up a two-part analysis for evaluating First Amendment speech claims of public

employees. First, a court must consider whether the employee spoke in her

capacity as a "*citizen*" on a matter of public concern. Id. at 568. If so, a potential

1ˢᵗ Amendment claim arises. Id.; Garcetti v Ceballos, 547 U.S. 410, 421 (2006). If

not, the plaintiff has no First Amendment cause of action based upon her

employer's reaction to the speech. Heller v. Fulare, 2007 WL 1726521 at *5

(W.D. Pa. 2007) (quoting Garcetti, 547 U.S. at 418). In the second prong, the

Court determines if the government entity had an adequate justification for treating

the employee differently from any other member of the general public. Hill v.

Borough of Kutztown 455 F.3d 225 (3d Cir. 2006) (for § 1983 claims). The

Pickering analysis applies equally to First Amendment matters involving

independent contractors, though it is adjusted to weigh the government's interest as

a contractor and to determine the extent of the protection.  <u>Board of County Comm'rs v. Umbehr</u>, 528 U.S. 668 (1995)) (independent contractors can be protected from termination of government contracts in retaliation for their freedom of speech exercise).

### A.   Plaintiff's "speech" was not as a citizen.

In her First and Sixth Counts, Plaintiff alleges that she exercised her right of freedom of speech and spoke "on matters of public concern in her capacity as a citizen," rather than as an employee of LLIU 13.  <u>Sec. Am. Compl.</u>, ¶ 144. Defendants concede that Ms. Stengle's speech on the blog addressed special education matters, which constitute a subject of public concern.  <u>Connick v. Myers</u>, 461 U.S. 138, 147-148 (1983).  However, a public contractor does not speak "as a citizen" when she makes a statement "pursuant to [her] official duties," and the Constitution does not "insulate her communications from employer discipline." <u>Garcetti</u>, 547 U.S. at 417, 422.  Plaintiff does not receive the protections of the First Amendment because her "speech" in the blog was not as a private citizen, but rather in her role as an impartial hearing officer under contract with the LLIU 13, presiding over issues of inclusion and least restrictive environment.  This conclusion is only clear after an examination of "the content, form, and context of [the] statement[s], as revealed by the whole record." <u>Hill</u>, 455 F.3d at 243 (quoting <u>Rankin v. McPherson</u>, 483 U.S. 378, 384 (1987)).

10

Plaintiff acknowledges that she was under contact with LLIU 13 as a hearing officer when her blog was in existence. Sec. Am. Compl. ¶ 145. As a hearing officer, Plaintiff was charged with evaluating the actions of districts on issues of inclusion and least restrictive environment (LRE), among other issues. U.F., ¶ 6, 27. Plaintiff admitted that specific topics that she advocated on in the blog, were also issues over which she presided in a hearing and made findings of fact and law as a hearing officer. U.F., ¶ 27. In fact, topics that she advocated in one way or another on the blog were identical to issues on which she presided over as an allegedly impartial Hearing Officer. U.F., ¶ 27. Plaintiff's blog directly advocated her view that PDE , ODR, and school district's were not complying with IDEA, the Rehabilitation Act, and Gaskin, three sources of law which she was required to apply and interpret in her hearing officer decisions. U.F., ¶ 26-27. Plaintiff's blog also evaluated the performance of school districts in compliance with their special education responsibilities (inclusion and LRE, and advocated that the actions of Pennsylvania school districts were similar to racial segregation in Alabama). U.F., ¶ 26-27. Plaintiff admitted that her blog views on school districts were advocacy. U.F., ¶ 22, 26. In addition, Plaintiff advised potential litigants on how to address the failures of districts. U.F., ¶ 22, 27. Plaintiff also conceded that she relied upon her experience as a hearing officer to advocate in the blog. U.F., ¶ 25. When Plaintiff spoke on the blog, she spoke as a hearing officer addressing the same

11

audience (parents and districts), the same issues (inclusion and LRE), and using the same experience.

**B.    Defendants interest in the effective and impartial operation of the due process system outweighs Plaintiff's interest in her "speech."**

Even assuming *arguendo* that Plaintiff spoke as a citizen in her blog, the LLIU 13 was justified in treating Plaintiff differently because of her role as an impartial hearing officer.  The second prong of the Pickering/Garcetti analysis, recognizes the importance of the relationship between a speaker's expression and their employment.  Garcetti, 547 U.S. at 411.  A government entity, like the LLIU 13 has a broad discretion to restrict speech and an "adequate justification for treating the employee differently from any other member of the public," when it acts as employer, as long as the restrictions are "directed at speech that has some potential to affect the entities' operations."  Id.; Hill v. Borough of Kutztown, 455 F. 3d 225 (3d Cir. 2006).  A contractor may be terminated for their words when it is necessary for their employers "to operate efficiently and effectively" and to avoid disruption in providing public services.  Garcetti, 547 U.S. at 411.  Springer, 435 F. 3d at 274 (3d Cir. 2006); Springer v. Henry, 2004 WL 2127172 (D. Del. 2004); Smith v. Central Dauphin School District, 511 F. Supp. 2d 460, 475-476 (M.D. Pa. 2007)(district had a "distinct interest in restricting plaintiffs speech in the classroom," with its right to control curriculum); Umbehr, 528 U.S. 668 (independent contractor was "outspoken critic").

Clearly, any restrictions placed on Plaintiff's speech by LLIU 13 or ODR were directed at speech that had the potential to adversely affect the primary function of LLIU13- the administration of impartial due process hearings. Plaintiff's speech had more than *potential* to disrupt LLIU 13 and ODR, it actually did substantially disrupt ODR/LLIU 13's operations. U.F., ¶ 22, 28, 127 and 132. Impartiality and independence are the very foundation of the dispute resolution system that ODR and LLIU 13 administer; and Plaintiff's blog directly challenged that system. U.F., ¶ 27; 32, 34. Pursuant to 34 C.F.R. §300.511(c),[3] the federal regulations governing special education due process hearings, a hearing officer must maintain impartiality and objectivity by not have a personal or professional interest that conflicts with that person's objectivity in the hearing. These regulations implemented the requirements in the Individuals With Disabilities Education Act (IDEA), 20 U.S.C. §1415(f)-(g), which established the right to an impartial due process hearing, including an impartial review and independent decision, a standard merely reiterated in Plaintiff's hearing officer contract and manual. U.F., ¶ 27. In essence, hearing officers were charged with the duties of an Administrative Law Judge. U.F. ¶ 32, 34. Thus, Plaintiff was not just a "public employee", but also a member of a quasi-judicial system. The entire system of

---

[3] Though these regulations were not in effect at the time of Plaintiff's non-renewal, the statutory source for the regulations, IDEA, was.

special education due process depends on the neutrality of hearing officers in the performance of their duties, and the authenticity of the appeal system. U.F., ¶ 7-8.

Just like in the Smith case, where the district could restrict a teacher's speech in the context of her teaching duties, ODR/LLIU 13 had the right to restrict Plaintiff's speech in the context of her role as an impartial hearing officer. Smith v. Central Dauphin School District, 511 F. Supp. 2d 460, 475-476 (M.D. Pa. 2007) Plaintiff's contract was to oversee a due process hearing and decide special education issues. U.F., ¶ 6. Her blog became a scathing extension of her "opinion-writing"-she advocated on identical topics (the application of statutes, LRE, and inclusion) and provided distinctly negative evaluations of school district performance. Her web blog called her impartiality directly into question. However, it was the fact of her advocacy on these topics and addressing of the same parties, not the content, bias, or accuracy of her critique which resulted in her non-renewal. U.F., ¶ 24.

Even Plaintiff recognized her responsibility to remain impartial. U.F., ¶ 112. What is more, at her deposition, Plaintiff admitted that she should and would have recused herself if someone with whom she had communicated or interacted with (in particular, parents or students) on the blog had come before her in a hearing, directly conceding that her blog made her not impartial with respect to those cases. U.F., ¶ 27. In spite of her acknowledgment that blog communications with parents

14

or others rendered her incapable of hearing subsequently filed due process matters involving those parties, Plaintiff refused to recuse herself when requested by parties before her to do so, despite the fact that her "speech" interfered with the fundamental fairness of litigation. Id. But, the damage was done. Even if Plaintiff would have recused herself, ODR would have been faced with administrative delays, leaving a child without services, and thus denying justice, each time they had to appoint a new hearing officer.

Not surprisingly, after Plaintiff began her blog, ODR received numerous complaints about Plaintiff's ability to serve as an impartial hearing officer. U.F., ¶ 22, 28, 127, 132. Smith spent time responding to the complaints of parents, attorneys, and school districts and investigating the allegations. Id.; U.F., ¶ 45. Plaintiff's web blog was advocacy, which resulted in members of both sides of the special education community (beyond parties before her) consistently questioning her impartiality. U.F., ¶ 28, 34, 63-64. The disruptive effect was palatable, both from Plaintiff's blog and her refusal to recuse herself, in the numerous complaints that Ms. Smith received. The regular operation of ODR and its performance in providing impartial due process hearings was at risk while Plaintiff maintained her advocacy. U.F., ¶ 1-5; Miller v. Clinton County, 2008 WL 4415102 at *3 (3d Cir. 2008) (recognizing countervailing interest for conduct that impairs performance, office morale, and operation of the enterprise). Certainly, the reputation of

15

ODR/LLIU 13 was at risk when Plaintiff created her blog, as they were charged by PDE and the federal government with administering and guaranteeing an impartial due process proceeding. U.F., ¶ 34.

Even if there had been no immediate harm felt by Plaintiff's blogging at the time of her contract non-renewal, the courts have given great deference to "government *predictions of harm used to justify restriction of employee speech.*" Watters, 511 U.S. at 673. For all of these reasons, the disruptive effect of Plaintiff's speech presented a sufficiently strong countervailing interest justifying the decision to not renew her contract. Rankin v. McPherson, 483 U.S. 378, 383 (1987); U.F., ¶ 42. The Garcetti case clearly recognizes that public employers have the discretion to manage their operations, particularly on expression made pursuant to a contractor's official responsibilities.

Based upon the above analysis under the Pickering test, Plaintiff had no "clearly established" right to advocate for one side of an issue or another on a blog on issues that did and would come before her in her professional capacity as an impartial hearing officer. Defendants did not violate Stengle's constitutional rights by refusing to renew her contract.[4]

---

[4] Defendants continue to contend that ODR is not even a proper party to this action. ODR, at all relevant times, was merely an office and program of the LLIU 13, who acted as the fiscal agent. LLIU 13 contracted with Ms. Stengle as ODR had no employees or contractors of its own. U.F., ¶ 1-5.

### C. Plaintiff's other unprofessional behavior constituted independent grounds for her non-renewal.

Defendants concede that Plaintiff's advocacy in her blog was a substantial factor in the decision to not renew her contract. However, Ms. Smith made clear that she had significant concerns about Plaintiff's lack of timeliness in her hearing officer decisions, as well as for her intemperate language in opinions. U.F., ¶ 38. Smith would have been justified in not renewing Plaintiff's contract for these issues of competence and reliability alone, as she had warned other hearing officers that more than one late decision was grounds for their removal. U.F., ¶ 17-19, 21; Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir.1993)

## II. Defendant Smith is entitled to qualified immunity for all counts against her in any capacity.

### A. Plaintiff had no clearly established right to advocate on a blog on subject matter in special education while maintaining a status as an impartial hearing officer and presiding over identical issues.

The qualified immunity standard recognizes the need to "protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitgerald, 453 U.S. at 800, 807 (1982); Anderson v. Creighton, 483 635, 646 (1984). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

17

have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow, 457 U.S. 800 (1982)). The first step of the inquiry determines if the facts alleged showed a violation of a constitutional right at all. Conn v. Gabbert, 526 U.S. 286, 290 (1999). If so, then the Court must proceed to determine whether that right was "clearly established" when the alleged violation took place. Id.

A right is "clearly established" when its contours are sufficiently clear, such that a reasonable official would know that her *specific conduct* violated that right in the situation she confronted. Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006); Wilson v. Layne, 526 U.S. 603 (1999); Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir. 1996) ("It is not sufficient that the right at issue be clearly established as a general matter"). Anderson v. Creighton, 483 U.S. 635, 646 (1984). In other words, in light of pre-existing law, the unlawfulness must be "apparent." Id. at 640; Good v. Dauphin County Social Services, 891 F.2d 1087, 1092 (3d Cir. 1989). Thus, under this standard it is particularly important to define the "appropriate level of specificity" with which we define Plaintiff's conduct and the constitutional right involved to determine if Defendant Smith's actions were constitutionally appropriate on behalf of the contracting entity. Downey v. Coalition Against Rape and Abuse, 143 F. Supp. 2d 423 (D.C. N.J. 2001); Saucier v. Katz, 533 U.S. 194 (2001).

18

Certainly, Plaintiff has a right of free speech. However, the contours of this right are severely limited, if not non-existent, in the context in which she utilized it. Based upon the above analysis under the <u>Pickering</u> test (incorporating Argument I above), Plaintiff had no "clearly established" right of free speech under the First or Fourteenth Amendment to advocate for one side of an issue or another on a blog on issues that did and would come before her in her professional capacity as an impartial hearing officer. Furthermore, even if Plaintiff's speech on the blog could be taken as the speech of a public citizen, and not in her professional role, Defendants ODR/LLIU 13 could take action to not renew her contract as a result of the substantial disruption which her blogging had on the special education process. <u>See</u> Argument I.B above. Even if Defendant's motion to dismiss Counts I and VI should fail, it is clear from the caselaw presented, that Plaintiff's right to advocate on a blog on issues while serving as an impartial hearing officer, is at least unclear, and thus is not a "clearly established right," such that Smith, as a government official, and Director of ODR, is entitled to qualified immunity. A reasonable public official, like Defendant Smith, knew that a contracted official whose professional responsibilities were similar to that of a judge could not maintain advocacy and impartiality and receive protection under the First Amendment.

**B. Defendant Smith's reliance on legal counsel further justifies her qualified immunity.**

Prior to the United States Supreme Court's holdings in <u>Anderson</u>, the United States District Court for the Western District of Pennsylvania recognized qualified immunity for defendants that acted in "good faith reliance upon the advice of their solicitor." <u>Smetanka v. Borough of Ambridge</u>, 378 F. Supp. 1366 (W.D. Pa. 1974). Since that time, the fact that an official sought an attorney's advice has remained an important factor in securing qualified immunity. At least one Middle District case has expressly factored in legal counsel in the qualified immunity analysis. <u>Williams v. Fedor</u>, 69 F. Supp. 2d 649, 677-678 (M.D. Pa. 1999)(police officers could rely on a district attorney's advice, which was consistent with the law, even if it was later determined by a court to be incorrect).

<u>Lee v. Milhalich</u> is one of only a few Third Circuit decisions on point. <u>Lee</u>, 847 F.2d 66 (3d Cir. 1988). In <u>Lee</u>, the plaintiff brought a civil rights action against investigators with the Attorney General's office, seeking damages for abuse of process and malicious prosecution. The Circuit court held that the AG's investigators were entitled to qualified immunity as the (1) statute of limitations was unclear in Pennsylvania and (2) because the investigators sought the advice of counsel on that issue before filing the charges. <u>Id.</u> at 72. The court noted the level of legal analysis conducted, including memorandums of law. <u>Id.</u> at 71. The

20

Court then concluded that the defendants' action in following their attorney's advice was "clearly reasonable," and the unlawfulness was not "so apparent." Id. at 71-72. (relying upon Fourth Circuit for the principle that "consultation with an attorney is relevant to...qualified immunity"); Street v. Cherba, 662 F.2d 1037 (4th Cir. 1981).

In Lee, the Third Circuit initiated a reliance on outside precedent to include the "advice of counsel" as a significant factor in the qualified immunity analysis, a factor that stands today. Castle v. Clymer, 15 F. Supp. 2d 640 (E.D. Pa. 1998) ("reliance on the advice of counsel is a factor to be weighed in assessing whether a public official is entitled to qualified immunity") (quoting Kincade v. City of Blue Springs, Missouri, 64 F. 3d 389, 399 (8th Cir. 1995), and Coover v. Suacon Valley School Dist., 955 F. Supp. 392, 409 (E.D. Pa. 1997) (defendants' reliance on the advice of their solicitor on due process was an appropriate factor to be weighed in assessing, and ultimately granting, qualified immunity)).

It is clear that the fact that Smith solicited the advice of counsel, and reasonably relied on that advice, constitutes an additional justification, for Smith's actions, and ultimately for her qualified immunity. Patterson, 141 F. Supp. 2d at 529 (W.D. Pa. 2001) citing Hollingsworth v. Hill, 110 F. 3d 733, 740-742 (10th Cir. 1997). Here, Smith consulted with Mr. Frankhouser, attorney at Hartman, Underhill and Brubaker (solicitors for the LLIU 13), as her legal counsel, and

21

communicated with him regarding the performance concerns she had with respect to Ms. Stengle. U.F., ¶ 44-45. Mr. Frankhouser's role was to determine if Plaintiff's writings, were appropriate for a hearing officer and "whether the content of the blog was such that her ability to be perceived as impartial had been impaired." U.F., ¶ 47. In conjunction with his review of Smith's investigatory file, Mr. Frankhouser completed an analysis of First Amendment, advocacy, intemperate language, procedural due process, statutory impartiality, and performance issues, the very issues before this court. U.F., ¶ 46, 48. Mr. Frankhouser gave a definitive and conclusive legal opinion that Ms. Stengle was advocating in the blog, with respect to LRE/inclusion and that she could not advocate on these issues while serving as an impartial due process hearing officer contracted with a public entity, such that her actions were a clear breach of her obligation to remain impartial. U.F., ¶ 49-51. In brief, Mr. Frankhouser stated to Ms. Smith that "no judge will condone what she is doing" because she had no "clearly established right" to advocate on a blog while serving as an impartial hearing officer. U.F., ¶ 49. Ms. Smith relied on the advice given by Mr. Frankhouser, so much so, that she utilized the draft letter of non-renewal composed by Mr. Frankhouser to not renew Plaintiff's contract. U.F., ¶ 50-54. In addition, Smith sought counsel from Edward Titterton, another attorney and consultant to hearing officers, who agreed with Smith's concerns. U.F., 63, 66.

**C.     Plaintiff cannot establish a violation of constitutional rights via §**
**1983 by Defendant Smith.**

Count II Charges Defendant Smith with the violation of the First and

Fourteenth Amendments for identical reasons as outlined against ODR/LLIU 13.

Thus, for the same reasons as are identified in Section I of the Argument above,

Smith, as Director of ODR, is not liable in her individual or official capacity for

the non-renewal of Plaintiff's contract. Argument I is incorporated by reference

with respect to Defendant Smith.  Furthermore, Ms. Smith never acted outside her

official capacity as Director of ODR during the relevant time period.

**III.    The record provides no acceptable support for Plaintiff's allegation that**
**Defendants from PDE conspired with Smith.**

In Plaintiff's Third Count she alleges that all of the individual defendants

conspired to have ODR not reappoint Plaintiff as a hearing officer, and to thereby

violate her First and Fourteenth Amendment rights by their personal involvement,

actual knowledge, and acquiescence in the non-renewal decision.  Sec. Am.

Compl. ¶ 127-133.  In order to state a claim under §1983, a plaintiff must allege

that defendant deprived her of a federal constitutional or statutory right while

acting under color of state law.  Carter v. City of Philadelphia, 989 F.2d 117, 119

(3d Cir. 1993).  Pursuant to the standard outlined for speech activities of public

employees and independent contractors, and the facts and argument outlined in

Section I and II above, Ms. Stengle does not have a viable First or Fourteenth

23

Amendment claim, and therefore Defendants could not conspire to violate that alleged right. Should the Court find that Plaintiff did have a viable First or Fourteenth Amendment claim, the undisputed facts support that no conspiracy existed between the Defendants at PDE and Smith at ODR.

To survive a summary judgment motion, the nonmoving party must do more than show that "a fact-finder could theoretically draw two or more inferences" from available circumstantial evidence; instead, the nonmoving party must provide affirmative evidence to show that the inference of conspiracy is reasonable in light of competing inferences..." Morris v. Orman, 1989 WL 17549 (E.D.Pa., March 1, 1989); Anderson v. Liberty Lobby, 477 U.S. at 257.

## A.    Plaintiff cannot establish the vital elements of a conspiracy: agreement

In order to establish a §1983 conspiracy claim against the Defendants, Plaintiff must show "(1) an actual violation of a right protected under § 1983 and (2) state action taken in concert by the defendants with the specific intent to violate the aforementioned right." Williams v. Fedor, 69 F.Supp.2d 649, 665 (M.D. Pa.1999); Sanford v. O'Rourke, 2008 WL 2550882 (M.D. Pa. 2008); Marchese v. Umstead, 110 F.Supp.2d 361, 371 (E.D. Pa.2000). In other words, a conspiracy claim requires "a combination between two or more persons to do an unlawful act, or to do a lawful act by unlawful means, or to accomplish an unlawful purpose."

24

Franklin Music Co. v. American Broadcasting Cos., Inc., 616 F.2d 528, 534 (3d Cir.1979).

To prevail on a conspiracy claim, the plaintiff must present evidence of an agreement-"the *sine qua non* of a conspiracy," Spencer v. Steinman, 968 F.Supp. 1011, 1020 (E.D.Pa.1997). The agreement must be "to inflict a wrong against or injury upon another." Adams v. Teamsters Local 115, 2003 WL 22005708 (E.D.Pa. Aug. 6, 2003). Therefore, "it is not enough that the alleged perpetrators of the harm acted in conscious parallelism." Fullman v. Philadelphia International Airport, 49 F.Supp.2d 434, 444 (E.D. Pa. 1999). Rather, the alleged conspirators must have had a "meeting of the minds" to achieve the conspiracy's objectives. Fisher v. Borough of Doylestown, 2003 WL 22937781 (E.D. Pa. Dec. 10, 2003). Individual liability under § 1983 occurs when, acting under color of law, one had personal involvement in the alleged wrongdoing. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Plaintiff fails to state which specific actions the defendants were alleged to have taken in the conspiracy. Aguilar v. Pennsylvania Apple Marketing Program, 2006 WL 167820 (M.D. Pa. 2006). Instead, she attempts to establish a controlling relationship between PDE and ODR/LLIU 13, and then bootstraps her conspiracy claim onto the fact that they have a relationship through reference to miscellaneous communications, to extraneous comments, and the circulation of

25

information provided as a "heads up." U.F., ¶ 117, 124.   Nonetheless, when

asked to explain why she believed that ODR is not "separate" from LLIU 13 and

PDE, Plaintiff could only offer that this alleged unification was suggested by her

confusing conclusions as to how and why Defendants were represented and

because she believed that PDE defendants perjured themselves when they

described PDE and ODR's relationship as a fiscal one. U.F. ¶  69, 118.  Plaintiff

cannot prove that a "meeting of the minds" existed to violate her constitutional

rights by merely establishing a relationship, without providing specific

conspiratorial agreement of an illegal objective. Id. Plaintiff admits that there is no

direct evidence that PDE controls ODR.  U.F., ¶ 124.  Defendants cannot be

charged with conspiracy by "reason of their positions alone" when they did

nothing other than act in their capacity as a public official to receive and transfer

information. U.F., ¶ 117, 124.  Pellegrino Food Products Co., Inc. v. City of

Warren, 136 F.Supp.2d 391 (W.D. Pa. December 6, 2000); Esposito v. Galli, 2006

WL 2322487 (M.D. Pa. 2006).

"As with any conspiracy theory, once you assume the existence of the

conspiracy among the defendants...the fact can be interpreted to 'fit' the theory.

But this is not how we consider proof under the Rule 56 standards." Thomas v.

Larson, 2001 WL 185729 (E.D. Pa. 2001). For example, when starting from her

premise (and belief )that "PDE maintained a close relationship with Kerry Voss

Smith and managerially called a lot of the shots," Plaintiff only offered the following as evidence of a "conspiracy": (1) Smith's reference to PDE as the source of "funding," or referencing "checking with legal"; (2) Tommasini's explanation of their fiscal relationship; (3) PDE's review of the non-renewal letter; (4) Rhen's suggestion to eliminate one part of the non-renewal letter; (5) the mere presence of notification emails from Ms. Smith to PDE defendants of the nonrenewal and the circulation of same; and (6) Mr. Helling's alleged moral support for the letter. U.F., ¶ 117.

In contrast to Plaintiff's speculation, the individual defendants testified consistently that ODR and PDE are "two separate entities with two separate sets of responsibilities" connected by a fiscal link. U.F., ¶ 69, 128-130. No one at PDE was involved in the decision to renew the contracts of any hearing officer as PDE does not monitor hearing officers; and thus neither the PDE nor any of the named PDE defendants have control over the appointment of contracts with hearing officers or had any input into the decision to not renew Stengle's contract. U.F., ¶ 74-93, 102-111, 128-130. Even Plaintiff admitted her understanding that the LLIU 13 renewed or did not renew contracts, based upon Ms. Smith's recommendation. U.F., ¶ 122. Plaintiff clearly admits that PDE does not have any role in the non-renewal of her hearing officer contract, and each PDE Defendant put forth

affirmative evidence that he or she was not a decision-maker with respect to hearing officer contracts. U.F., ¶ 80-81, 93, 105, 107, 122, 129-131.

Plaintiff's "beliefs" and "opinions" do not constitute facts to support a "meeting of the minds." When asked for the basis for her conspiracy claim, essentially in believing that PDE had a role in the non-renewal of her contract, and that ODR and PDE conspired to not renew her contract, Ms. Stengle pointed to the following: (1) one contact from Defendant Rhen about her blog; (2) her "perceptions" of defendants' "body language" and behavior toward her, including her observation of Smith, Rhen and Fullerton looking angry and talking (admittedly, without knowing the subject of their conversation); (3) the fact that PDE stated that they would not hire a full-time hearing officer because of budget constraints; (4) "well, gee, the e-mails and things like that;" (5) the "proximity" of the alleged retaliatory actions to her Gaskin activities; (6) and Smith's blanket referrals to PDE and "legal"; and (7) Smith's past employment at PDE and Rhen's past employment at LLIU 13. U.F., ¶ 86, 119-120. While Plaintiff will attempt to misconstrue the informational emails sent by Smith to PDE relating to the non-renewal, all named Defendants have testified as to the basis and meaning of the emails being (1) as "professional courtesy; (2) in accordance with Smith's agreement to keep her former colleagues apprised of her contact with PDE and to maintain their separation; and (3) at the advice of counsel. U.F., ¶ 55-56, 71-83.

28

Plaintiff cannot provide any other outside evidence to show a "meeting of the minds." U.F., ¶ 70-83.

These accusations do not represent "direct evidence" of any agreement between the defendants. Thomas v. Larson, 2001 WL 185729 (pure disclosure of information and a phone message is not sufficient evidence). The "mere disclosure of information" does not satisfy the standard of proof for conspiracy. Id. To the extent that there was "evidence of any communication between the alleged conspirators," the evidence cited is not sufficient for a jury to reasonably infer the existence of a conspiracy, as there is no proof of a "meeting of the minds." Mere references to another defendant, the type of representation of multiple defendants, allegations of perjury, and the perception of body language, are only "conclusory allegations," "unwarranted inferences," and "unsupported conclusions" that would not survive even the motion to dismiss standard. Morse v. Lower Merion School District, 132 F.3d 902, 906 n. 8 (3d Cir.1997). The only "meeting of the minds" was Smith's and PDE's desire to have an appropriate response to any public inquiry in the matter. U.F., ¶ 72. Plaintiff was connected to PDE through her service on the Gaskin Panel. U.F., ¶ 76, 84 and 104. [5]

---

[5] For example, Plaintiff also asserts that she was "warned" by Kevin Casey, a government official, that the "defendants were out to get her." U.F., ¶ 94. Mr. Casey denied ever saying those words to anyone, and went even further to state that he had not discussed Plaintiff's non-renewal with her or anyone, including her husband, such that Mr. Casey was only aware that her contract had not been

Taking the record as a whole, her conspiracy claims cannot survive summary judgment as she bases her claims solely on suspicion, speculation and conclusion. Anderson, 477 U.S. at 256; Morris v. Orman, 1989 WL 17549 (E.D.Pa. Mar. 1, 1989). The evidence is not sufficient independently to disclose the existence of a conspiracy unless the existence of the conspiracy is posited in the first place. Id.

As outlined above, Plaintiff cannot provide a factual basis to support the existence of the conspiracy:   concerted action, an agreement, or any inference of an agreement by two or more conspirators to deprive her of a constitutional right. Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir.1993).  Without facts or even particularized allegations which would sufficiently support a showing of the above elements, Plaintiff's claim fails.

**IV.    No facts of record support that Defendants violated § 504, as Plaintiff engaged in no protected activity and her contract was not renewed for reasons other than her alleged "complaints."**

In her fourth Count, Plaintiff alleges that she complained of ODR's and PDE's failures to comply with Section 504 of the Rehabilitation Act of 1973 and that these complaints were "protected activities under the Act. 34 C.F.R. §100.7(e). However, according to the allegations in her Complaint, Plaintiff's "complaint"

---

renewed when he was contacted for the depositions in this case. U.F., ¶ 100. Mr. Casey had the same concerns about Plaintiff's impartiality, and warned her husband of his concern. U.F., ¶¶ 98, 101.

encompassed more than her concerns as to whether ODR and PDE were complying with Section 504. For example, at paragraph 35, Plaintiff alleges that she "questioned whether ODR's directions regarding hearing officers' counting of least restrictive environment complaints for PDE would result in an underreporting." The concept of "LRE" does not derive from §504, rather from the IDEA. 20 U.S.C. §1412(a)(5). At paragraph 62, Plaintiff speaks of her internet web log wherein "she educated readers about rights under IDEA, Section 504, the Americans with Disabilities Act, least restrictive environment complaint, Oberti, and the *Gaskin* Settlement Agreement, among other issues." Clearly, Plaintiff's complaints were not limited to her concerns about compliance with the Rehabilitation Act.[6]

Under 34 C.F.R. §100.8 "no recipient [of Federal financial assistance] or other person shall intimidate, threaten, coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by §601 of the [Civil Rights] Act or this part, or because he has made a complaint...." To establish a retaliation claim under §504, Plaintiff must establish that (1) she was engaged in a protected activity; (2) the alleged retaliator knew that she was involved in a protected activity; (3) an adverse decision or course of action was

---

[6] To the extent Plaintiff claims that her actions were protected under § 504 and § 1983, A.W. v. Jersey City Pub. Sch., 341 F.3d 234 (3d Cir. 2003), has made clear that § 1983 is not a vehicle for addressing § 504 claims and should be dismissed.

taken against her; and (4) a causal connection exists between the protected activity and the adverse action.  See, Deptford Twp. Sch. Dist. v. H.B. , 2005 U.S. Dist. LEXIS 11602 (D. N.J. 2005).

Plaintiff alleges that Defendants retaliated against her because of her "complaints" about compliance with § 504.  However, Plaintiff did not engage in protected activity; her "complaints" on Section 504 do not constitute "advocacy" under § 100.8.  Isler v.Keystone School Dist., 2008 WL 3540603 (W.D. Pa. 2008) (at best, the conversations of employee attempted to offer a solution, not protected "advocacy".)  At Plaintiff's own admission, she merely engaged in a discussion at Gaskin Panel meetings before other members of the panel, as administrated by PDE, where she supplied her own suggestions in the process of participating in the "implementation" of a settlement agreement (where the law had already been decided by the Court).  U.F., ¶ 12-16.  The very words of her pleading surmised that such speech was merely to "point[] out problems with the implementation of Section 504."  U.F., ¶ 16.  When prompted at her deposition to describe who of the Defendants witnessed such "advocacy", Plaintiff stated that her words were heard by "one or two" faceless and nameless LLIU 13 members who happened to be in the room.  U.F., ¶ 13, 16.  Plaintiff has failed to show that anyone from ODR or LLIU 13 actually heard her suggestions, and thus she does not meet the second element of her claim.  U.F., ¶ 16; Id.  Measured against the foregoing standard, at

best, Plaintiff's allegations and deposition testimony related *suggestions*, which cannot be considered protected activity opposing an unlawful practice.

The evidence of record also fails to support the final element of Plaintiff's retaliation claim: a causal connection between her alleged advocacy at the Gaskin Panel meetings and the non-renewal of her contract. It is undisputed that Plaintiff received a letter from Smith outlining the three reasons that she was not renewed as a hearing officer. U.F., ¶ 37. Any alleged complaints about a violation of the Section 504 was not included, nor was it implied. Plaintiff's hearing officer contract was not renewed because of the reasons outlined in Smith's non-renewal letter to her, no others. Id. Plaintiff has failed to make out a prima facie case of retaliation for exercising rights protected by the Rehabilitation Act.

## V.    The record is devoid of facts which support that Plaintiff is protected as a Whistleblower.

> Section 3(a) of the Whistleblower Law provides:
> No employer may discharge, threaten or otherwise
> discriminate or retaliate against an employee regarding
> the employee's compensation, terms, conditions, location
> or privileges of employment because the employee . . .
> makes a good faith report . . to the employer or
> appropriate authority [of] an instance of wrongdoing or
> waste.

43 P.S. §1423(a). The statute provides particular definitions for "employee," "employer," "good faith report," "appropriate authority," and "wrongdoing or

waste." Id. at § 1422. The undisputed facts fail to support that Plaintiff can meet a single one of these definition requirements to receive the Act's protections.

Under §1422, an "employee" is a "person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body." On its face, §1422 does not provide whistleblower protection for an independent contractor. Rankin v. City of Philadelphia, 963 F. Supp. 463, 470 (E.D. Pa. 1997) (recognizing interpretation of "employee" as excluding volunteers and independent contractors). Clearly, Stengle served as an independent contractor with the LLIU 13, as memorialized in her eight (8) consecutive contracts, and utilized an IRS Form 1099 to represent this status to the IRS during the years relevant to this lawsuit. U.F., 2-8. The substance of Plaintiff's work was not directed or supervised by ODR or Smith, just the administrative procedure of distributing and timing the work assigned. U.F., ¶ 11.

Even if Plaintiff could be designated as an "employee," neither ODR nor Smith was her "employer" under the definition in §1422. "Employer" is defined as one supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." ODR is a program that is administered, and funded by the LLIU13. U.F., ¶ 1-6. ODR has no employees of its own. Id. The employees who work in the ODR office are either employed by the LLIU13 or another intermediate unit. Id. Kerry Smith, is the Director of ODR

and supervises the employees and contractors of LLIU13. U.F., ¶ 10-11.

However, Plaintiff was never an employee of LLIU13, but rather an independent

contractor whose attendance and competence were evaluated by Ms. Smith. Id.

The hearing officers did not report to Smith with respect to the content or

substance of their hearing officer decisions/opinions, and  Smith had no ability to

direct the hearing officers in the performance of their primary function (opinion

writing), except with respect to administrative procedure (timelines, reporting).

U.F., ¶ 1-6; 10-11, 29.  Therefore, Defendants were not Plaintiff's "employer"

under the definition in §1422.  Ultimately, Smith could determine to have the

LLIU 13 not renew Plaintiff's contract, and she did end the contract for Plaintiff's

services. Jakomas v. McFalls, 229 F. Supp. 2d. 412 (W.D. Pa. 2002) (county was

not liable under the Act for a judge's actions of discharging his staff as it was not

staff's "employer," in that it had no authority to hire, supervise, or discharge judge's

staff).

Plaintiff alleges that she made a "good faith report" of "wrongdoing or

waste" so as to have protection as a "whistleblower." Sec. Am. Compl. ¶ 138-142.

A "whistleblower" is a person who "witnesses or has evidence of wrongdoing or

waste while employed and who makes a good faith report of the wrongdoing or

waste, verbally or in writing, to one of the person's superiors, to an agent of the

employer or to an appropriate authority." §1422.  Plaintiff alleges that she made

"complaints" about ODR and to ODR. <u>Sec. Am. Compl.</u> ¶ 113-116. The caselaw interpreting the Act clearly requires a "report of conduct," of which Plaintiff's "actions" do not qualify. At most, Plaintiff only specified her "reporting" allegations as that she "spoke out," "expressed the belief," and "pointed out" her opinion on matters or "questioned or resisted directives" when Defendants ODR and Smith were allegedly in earshot or in attendance at a common meeting. <u>U.F.</u>, ¶ 16, 116. Plaintiff made clear that she only stated her "complaints" at hearing officer training sessions by "asking clarification questions" on ODR's "position" or interpretation of federal and state regulations. <u>U.F.</u>, ¶ 16, 116. Plaintiff's chief "complaint," that ODR was "unfair" in its application of impartiality and hiring practice, was only made to her spouse and her attorney, and a State Representative (Leh) after the date of her non-renewal, and thus lacks the casual nexus required under the Act. <u>U.F.</u>, ¶ 114.

Even if the Court takes Plaintiff's alleged "beliefs," "questions," or "complaints" as constituting a "report" under the Law, these "reports" were, by her own admission, as to (1) ODR's *interpretation and application* of federal and state law in special education cases. <u>U.F.</u>, ¶ 116; (2) an *evidentiary seal allegedly being* broken by an administrative personnel at ODR <u>U.F.</u>, ¶ 113; and (3) ODR's lack of desire to implement the Gaskin Agreement. <u>U.F.</u>, ¶ 113, 116. Under the Whistleblower law, Plaintiff's "reports" had to be with respect to "an employer's

36

conduct or omissions which result in *substantial* abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources ("Waste") or "a violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer ("Wrongdoing")". § 1422.  Not only are Plaintiff's citations to alleged regulatory statutes or standards of conduct "entirely too general and vague" to permit the conclusion that a violation had occurred that amounted to "wrongdoing,"  but her pleadings admit that the complaints were as to matters open to interpretation (often by the courts).   Riggio v. Burns, 711 A.2d 497 (Pa. Super 1998) (standards such as [the ones at issue] are subject to interpretation, and do not specifically define prohibited conduct, it is not at all clear when they would be violated in such a way as to amount to "wrongdoing"). Further, Plaintiff admits that her "complaints" about ODR interpretations of federal/state statutes and ODR directives on the application of this interpretation are not the report of an "illegal or fraudulent action." U.F., ¶ 116.  Plaintiff's "objections" about ODR's interpretation are akin to an objection about  "internal policies" which do not meet the "wrongdoing" standard.  Connor v. Clinton County Prison, 963 F.Supp. 442 (M.D. Pa. 1997); Riggio v. Burns (objections did not qualify as report of "wrongdoing"  as licensing statutes lacked specificity as to

what acts were proscribed).  Plaintiff's complaints, particularly those relating to the sealing of records, even if legitimate, are the essence of "a technical or minimal" violation.  §1422.  In addition, Plaintiff's alleged "complaint" about impartial hiring practices by ODR is both  inaccurate (as ODR did not hire) and untrue in light of ODR's statistical report of hiring practices by the LLIU13.  U.F., ¶ 113.

Plaintiff argues that her letter to Representative Leh constitutes a "report" of "wrongdoing" relating to ODR's alleged impartiality in hiring, among other things.  U.F., ¶ 113-114.  Setting aside the fact that Plaintiff's complaint to Leh was after her receipt of the letter of non-renewal, under the statute, Plaintiff had to "report" to an "appropriate authority" (or agent thereof) having "jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics."  While Representative Leh was a state legislator at the time Plaintiff wrote the letter, he had no specific jurisdiction over the above-mentioned topics, and the Defendants' alleged action did not constitute "wrongdoing."  Dennison v. Pennsylvania Dept. of Corrections, 268 F.Supp.2d 387 M.D.Pa., 2003 (prison reform advocate, a local NAACP official, and Fox-TV News, not "appropriate authorities").  The Whistleblower only protects communications with "appropriate authorities."

Even if Defendants ODR and Smith were not challenging Plaintiff's prima facie case, Plaintiff's contract was not renewed for the three reasons outlined in the letter of non-renewal, not for any alleged "good faith reports" of ODR or Smith's

38

"wrongdoing" under §1424(c). It is a "defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." Dennison v. Pennsylvania Dept. of Corrections, 268 F.Supp.2d 387 (M.D.Pa.,2003). There is no factual support of record to support that any alleged "reports" were the reason for non-renewal, and thus Defendant s ODR and Smith have met their burden of showing a "separate and legitimate reason." Lape v. Pennsylvania, 157 Fed.Appx. 491 (C.A.3 (Pa. 2005).

Plaintiff cannot meet the requirements for a Whistleblower claim. Plaintiff must show that she made;

> "more than a general statement that a report was filed
> and, within a given amount of time, the employee was
> fired as a result. An employee who has been terminated
> based on a filed report…must specify how their employer
> is guilty of waste and/or wrongdoing. They must also
> show by concrete facts or surrounding circumstances that
> the report led to their dismissal, such as that there was
> specific direction or information they received not to file
> the report or there would be adverse consequences
> because the report was filed."

Gray v. Hafer, 168 Pa. Commw. 613, 620 (1994), aff'd 542 Pa 607 (1995). Even if Plaintiff and Defendants fit the definitions required, nothing before the court established that the Defendants were guilty of "wrongdoing or waste" or that Plaintiff was terminated because she reported such alleged conduct.

## VI.    CONCLUSION

For the foregoing reasons, Defendants LLIU 13, ODR, and Smith respectfully request that the Court dismiss Counts I-VI of Plaintiff's Second Amended Complaint.